UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MALCOLM WASHINGTON,

Plaintiff,

v. 3:26-cv-1373 (AJB/CBF)

ENDICOTT POLICE DEPARTMENT, et al.,

Defendants.

---

APPEARANCES:

MALCOLM WASHINGTON
*Plaintiff, pro se*
1903 East Main St.
Apt 3E
Endicott, NY 13760

**CARLA B. FREEDMAN**, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

## I. INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Malcom Washington ("Plaintiff"). Dkt. No. 1. Plaintiff has been granted permission to proceed in this matter *in forma pauperis*. Dkt. No. 10. For the reasons set forth below, the undersigned recommends Plaintiff's complaint be dismissed.

## II. BACKGROUND

Plaintiff commenced this action by filing a complaint dated June 27, 2026, utilizing this District's form civil rights complaint pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1. The complaint's caption lists "Endicott Police Department, Et Al" as Defendants, and lists three

Defendants in the list of parties: (1) Detective McEwan, (2) Lieutenant Noyes, and (3) Lane. *See id*. at 1-2.[1] The "facts" section of Plaintiff's complaint reads, in full: "on 12/21/2015 the above defendants appeared at my home at the time 1006 North Street and placed me under arrest with no warr[a]nt nor probable cause Detective McEwan forged a warr[a]nt to obtain property and do a DNA test against my then 15 yr old daughter." *Id*. at 2. The complaint lists three causes of action: (1) "constitutional violation 14th Amendment Due Process," (2) "constitutional violation 5th Amendment," and (3) "constitutional violation 4th Amendment Illegal Seizure." *Id*. at 3. Regarding relief, Plaintiff seeks "monetary award of $10 million as well as all items obtained by forged warr[a]nt destroyed." *Id*. at 4.

## III. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*,

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Plaintiff uses irregular capitalization throughout his complaint. For readability purposes, the Court uses standard capitalization and omits all emphasis. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)

(citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. DISCUSSION

Upon review, Plaintiff's complaint fails to state a claim against multiple Defendants, and his claims may be barred by *Heck v. Humphrey*. Accordingly, the undersigned recommends the complaint be dismissed in its entirety.

As an initial matter, the undersigned notes Plaintiff listed "Endicott Police Department" as a Defendant in the complaint's caption, but the Endicott Police Department is not listed as a Defendant in the list of parties. *See* Dkt. No. 1 at 1-2. Additionally, the Endicott Police Department is not mentioned in the complaint's factual allegations. *See id*. at 2. In any event, however, "[a] city police department is not an independent, suable entity separate from the municipality in which the police department is organized." *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (collecting cases); *see also*, *e.g.*, *Riley v. Taylor*, No. 5:19-CV-1451 (BKS/ATB), 2019 WL 6829046, at *6 (N.D.N.Y. Dec. 13, 2019) (explaining, "it is well-settled that an administrative arm of a municipality, such as the Police Department . . . cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.") (quoting *Leland v. Moran*, 100 F. Supp. 2d 140, 145 (N.D.N.Y. 2000)) (internal quotations omitted), *report and recommendation adopted*, 2020 WL 886128 (N.D.N.Y. Feb. 24, 2020). Therefore, insofar as Plaintiff seeks to proceed against the Endicott Police Department, any such claims must be dismissed, because it is not an entity that is amenable to suit. *See*, *e.g.*, *Gidea v. Owego Police Dep't*, No. 3:25-CV-0103 (ECC/ML), 2025

WL 3640706, at *2-3 (N.D.N.Y. Dec. 16, 2025), *report and recommendation adopted*, 2026 WL 1284242 (N.D.N.Y. May 11, 2026).

Alternatively, to the extent any claim against the Endicott Police Department is construed as a claim against the Village of Endicott, the complaint still fails to state a claim. "Under the standards of *Monell v. Department of Social Services*, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)); *see also*, *e.g.*, *Adams v. City of Syracuse*, No. 5:21-CV-00650 (AMN/MJK), 2025 WL 2772081, at *28 (N.D.N.Y. Sept. 29, 2025) (explaining, to hold a municipality "'liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'") (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)) (additional citations omitted).[2] Here, Plaintiff's complaint lacks any allegation the deprivation of his constitutional rights is attributable to any custom, policy, or usage of the Village of Endicott. *See generally*, Dkt. No. 1. Thus, the complaint fails to state a claim against said municipality. *See*, *e.g.*, *Gidea*, 2025 WL 3640706, at *3.

Moreover, "[t]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional

[2] A plaintiff can establish the existence of an official policy or custom by way of: "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (internal quotations, citations, and brackets omitted).

deprivation. Specifically, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (internal quotations, alterations, and citations omitted). "The mere identification of an individual as a party is not enough to state their personal involvement." *Gammons v. Cody*, No. 1:25-CV-1714 (AJB/DJS), 2026 WL 500625, at *3 (N.D.N.Y. Feb. 4, 2026) (citing *Taylor v. City of New York*, 953 F. Supp. 95, 98 (S.D.N.Y. 1997); *Mullin v. P & R Educ. Servs., Inc.*, 942 F. Supp. 110, 114 (E.D.N.Y. 1996)), *report and recommendation adopted*, 2026 WL 498720 (N.D.N.Y. Feb. 23, 2026). While Defendants Noyes and Lane are included in the list of parties, the complaint lists no factual allegations against either individual, therefore, insofar as Plaintiff seeks to state a claim against either Defendant Noyes or Defendant Lane, any such claim should be dismissed for lack of personal involvement. *See*, *e.g.*, *Gammons*, 2026 WL 500625, at *3 ("Other than being identified as parties, however, neither is named at any other time in the Complaint . . . . Because there are no factual allegations of wrongdoing by either of these individuals, dismissal based on lack of personal involvement is recommended.").

Next, while the complaint does allege wrongdoing by Defendant McEwan, in *Heck v. Humphrey*, the United States Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would

> necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994) (footnote omitted). In other words, to the extent a plaintiff's claims "could be construed as calling into question the validity of any conviction which has not been reversed, expunged, declared invalid, or called into question by a relevant authority, [such] claims are barred by *Heck*." *Lynch v. Cnty. of Herkimer*, No. 6:23-CV-1454 (GTS/TWD), 2024 WL 2804839, at *4 (N.D.N.Y. Feb. 14, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 2804527 (N.D.N.Y. May 31, 2024); *see also*, *e.g.*, *Hines v. Giacona*, No. 5:18-CV-0002 (GTS/TWD), 2018 WL 4610675, at *3 (N.D.N.Y. Apr. 2, 2018) (concluding the plaintiff's § 1983 claims which "would necessarily call into question the validity of his conviction" was barred by *Heck v. Humphrey* "unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated.") (citations omitted), *report and recommendation adopted*, 2018 WL 3046513 (N.D.N.Y. June 20, 2018). Here, Plaintiff's complaint alleges he was arrested, but does not specify what criminal charges were brought against him in connection with his December 21, 2015, arrest, and/or whether Plaintiff was subsequently convicted of such charges. *See generally*, Dkt. No. 1.

"Should Plaintiff file an amended complaint, he may be able to address the *Heck* bar through more detailed pleading regarding the status of" any ongoing or completed criminal proceedings against him "or by demonstrating that his claims do not implicate the invalidity of" any conviction or confinement resulting from the events giving rise to his claims. *Canfield v. Tartaglia*, No. 6:24-CV-1303 (GTS/TWD), 2025 WL 553468, at *4 (N.D.N.Y. Feb. 19, 2025) (citation omitted), *report and recommendation adopted*, 2025 WL 949845 (N.D.N.Y. Mar. 28, 2025). "Accordingly, it is recommended that [P]laintiff's" federal Constitutional claims "be

dismissed without prejudice and with opportunity to amend *to specify any and all criminal charges brought against him in connection with the* [December 21, 2015] incident and whether a 'conviction or sentence has been reversed . . . , expunged . . . , [or otherwise] declared invalid.'" *Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 1486836, at *3 (N.D.N.Y. Apr. 4, 2019) (emphasis added) (quoting *Heck*, 512 U.S. at 486-87), *report and recommendation adopted*, 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019).

The Court advises Plaintiff that should he be afforded leave to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into any amended pleading by reference. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks omitted). Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant(s) and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant(s) which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: October 19, 2026
Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

***1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

1 The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2 Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

***2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

***3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

3 Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

## B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> ***4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

5 Plaintiff did not provide any transcripts.

### C. Discussion [6]

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

***5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).
>
> [ ]
>
> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

7 The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

***6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

***7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

***8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

***1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

***2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 6829046
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tony RILEY, Plaintiff,
v.
Staci Dennis TAYLOR, Asst. District Attorney; and Onondaga County Sex Offender Office, Defendants.

5:19-CV-1451 (BKS/ATB)
|
Signed 12/13/2019

**Attorneys and Law Firms**

TONY RILEY, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

***1** The Clerk sent to the court for review a civil rights complaint, together with a motion to proceed in forma pauperis ("IFP"), filed by plaintiff Tony Riley. (Complaint "Compl.") (Dkt. No. 1, 3). [1] Plaintiff subsequently filed an amended complaint. ("AC") (Dkt. No. 5).

1 When plaintiff initially filed this action, he neglected to include his motion for IFP status. Thus, the action was administratively closed pending plaintiff's submission of the appropriate application. (Dkt. No. 2). Plaintiff has now filed a proper motion to proceed IFP (Dkt. No. 3), the case was reopened (Dkt. No. 4), and the court may now conduct its initial review.

**I. IFP Application**

As to plaintiff's IFP application, the court finds that plaintiff has demonstrated sufficient economic need, and he has filed the appropriate information. Therefore, plaintiff has met the financial criteria for proceeding IFP.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. Complaint and Amended Complaint

Although plaintiff's complaint was confusing, it appeared that he was challenging his current incarceration, which appears to be based upon his failure to comply with sex offender registration requirements. Shortly after filing his original complaint, plaintiff filed an amended complaint, which appears to state the same claims in a slightly different fashion. (AC at pp. 1-5).[2] Plaintiff has also attached a variety of administrative requests that he has made at the Onondaga County Justice Center, together with the administrative responses. (AC at pp. 5-25).

2 Plaintiff has not numbered the pages of the amended complaint. Thus, when the court refers to a page number, it is referring to the pagination assigned by the court's electronic filing system, CM/ECF.

***2** Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading once as a matter of course twenty-one (21) days after serving it. Fed. R. Civ. P. 15(a)(1)(A). This plaintiff is proceeding IFP, and the court has not yet ordered service, thus, plaintiff may submit his amended complaint as a matter of course. The court will, therefore, consider plaintiff's amended pleading as the operative pleading in this case. However, the court will read and cite to both complaints in order to determine what plaintiff might be attempting to claim.

In his amended complaint, plaintiff alleges that on April 17, 1999, he was charged with sex abuse, "no investigation [and] no evidence," but he pled guilty to sex abuse and a weapons charge. (AC ¶ 4 - Facts). Plaintiff states that he was sentenced to one year for the sex abuse and one year for the "shotgun" that he had. (*Id.*) As a result of the sex abuse conviction, he was required to register as a sex offender for 10 years. (*Id.*) Plaintiff states that "before [his] sixteen months was over," he was supposed to appear before the sentencing court, but this did not happen. (*Id.*) Plaintiff states "that is why they keep arresting me...." (*Id.*)

Plaintiff's original complaint contained additional details, describing his repeated arrests for failure to register which do not appear in the amended complaint.[3] However, the amended complaint alleges additional facts that were not in the original complaint and names additional defendants who were not in the original complaint.

3 In his original complaint, plaintiff stated that his defense attorney and the Judge did not give him a chance to defend himself, and they forced him to plead guilty to sex abuse and a weapons charge, upon which he was sentenced to one year on each charge (Compl. ¶ 4-Facts) (Dkt. No. 1). Plaintiff states that, as a result of the conviction, he was required to register as a sex offender for ten years, beginning January 20, 2000. (*Id.*)
Plaintiff states that at the end of "those" sixteen (16) months, he was supposed to go back in front of the sentencing judge, "which never happened." (Compl. ¶ 5, Causes of Action). Plaintiff claims that although he had "completed" the sentence imposed by the trial court judge "after ten years," on March 27, 2009, he was arrested again and told that he had to do "20 years of register [sic]." (*Id.*) (First Cause of Action). Plaintiff then states that "now that I have the 20 years done, I have been arrested again saying I have to do life of register [sic]." (*Id.*) (Second Cause of Action). Plaintiff states that attorney Nikki Platenik "got in court and stated this case was suppose[ed] to have been droped [sic] and I was release and it was 2 years later." (*Id.*)
Plaintiff states that "I am arrested again on the same charge failure to register with no sentencing minutes no transcrip [sic] and they held me for 10 months and release[d] me." (*Id.*) (Third Cause of Action). It appears that plaintiff alleges that three months later, he was arrested again, held for seven months and then released again. (*Id.*) Plaintiff then states "now here I am 7/25/19 arrested on the same charge failure to register with a very high bail waiting trial." (Id.)

The caption of the amended complaint lists only "defendant" Onondaga County Sex Offender Officer. (AC at p. 1). However, in the "Parties" section of the complaint, plaintiff names new defendant "Sex Offender Officer,"[4] original defendant Assistant District Attorney Staci Dennis Taylor, and new defendant Attorney Robert Earl. (AC ¶ 3(a) - 3(c)).

4 The original complaint named the Onondaga County Sex Offender Office. (Compl. at 1).

***3** The "Causes of Action" in the amended complaint are not causes of action, but an extension of the Fact section. (AC ¶ 5). Plaintiff alleges that he "tried to tell these people nothing happen [sic] between this young woman and I [sic]." (AC ¶ 5) (First Cause of Action). Plaintiff essentially explains that he was not guilty of the sex abuse charge for which he plead guilty in 1999, and that his attorney[5] "set all this up because the parents had money." (*Id.*) The "Second Cause of Action" contains more of plaintiff's explanation and his problems with the 1999 conviction and subsequent registration requirements. (AC ¶ 5) (Second Cause of Action).

5 Plaintiff's attorney from his 1999 charges, Lisa Giles, is not named as a defendant in either complaint.

The "Third Cause of Action" adds new facts which were not in the original complaint. (AC ¶ 5) (Third Cause of Action). In this paragraph, plaintiff states that he had an accident, and now has multiple medical issues, but makes no claims regarding his medical condition. He ends the amended complaint by stating that he is "incarcerated for something he never did." (*Id.*) The attachments to the amended complaint consist of plaintiff's request for information regarding his criminal case, including sentencing transcripts and sentencing minutes from 1-20-2000. (AC - Attachments at p. 13).

In his prayer for relief, he requests that "this sex offender be remove [sic] because the [sic] sentence me to 10 years 17 years later they told me life statutes of limitations was over on that in 5 years this happen 4-17-99.[6] (AC ¶ 6). Plaintiff is also requesting $350 dollars per day for ten years, nine months, and 27 days.[7]

6 Plaintiff's sentences run together without punctuation, but based on the complaint and amended complaint, the court has interpreted this sentence loosely as follows: Plaintiff wishes his sex offender classification and registration requirements "removed," because he was originally required to register for ten years, but seventeen years later, he was told that he had to register for life. Plaintiff claims that the statute of limitations was "over on that in 5 years."

7 Plaintiff's original complaint requested that he be released and that he be awarded $15 million dollars. (Compl. ¶ 6).

### III. Jurisdictional Basis

Plaintiff brings this action on a form reserved for cases brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971). *Bivens* established a cause of action for monetary damages resulting from the violation of a constitutional right by federal agents or employees, acting under color of *federal* law. *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (discussing history of *Bivens* actions).

One of the defendants in this action is an Assistant District Attorney in Onondaga County, and the other defendant is a county/state entity or officer. The final defendant appears to be a court-appointed private attorney. Thus, none of the defendants acts under color of federal law for purposes of *Bivens.* Clearly plaintiff filed both his original and his amended complains on the wrong forms. Because plaintiff is pro se, the court will interpret the complaint as raising claims under whatever basis is appropriate without regard to the form-complaint. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

Section 1983 of Title 42 of the United States Code provides a cause of action for individuals who have had their constitutional or federal rights violated by a defendant acting under color of ***state*** law. 42 U.S.C. § 1983. Section 1983 is based upon an underlying violation of a constitutional right and does not provide a right of action in itself. *See Singer v. Fulton County Sheriff*,

63 F.3d 110, 119 (2d Cir. 2010) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.")

***4** To the extent that plaintiff could bring an action for damages with the facts that he alleges, the only proper basis for jurisdiction would be under section 1983. [8] The court will interpret plaintiff's action to have been brought under section 1983 and will proceed to analyze whether the action may proceed further.

8 Plaintiff appears to be familiar with section 1983 because in one of the documents attached to his amended complaint, he states that he is filing a "1983 Bivens." Plaintiff has confused the two actions. (AC Attachment at 4).

**IV. Release from Confinement**

**A. Legal Standards**

Plaintiff may only bring a request for release from confinement in a petition for habeas corpus pursuant to 28 U.S.C. § 2254. *McFadden v. Pataki*, No. 17-CV-1048, 2017 WL 4350591, at *2 (S.D.N.Y. July 7, 2017) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005)) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of habeas corpus is sole remedy for prisoner seeking to challenge the fact or duration of his confinement)). Section 2254 requires that the inmate exhaust his state court remedies prior to seeking such relief, and plaintiff may not circumvent this requirement by filing a section 1983 action. *Id.*

**B. Application**

In his original complaint, in addition to damages, plaintiff asked for release from his current confinement. Plaintiff does not make that specific request in the amended complaint, but he does ask that the sex "offender" be "removed," which could result in the plaintiff's release. [9] Release from confinement may not be obtained without the exhaustion of state court remedies under 28 U.S.C. § 2254. In the original complaint, plaintiff stated that he was currently incarcerated and awaiting trial. It, therefore, appears from the face of his complaint that he has not exhausted his state court remedies with respect to any challenges that he might have to his current incarceration. [10] The same is true to the extent that plaintiff might be attempting to challenge his 1999 conviction and its alleged effect on his current situation. The amended complaint contains language which appears to explain plaintiff's innocence of the 1999 sex abuse charges. To the extent that plaintiff may be requesting release from confinement, the claim must be dismissed without prejudice at this time.

9 The court notes that, to the extent that plaintiff is challenging the registration requirement itself, relating to the 1999 conviction, separate from his current incarceration it has been held that sex offender registration requirements are collateral consequences of a criminal conviction. *Rodriguez v. Attorney General*, No. 10 Civ. 3868, 2011 WL 519591, at *5-8 (S.D.N.Y. Feb. 15, 2011) (citations omitted). After the sentence has been served, the collateral consequences alone are insufficient to satisfy the "in custody" requirement of section 2254. *See Fowler v. Fischer*, No. 18 Civ. 2551766, at *2-3 (S.D.N.Y. May 30, 2019) (discussing cases). The court in *Fowler* stated that, although the Second Circuit has not decided this issue, several circuit courts of appeal have determined that the registration requirement alone does not satisfy the "in custody" requirement, making habeas corpus unavailable to the individual. *Id.* at *3-4 (citing cases). In this case, plaintiff's sentence of incarceration ended long ago, and any current registration requirement would not be sufficient to satisfy the "in custody" requirement which would be necessary to challenge the 1999 conviction. In any event, without engaging in a detailed discussion, the one-year statute of limitation to challenge the 1999 conviction would likely have expired long ago. 28 U.S.C. § 2244(d)(1).

10 Although plaintiff may not be aware, or may not understand, the Sex Offender Registration Act ("SORA") in New York State, N.Y. Correct. Law § 168 et seq., was amended in 2006. The New York State Legislature amended sections 168-h and 168-o. *Doe v. Cuomo*, 755 F.3d 105, 108-109 (2d Cir. 2014). The amendment to section 168-h increased the registration requirement for level one offenders from 10 to 20 years. *Id.* Section 168-o was amended to remove the language allowing a sex offender to petition the court for a modification of the level of notification. *Id.* at 109. In *Doe*,

the court rejected constitutional challenges by level one sex offenders to the amendment increasing their registration requirement after their convictions and the imposition of sentence. *Id.* at 109-115. The court rejected an ex post facto challenge, a procedural due process challenge, a substantive due process challenge, an equal protection and Fourth Amendment challenge, and a claim that the increase in registration time violated the plaintiffs' plea agreements. *Id.* Plaintiff pled guilty in 1999, when the registration requirement was 10 years. However, prior to the expiration of those 10 years, the statute was amended to require 20 years of registration. This amendment may be the explanation for plaintiff's claim that his registration requirement was "increased" in 2009, when he should have been completing his requirements. Based on *Doe*, there is no avenue for plaintiff to challenge that increase.

## V. ***Heck v. Humphrey***

### A. Legal Standards

***5** Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

### B. Application

To the extent that plaintiff seeks money damages and not release from confinement, the amended complaint must also be dismissed. He states that he is awaiting trial on his current charges. Thus, he cannot meet the requirement in *Heck* that his conviction has been reversed or called into question by a federal habeas court. The same is true to the extent that he is somehow attempting to challenge his 1999 conviction or the effect that it may be having on his current incarceration.

## VI. Prosecutorial Immunity

### A. Legal Standards

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### B. Application

In both complaints plaintiff has named Assistant District Attorney Staci Dennis as an individual defendant in this action. Although plaintiff has named defendant Dennis in the caption of the complaints, he does not mention her at all in the facts or anywhere else in the body of either complaint. Personal involvement is a prerequisite to liability in a section 1983 action. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In addition to the requirement that any defendant in a section 1983 complaint be "personally involved" in the alleged constitutional violations, as an assistant district attorney, defendant Dennis would be absolutely immune from any damage claim made by plaintiff to the extent that she was performing a prosecutorial function. Since plaintiff has not even mentioned this defendant in the body of the complaint or the amended complaint, the court cannot determine whether she would be entitled to absolute or qualified immunity, but the claim would have to be dismissed in any event based on the lack of alleged personal involvement.

## VII. Municipal Liability

### A. Legal Standards

A municipality may not liable pursuant to section 1983 under the theory of respondeat superior, but may be only liable where its employee acted pursuant to an official policy, custom, or practice. *See Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 694–95 (1978); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990). A policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (internal quotation marks omitted).

### B. Application

***6** The court notes that in his original complaint, plaintiff appears to have named the Onondaga County Sex Offender ***Office*** as a defendant. In the amended complaint, he writes "officer." To the extent that plaintiff was attempting to sue the "office," it is well-settled that an administrative arm of a municipality, such as the Police Department or the Onondaga County Sex Offender Office, to the extent that such an "Office" exists, "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Leland v. Moran*, 100 F. Supp. 2d 140, 145 (N.D.N.Y. 2000) (internal quotation omitted). *See also Clayton v. City of Kingston*, 44 F. Supp. 2d 177, 183 (N.D.N.Y. 1999).

Plaintiff has failed to allege any facts in either complaint that would remotely state a claim for municipal liability in this case. [11] Thus, the amended complaint must be dismissed with prejudice as against the Sex Offender "Office," and to the extent that plaintiff's claim may be interpreted as a claim against Onondaga County, based on plaintiff naming the Onondaga County Sex Offender Office, the complaint must be dismissed without prejudice.

11 A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), (Rep.-Rec.), *adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

To the extent that the plaintiff is now attempting to name an "officer," he has not indicated who that "officer" might be or how the "officer" was personally involved in any of the conduct alleged by plaintiff. Thus, the amended complaint would have to be dismissed without prejudice as against an unidentified "officer," who is not alleged to have engaged in any unconstitutional conduct.

## VIII. Defense Counsel

### A. Legal Standards

It is well-settled that even a court-appointed defense attorney does not act under color of state law for purposes of section 1983. *Sash v. Rosahn*, 450 F. App'x 42 (2d Cir. 2011); *Jhagroo v. Santos*, No. 19-CV-2037, 2019 WL 1876723, at *2 (E.D.N.Y. Apr. 26, 2019) (citations omitted).

**B. Application**

In his amended complaint, plaintiff has named Attorney Robert Earl, Esq. as a defendant. First, Attorney Earl is not mentioned anywhere in the body of the complaint, so it is impossible to know what plaintiff's claims against the attorney might be. The only reason that the court knows that Attorney Earl may currently represent the plaintiff is that the first response to one of the administrative requests attached to the amended complaint states that "Your attorney is Robert Earl...." (AC Attachment at 1). Thus, there is no allegation of the "personal involvement" of Attorney Earl.

***7** In any event, as stated above, plaintiff's criminal attorney does not act under color of state law, and there is no jurisdiction under section 1983 to sue him. Thus, the amended complaint must be dismissed as against Attorney Earl for lack of jurisdiction.

## IX. Opportunity to Amend

**A. Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

**B. Application**

While this court is recommending dismissal without prejudice, plaintiff would not be able to amend at this time based on *Heck* and based on the impropriety of requesting release in a civil rights action. No amendment at this time is available to plaintiff to cure the deficiencies in his complaint. Therefore, the court is recommending dismissal of some of the complaint without prejudice, but without the opportunity to amend at this time.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's request to proceed IFP (Dkt. No. 3) is **GRANTED** for purposes of filing only, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as against the **ONONDAGA COUNTY SEX OFFENDER OFFICE**, based upon 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE as against DEFENDANT ROBERT EARL, ESQ.**, based on lack of subject matter jurisdiction, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITH PREJUDICE** against defendant **DENNIS** to the extent that defendant Dennis was acting in her prosecutorial capacity based upon absolute immunity under 28 U.S.C. § 1915(e)(2) (B)(iii), and it is

**RECOMMENDED**, that the remainder of the complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE**, based upon 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, but without opportunity to amend at this time, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6829046

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 886128
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tony D. RILEY, Plaintiffs,
v.
Staci Dennis TAYLOR, Onondaga County Sex Offender Office and Robert Earl, Defendants.

5:19-cv-01451 (BKS/ATB)
|
Signed 02/24/2020

**Attorneys and Law Firms**

Plaintiff pro se, Tony D. Riley, 99000501, Onondaga County Justice Center, 555 South State Street, Syracuse, NY 13202.

**DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

***1** Plaintiff Tony Riley commenced this action on November 22, 2019, and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 3 and 5). This matter was referred to United States Magistrate Judge Andrew T. Baxter who, on December 13, 2019, granted Plaintiff's application to proceed IFP for purposes of filing only and issued a Report-Recommendation, recommending that Plaintiff's Amended Complaint be dismissed with prejudice against Defendants Onondaga County Sex Offender Office and Staci Dennis Taylor; dismissed without prejudice against Defendant Robert Earl for lack of subject matter jurisdiction; and, as to the remainder, dismissed without prejudice and without leave to amend. (Dkt. No. 6). The Report-Recommendation stated that Plaintiff had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 15).

The Report-Recommendation was sent to Plaintiff's last known address, as well as an address that he had included on his Amended Complaint, but the mail was returned to the Court stamped "Not Here/Return to Sender," and "Not Known Unable to Forward." (Dkt. No. 8, 9). On January 24, 2020, the Court issued an Order granting Plaintiff an additional fourteen days to notify the Court of his current address and file any objections to the Report-Recommendation. (Dkt. No. 10). That Order was also returned to the Court marked "Not Here/Return to Sender." (Dkt. No. 11). Plaintiff has failed to respond to the January 24, 2020 Order or submit objections to the Report-Recommendation.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

Accordingly, it is

**ORDERED** that the Amended Complaint (Dkt. No. 5) is **DISMISSED it its entirety with prejudice** as against Defendant Onondaga County Sex Offender Office under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and it is further

**ORDERED** that the Clerk is directed to add Defendant Robert Earl to the docket; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED in its entirety without prejudice** as against Defendant Robert Earl based on lack of subject matter jurisdiction; and it is further

**ORDERED** the Amended Complaint is **DISMISSED with prejudice** as against Defendant Staci Dennis Taylor to the extent she was acting in her prosecutorial capacity based upon absolute immunity under 28 U.S.C. § 1915(e)(2)(B)(iii); and it is further

**ORDERED** that the remainder of the Amended Complaint is **DISMISSED in its entirety without prejudice**, based upon 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, but without opportunity to amend at this time; and it is further

***2** **ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 886128

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3640706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew B. GIDEA, Plaintiff,
v.
OWEGO POLICE DEPARTMENT; Vill. of Owego; Officer Starzek, Owego Police Officer; Officer Parker, Owego Police Officer; Lillian Reardon, Esq., Assistant District Attorney; and Kyle Fleming, Dog Control Officer, Defendants.

3:25-CV-0103 (ECC/ML)
|
Signed December 16, 2025

**Attorneys and Law Firms**

ANDREW B. GIDEA, Plaintiff, Pro Se, 205b South Corn Street, Ithaca, New York 14850.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

## I. BACKGROUND

### A. Procedural History

***1** Plaintiff Andrew B. Gidea ("Plaintiff") commenced this civil rights action *pro se* by the filing of a complaint alleging that his rights were violated by Defendants Owego Police Department, Village of Owego, Officer Starzek, Officer Parker, Lillian Reardon, Esq., and Kyle Fleming (collectively "Defendants"). (Dkt. No. 1.) Plaintiff did not pay the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

### B. Complaint

Construed as liberally [1] as possible, the Complaint alleges that Plaintiff's civil rights were violated by Defendants. (*See generally* Dkt. No. 1.)

1 The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Complaint alleges that on September 27, 2024, Defendants Starzek and Parker entered "a dwelling by opening a locked door without a search warrant or probable cause" which included Plaintiff being detained and the seizure of Plaintiff's "emotional support" dog. (Dkt. No. 1 at 5.) Plaintiff asserts that Defendant Reardon was "attempting to hold a hearing [on] January 8, 2025[,] ... without serving process on [ ] Plaintiff." (*Id.*) Plaintiff appears to object to the fact that the hearing was scheduled to be held virtually via Microsoft Teams. (*Id.*)

Plaintiff alleges that he was struck by a car on October 11, 2024, and he has been unable to work since the accident because of the loss of his emotional support animal. (Dkt. No. 1 at 6.) Notwithstanding this allegation, Plaintiff also alleges that "[t]his has been going on since I became a volunteer firefighter in October of 2022." (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following four claims: (1) a claim of unlawful search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim pursuant to Fed. R. Crim. P. 43; (3) a claim pursuant

to 18 U.S.C. § 1001; and (4) a claim pursuant to 18 U.S.C. § 641. (Dkt. No. 1 at 2.) As relief, Plaintiff seeks $40,000,000.00 in damages, a "restraining order and a contempt of court charge for any party that claims to have a power of attorney over [ ] Plaintiff," and "a writ of execution for the money so ordered." (Dkt. No. 1 at 6.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted.[3]

2 The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3 Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARDS

***2** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

### A. Claims Against Defendant Owego Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by* 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).

***3** As a result, I recommend that Plaintiff's claims against Defendant Owego Police Department be dismissed because it is not an entity that is amenable to suit.

### B. Claims Against Defendant Village of Owego

"[T]o hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Adams v. City of Syracuse*, 21-CV-0650, 2025 WL 2772081, at *28 (N.D.N.Y. Sept. 29, 2025) (Nardacci, J.) (internal brackets omitted) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). A plaintiff can establish the existence of an official policy or custom through "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (internal quotations, citations, and brackets omitted).

Here, Plaintiff essentially complains of one discrete incident during which Defendants Starzek and Parker—who are employed by Defendant Village of Owego as police officers—did not act properly. (Dkt. No. 1 at 4-5.) There is no indication that Plaintiff can assert a policy or custom, which would support municipal liability based on these facts. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.); *Wright v. City of Syracuse*, 10-CV-0661, 2014 WL 1293527, at *15 (N.D.N.Y. Mar. 31, 2014) (Suddaby, J.) ("Isolated acts of municipal employees are typically not sufficient to establish municipal liability."). In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant Village of Owego.

As a result, I recommend that Plaintiff's claims against Defendant Village of Owego be dismissed for failure to state a claim upon which relief may be granted.

### C. Claims Against Defendant Reardon [4]

4 Plaintiff does not appear to include any request for prospective injunctive relief. *See Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (Hurd, J.) (citations omitted) (holding that although prosecutorial immunity bars Section 1983 claims for damages, an official-capacity claim for prospective injunctive relief may proceed to remedy an alleged "ongoing violation of federal constitutional law.").

"Prosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.' " *Joyner v. Cnty. of Cayuga*, 20-CV-0060, 2020

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (D'Agostino, J.) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, 11-CV-0316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, 00-CV-3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses[;]" "the knowing use of perjured testimony[;]" "the deliberate withholding of exculpatory information[;]" the "making [of] false or defamatory statements in judicial proceedings[;]" and the "conspiring to present false evidence at a criminal trial[.]" *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976); *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

***4** The Complaint appears to allege that Defendant Reardon, as Assistant District Attorney, was scheduled to participate in a virtual hearing conducted by the Village of Owego Court and Plaintiff believes that the hearing should be held in-person. (Dkt. No. 1 at 4-5.) Based on these allegations, Defendant Reardon is entitled to prosecutorial immunity for the actions she takes in her role a prosecutor. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983.").

To the extent that Plaintiff attempts to assert claims against Defendant Reardon in her official capacity, as an employee of the Tioga County District Attorney's Office, those claims are subject to dismissal pursuant to the Eleventh Amendment. *See D'Alessandro v. City of New York,* 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.").

As a result, I recommend that Plaintiff's claims against Defendant Reardon be dismissed based on the doctrine of prosecutorial and sovereign immunity.

### D. Claims Against Defendant Fleming

A careful review of the Complaint reveals that Defendant Fleming is listed in the caption and mentioned in the list of defendants. (Dkt. No. 1 at 1, 5.) However, the Complaint fails to allege any action or inaction on behalf of Defendant Fleming. (*See generally* Dkt. No. 1.)

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Khan, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

As a result, I recommend that Plaintiff's claims against Defendant Fleming be dismissed for failure to state a claim upon which relief may be granted.

### E. Claims Against Defendants Starzek and Parker

#### 1. Claims Pursuant to 18 United States Code

To the extent that Plaintiff attempts to assert claims under 18 U.S.C. §§ 1001 and 641, I recommend that they be dismissed because they do not create any causes of action that can be pursued by private plaintiffs.

“[A] private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code.” *Bennett v. New York State Thruway Auth.*, 22-CV-0337, 2024 WL 1053222, at *17 (N.D.N.Y. Mar. 11, 2024) (Hurd, J.). “It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints.” *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972). Consequently, the Second Circuit has repeatedly held that there is no private right of action under Title 18 of the U.S. Code. *See, e.g., Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases); *Allen v. FMR LLC*, 23-CV-0031, 2023 WL 142903, at *2 (D. Ariz. Jan. 10, 2023) (dismissing the plaintiff's claims pursuant to various sections of Title 18 of the United States Code—including 18 U.S.C. § 641—because “these are criminal statutes and do not create any private right of action.”).

### 2. Claims Pursuant to the Federal Rules of Criminal Procedure

***5** Moreover, Plaintiff's claim alleging that Defendants violated the Federal Rules of Criminal Procedure is also incognizable because “rules governing procedure in the federal courts do not give rise to private causes of action.” *Good v. Khosrowshahi*, 296 F. App'x 676, 680 (10th Cir. 2008); *see Jenkins v. Raytheon Tech. Corp.*, 21-CV-0406, 2023 WL 2346576, at *6 (D. Conn. Mar. 3, 2023) (citing *Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989)) (dismissing the plaintiff's claims pursuant to the Federal Rules of Criminal Procedure as “improper” and noting that “the federal procedural rules [do not] create substantive rights.”); *Bronnenberg v. Eggar*, 19-CV-0021, 2019 WL 13260183, at *3 (D. Wyo. Feb. 25, 2019) (collecting cases) (dismissing the plaintiff's “claims that the defendants violated certain rules of criminal procedure [because those claims] are not viable causes of action in this civil lawsuit.”).

As a result, I recommend that Plaintiff's claims pursuant to Fed. R. Crim. P. 43 be dismissed.

### 3. Claims Pursuant to the Fourth Amendment

The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. “By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as” the Village of Owego. *Tsinberg v. City of New York,* 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It “applies in the civil context as well” as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

“In analyzing a claim for unlawful search and seizure under the Fourth Amendment, courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights.” *Hatcher v. City of New York*, 15-CV-7500, 2018 WL 1583036, at *7 (S.D.N.Y. Mar. 27, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (“[T]he Constitution forbids ... not all searches and seizures, but unreasonable searches and seizures”)).

Here, the Complaint sets forth no facts related to the search. For example, the Complaint fails to identify whose “dwelling” was searched, when the search occurred, what led to the search, whether the search preceded an arrest or whether the arrest was based on the search. (*See generally* Dkt. No. 1.) Hence, the undersigned has “no basis upon which to analyze the reasonableness of the search or whether one of the exceptions to the Fourth Amendment's warrant requirement apply to the search at issue.” *Besley v. Borden*, 21-CV-6754, 2022 WL 1128556, at *3 (W.D.N.Y. Apr. 15, 2022). One exception is a search incident to an arrest. *Alexander v. City of New York*, 17-CV-3170, 2019 WL 5887300, at * 5 (S.D.N.Y. Nov. 8, 2019) (citing *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017)) (“While a search typically requires a warrant to be reasonable, the search incident to arrest doctrine is an exception to the warrant requirement of the Fourth Amendment.”); *see also United States v. DeJesus*, 538

F. Supp. 3d 382, 389 (S.D.N.Y. 2021) (citing *Samson v. California*, 547 U.S. 843, 848-49 (2006)) ("One of the 'specifically and well-delineated exceptions' pertains to persons who have been paroled from a sentence of imprisonment and who, as a condition of such parole, have been required to submit their person or property to search without a search warrant. Parolees, like probationers, have significant[ly] diminished expectation of privacy."). "Without knowing any of the circumstances of the search, the Court simply cannot analyze either whether the search without a warrant was unreasonable or whether the search was executed pursuant to one of the exceptions to the Fourth Amendment's warrant requirement." *Besley*, 2022 WL 1128556, at *3.

***6** As a result, I recommend that Plaintiff's unreasonable search claim pursuant to the Fourth Amendment and 42 U.S.C. § 1983 be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [5]

5 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In deference to plaintiff's pro se status, and because a more detailed pleading could potentially cure the defects identified against Defendants (1) Village of Owego, Starzek, Parker, and Fleming, and (2) Reardon in her individual capacity, [6] the undersigned recommends dismissing Plaintiff's claims without prejudice and with leave to amend. However, the issue with Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department is substantive such that a better pleading will not cure it. As a result, I recommend that Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department be dismissed without leave to replead.

6 It is unlikely that Plaintiff will be able to cure the defects associated with his claims against Defendant Reardon in her individual capacity, which the undersigned recommends be dismissed based on the doctrine of prosecutorial immunity. However, it is possible that with additional or different factual allegations, the doctrine of prosecutorial immunity would not apply to Plaintiff's claims. As a result, the undersigned recommends that Plaintiff's claims be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

***7 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** (1) **without prejudice** and **with leave to amend** with respect to Plaintiff's claims against Defendants (a) Village of Owego, Starzek, Parker, and Fleming, and (b) Reardon in her individual capacity, and (2) **without leave to amend** with respect to Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

7 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

8 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 3640706

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1284242
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew B. GIDEA, Plaintiff,
v.
OWEGO POLICE DEPARTMENT, et al., Defendants.

3:25-cv-0103 (ECC/ML)
|
Signed May 11, 2026

**Attorneys and Law Firms**

Andrew B. Gidea, Pro Se Plaintiff

**MEMORANDUM-DECISION AND ORDER**

Elizabeth C. Coombe, United States District Judge:

***1** Pro se Plaintiff Andrew Gidea commenced this proceeding in the Southern District of New York by the filing of a Complaint, and sought leave to proceed *in forma pauperis* (IFP). Dkt. Nos. 1, 2. On January 10, 2025, Chief United States District Judge Laura Taylor Swain transferred this action to the Northern District of New York pursuant to 28 U.S.C. § 1404(a), as the more convenient forum. Dkt. No. 6. This matter was subsequently referred to United States Magistrate Judge Miroslav Lovric who, on December 16, 2025, granted Plaintiff's application to proceed IFP and issued a Report-Recommendation, recommending that Plaintiff's Complaint be dismissed with leave to replead as to certain Defendants and claims. Dkt. No. 8. Plaintiff was informed that he had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 14. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error, the Court adopts Magistrate Judge Lovric's recommendation that the Complaint be dismissed with leave to amend as against Defendant Village of Owego and Defendant Reardon in her individual capacity, for the reasons set forth in the recommendation. Dkt. No. 8 at 5-8.

The Court also agrees that the Complaint should be dismissed against Defendants Starzek and Parker, with leave to amend to the extent Plaintiff asserts a Fourth Amendment claim for unreasonable search and/or unlawful detention. As Magistrate Judge Lovric observed, Plaintiff's allegation that these Defendants "entered a dwelling by opening a locked door without a search warrant or probable cause. This led to the Plaintiff being unlawfully detained[,]" lacks minimally sufficient factual detail to support a Fourth Amendment claim. Dkt. No. 8 at 10-11. *See, e.g., Keith v. Romain,* No. 5:25-cv-00747 (AMN/PJE), 2026 WL 612677, at *2 (N.D.N.Y. Mar. 4, 2026) (Adopting recommendation to dismiss Fourth Amendment unlawful seizure claim where "Plaintiff had not alleged any details regarding his interactions with [the Defendant] or the events leading up to his purported seizure."); *Besley v. Borden*, No. 21-cv-06754, 2022 WL 1128556, at *3 (W.D.N.Y. Apr. 15, 2022) ("Without knowing any of the circumstances of the search, the Court simply cannot analyze either whether the search without a warrant was unreasonable or whether the search was executed pursuant to one of the exceptions to the Fourth Amendment's warrant requirement.").

The Complaint should also be dismissed against Defendant Fleming with leave to amend. Plaintiff alleges that Defendant Fleming, a dog control officer, "stole" Plaintiff's emotional support animal while Plaintiff was handcuffed to the wall. Dkt. No. 1 at 5. To the extent Plaintiff asserts a Fourth Amendment unlawful seizure claim predicated on these allegations, they too lack sufficient information to guide the Court in determining whether Defendant Fleming violated Plaintiff's constitutional rights. "The unreasonable removal or killing of a companion animal constitutes an unconstitutional seizure of personal property under the Fourth Amendment." *Newsome v. Bogan*, 795 F. App'x 72, 73 (2d Cir. 2020) (citing *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013); *Fabrikant v. French*, 691 F.3d 193, 215-16 (2d Cir. 2012)). "To determine whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure." *Id.* (quoting *Carroll*, 712 F.3d at 651). Here, Plaintiff's limited allegations as to this claim are too conclusory and speculative to plausibly suggest a Fourth Amendment seizure claim related to his dog, to the extent they fail to describe the circumstances leading up to and surrounding the alleged seizure, and whether his dog has been euthanized. Accordingly, Plaintiff's Fourth Amendment unlawful seizure claim related to his dog is dismissed for failure to state a claim. *See Lettieri v. Gaska*, No. 3:24-cv-0102 (GTS/ML), 2025 WL 2404293, at *8 (N.D.N.Y. Apr. 25, 2025) (recognizing that unreasonable removal of companion animal can constitute a violation of the Fourth Amendment, but dismissing claim where allegations were "too speculative" as to the purported seizure), *report and recommendation adopted*, 2025 WL 2403075 (N.D.N.Y. Aug. 19, 2025), *appeal dismissed* (Oct. 27, 2025).

***2** Finally, the Court agrees that Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department should be dismissed without leave to amend, for the reasons stated in Magistrate Judge Lovric's recommendation. Dkt. No. 8 at 4-5, 8.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation, Dkt. No. 8, is **ADOPTED** as set forth in this Memorandum-Decision and Order; and it is further

**ORDERED** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED without prejudice and with leave to amend** as against Defendants Village of Owego, Starzek, Parker, Fleming, and Reardon in her individual capacity; and it is further

**ORDERED** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED without prejudice but without leave to amend** as against Defendants Owego Police Department and Reardon in her official capacity; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order from the Court; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 1284242

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag
Appeal Filed by Adams v. City of Syracuse, 2nd Cir., October 17, 2025

2025 WL 2772081
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, Jr., Plaintiff,
v.
CITY OF SYRACUSE et al., Defendants.

5:21-cv-00650 (AMN/MJK)
|
Signed September 29, 2025

**Attorneys and Law Firms**

A. CABRAL BONNER, ESQ., CHARLES A. BONNER, ESQ., LAW OFFICES OF BONNER & BONNER, 3060 Kerner Boulevard – Suite A, San Rafael, California 94901, Attorneys for Plaintiff.

JESSE P. RYDER, ESQ., RYDER LAW FIRM, 6739 Myers Road, East Syracuse, New York 13257, Attorneys for Plaintiff.

DANIELLE R. SMITH, ESQ., TODD M. LONG, ESQ., CITY OF SYRACUSE, CORPORATION COUNSEL, 233 East Washington Street, Room 300 City Hall, Syracuse, New York 13202, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

***1** On June 3, 2021, Robert Adams, Jr. ("Plaintiff"), commenced this civil rights action against Police Officers Joseph Tolone, [1] Aaron Cecile, and Lashonda Russell (the "Responding Officers"); Detectives Ryan Brimmer and Jeffrey Beauchine (the "Detectives" and together with the Responding Officers, the "Individual Defendants"); the City of Syracuse ("Defendant City," and, together with the Individual Defendants, "Defendants"); Does 1-100 (the "Doe Defendants"); and others, alleging violations of federal and state law arising from his arrest and subsequent monthslong detention during a since-dismissed criminal prosecution. Dkt. No. 1 ("Complaint").

1 The Complaint incorrectly spells Officer Tolone's last name as "Toltone." Dkt. No. 77-55 at 1 n.1. Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the document's internal pagination.

Presently before the Court [2] is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 77 ("Motion"), Plaintiff's opposition, Dkt. No. 85, and Defendants' reply in further support, Dkt. No. 90. For the reasons set forth below, the Motion is granted in part and denied in part.

2 This case was reassigned to the undersigned on January 19, 2023. Dkt. No. 34.

### II. BACKGROUND [3]

3 Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response. *See* N.D.N.Y. L.R. 56.1. The Court has also considered the parties' other submissions and attached exhibits. *See generally* Dkt. Nos. 77, 85-86, 90.

**A. The Parties**

Plaintiff is a black man who has lived in Syracuse for most of his life. *See, e.g.,* Dkt. No. 77-44 at 16:5-17:4. In May 2019, he was 55 years old, approximately 5'7" in height and 160 pounds in weight, and lived in an apartment building located at 941 James Street. Dkt. No. 90-1 at ¶ 515; Dkt. No. 77-23. At that time, Plaintiff's medical diagnoses included, *inter alia*, alcoholism, depression, and schizophrenia. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454.

Defendant City is a large municipality in New York State with a police department that employs the Individual Defendants. As of May 2019, Officer Cecile had been a patrol officer for approximately two years, Dkt. No. 77-47 at 21:24-22:15; Officer Russell had been a patrol officer for approximately three years, Dkt. No. 77-46 at 9:17-25; Officer Tolone had been a patrol officer for approximately three years, Dkt. No. 77-48 at 9:24-10:2; Detective Brimmer had been a detective for less than three years, Dkt. No. 77-49 at 12:11-13:8; and Detective Beauchine had been a detective for approximately nine years, Dkt. No. 77-51 at 16:21-17:17.

**B. Relevant Events**

**1. May 1, 2016**

Shortly after 7:30 p.m. on May 1, 2019, police (apparently including Officer Russell) and emergency medical services found Plaintiff intoxicated and lying on the side of a road in Syracuse. Dkt. No. 77-42 at 2, 50-51; Dkt. No. 77-46 at 104:15-25. Plaintiff was covered in feces and urine and reported drinking six to seven "Na[tt]y Daddy beverages," a brand of malt liquor. Dkt. No. 77-42 at 2, 51; Dkt. No. 77-43 at 49:11-13. Plaintiff was transported to a local hospital emergency room for treatment, where his blood alcohol level ("BAC") was measured at 0.422 percent later that night. [4] Dkt. No. 77-55 at ¶ 311; Dkt. No. 77-42 at 25.

4 A person with a BAC of 0.08 percent is considered intoxicated *per se* under New York's Vehicle and Traffic Law ("VTL"). *See* N.Y. Veh. & Traf. Law § 1192(2); *see also Dalmasi v. City of Mount Vernon*, No. 13-cv-8672, 2014 WL 6645827, at *1 n.3 (S.D.N.Y. Nov. 24, 2014) (noting that a court may "take judicial notice of the VTL in deciding" summary judgment) (citations omitted).

**2. May 6, 2016**

**a. 941 James Street**

***2** At around 3:00 p.m. on May 6, 2019, Plaintiff began drinking in and in front of his apartment building at 941 James Street. Dkt. No. 77-55 at ¶¶ 407, 410. By 4:00 or 5:00 p.m., he had consumed three or four 24-ounce cans of Natty Daddy. *Id.* at ¶ 411. Around that time, a younger man, Charles Jones, came over to socialize with Plaintiff. *Id.* The two had known each for several years and, while they were not actually related, Plaintiff referred to Mr. Jones as his nephew and Mr. Jones called Plaintiff uncle. Dkt. No. 77-43 at 71:8-15; Dkt. No. 77-44 at 59:1-7, 98:16-23. Plaintiff and Mr. Jones walked to a store to purchase four of five more 24-ounce cans of Natty Daddy that they could share. Dkt. No. 77-55 at ¶¶ 414, 416. Plaintiff paid for the alcohol because Mr. Jones had no money. *Id.* at ¶ 415. The two returned to 941 James Street, where a woman (Vanessa Goldych) and an unnamed man were outside the building. *Id.* at ¶¶ 417, 419, 421-22, 424. Plaintiff continued drinking Natty Daddy and joined Mr. Jones, Ms. Goldych, and the unnamed man in front of 941 James Street. *Id.* at ¶¶ 419-20. At some point, Mr. Jones and the unnamed man got into a verbal altercation, which then turned physical. *Id.* at ¶¶ 421, 424.

**i. 911 call**

Shortly before 7:30 p.m., a young woman (Arianna Jordan Bailey) was walking down James Street with her siblings. *Id.* at ¶¶ 1, 339. At that time, Ms. Bailey observed the physical altercation between Mr. Jones and the unnamed man. *Id.* at ¶ 340. Mr. Jones swung a stick at the unnamed man; that man grabbed the stick and proceeded to knock Mr. Jones to the ground. *Id.* The unnamed man then discarded the stick, smashed Mr. Jones' cell phone on the ground, and took off running down the sidewalk. Dkt. No. 85-10 at 4. Mr. Jones was not moving and did not get up, and Plaintiff went to check on him. *Id.* at 5. Plaintiff asked Ms. Bailey to call 911. *Id.* At approximately 7:25 p.m., Ms. Bailey did so. Dkt. No. 77-55 at ¶ 1.

The roughly three and a half minute recording of that 911 call reflects that Ms. Bailey informed the dispatcher that two people had been fighting; one was unconscious on the ground; and "a big type log looking thing" had been involved as a weapon. *Id.* at ¶¶ 2-4; *see also* Dkt. No. 77-5. When the dispatcher asked whether the assailant was still there, Ms. Bailey said "no" and explained that "he got up out of here." Dkt. No. 77-55 at ¶ 5.

When the dispatcher asked for a description of the assailant, Ms. Bailey said "he was African-American" and she had "just seen him running off." *Id.* at ¶¶ 6-7. Ms. Bailey then switched to providing a description of Mr. Jones, whom she described as approximately 25 years old and 5'7". *Id.* at ¶¶ 8-9. When the dispatcher clarified that he needed the description of the assailant, Ms. Bailey stated that he was "kind of bigger, he's gotta be like 6'3", like medium build[.]" *Id.* at ¶ 10.

When the dispatcher asked what the assailant was wearing, Ms. Bailey said "a green lookin' sweatsuit thing" and then explained that "officers [a]re right here on site and I'm just gonna tell them what happened." *Id.* at ¶¶ 10-11. Ms. Bailey can then be heard saying "he got in a fight with somebody, the other dude ran off but he got knocked out... he was, he was hit too in the whole altercation, you see that stick he was hit with that ... he was." *Id.* at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

**ii. Police response**

Officers Russell, Cecile, and Tolone were the officers who initially responded to 941 James Street between approximately 7:27 and 7:28 p.m. *Id.* at ¶¶ 14-15. The 911 call notes indicated "2 PEOPLE FIGHTING – ONE PERSON NOW UNC[ONSCIOUS] ON THE GROUND – COMPL[AINANT] SAW A VERY LG STICK." Dkt. No. 77-4 at 3; Dkt. No. 77-55 at ¶¶ 16-17. The 911 call notes also reported that the assailant was " 'a black male,' 25-35 years old, six feet 3 inches, last seen wearing a green sweat[suit]." Dkt. No. 90-1 at ¶ 18. Soon after 7:30 p.m., four other officers arrived at the scene. *See, e.g.,* Dkt. No. 77-4 at 1-2.

After arriving, each of the Responding Officers activated and de-activated their body worn cameras ("BWC") at different times. *See* Dkt. Nos. 77-15, 77-16, 77-17. Officer Russell's BWC footage initially shows her standing over Mr. Jones, next to Plaintiff (who is also on the ground) and Ms. Bailey, as Officer Cecile exits his police vehicle and walks over. Dkt. No. 77-16 at 0:00. Ms. Bailey, who was still on the phone with 911 at this time, is visible pointing down at Mr. Jones and saying "he got into a fight with somebody" and "the other dude run off." *Id.*; Dkt. No. 77-55 at ¶ 21. Plaintiff says words to the same effect. Dkt. No. 77-16 at 0:00.

***3** Officer Russell proceeded to ask Plaintiff, who had some blood on his lip, "what happened to you, why you bleeding?" Dkt. No. 77-55 at ¶ 29. Ms. Bailey explained "he was hit too" and "you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; Dkt. No. 77-16 at 0:05. Ms. Bailey subsequently slowly walked down the sidewalk, as Officer Tolone walked past her to join Officers Russell and Cecile by Mr. Jones. Dkt. No. 77-16 at 0:15; Dkt. No. 77-55 at ¶ 32. Officer Tolone tended to Mr. Jones, who remained unconscious, with labored, gasping breaths and blood coming from the left side of his head. Dkt. No. 77-55 at ¶¶ 40-42.

Plaintiff remained near the Responding Officers during this time. *See generally* Dkt. Nos. 77-16, 77-17. In response to Officer Cecile's question about who had hit Mr. Jones, Plaintiff said "some motherfucker." Dkt. No. 77-16 at 1:10. In response to Officer Russell's question about what that person looked like, Plaintiff pointed down James Street and said it was a "black guy" whom he did not know. Dkt. No. 77-16 at 1:15. Following further questions, Plaintiff stated words to the effect of "y'all acting like we did something wrong." *Id.* at 1:58. Officer Russell responded "no, no, we just trying to get that information, so that way we can put out a point of information regarding the guy who did it." *Id.* at 2:03. Officer Russell again asked about Plaintiff's lip;

Plaintiff responded that it was "a long story" and unrelated to Mr. Jones. *Id.* at 2:28. In response to Officer Russell's question, Plaintiff confirmed that he, Mr. Jones, and Ms. Goldych had been drinking with a fourth person. *Id.* at 2:54. Plaintiff also stated that the fourth person hit Mr. Jones, and that this person's name was "Pete." *Id.* Officer Russell then confirmed this version of events with Ms. Goldych. *Id.* at 3:00. In response to further questioning from Officer Russell, Plaintiff provided his name, address, and birthdate. *Id.* at 3:47, 4:10. Plaintiff again stated words to the effect "y'all acting like we done something," to which Officer Russell responded "no, we just need your info so that way you can help us, that's all." *Id.* Soon after, Officer Russell again asked "were you two fighting each other," to which Plaintiff responded "no." *Id.* at 5:45.

Approximately thirty seconds later, at 7:34 p.m., Officer Tolone directed Plaintiff to stand up and turn around, quickly patted him down, and informed Ms. Goldych "you're gonna get detained too dear." Dkt. No. 77-17 at 4:34. Officer Tolone then told Plaintiff "you're being detained right now" and placed Plaintiff in handcuffs. *Id.* at 4:53. Officer Tolone walked Plaintiff over to a police vehicle and said "stand right here; don't move," before unlocking the vehicle and directing Plaintiff into the backseat. *Id.* at 5:10.

The Responding Officers proceeded to put up police tape around the scene. *See, e.g.,* Dkt. No. 77-16 at 7:43. At approximately 7:38 p.m., Officer Russell remarked to Officers Tolone and Cecile that "we don't have anything to put out a point for, except for it was a black man." *Id.* at 9:54. Officer Tolone responded, "it's the guy we have in the car, I can almost guarantee it," Dkt. No. 77-17 at 8:27, and Officer Cecile agreed, saying "it's definitely him." [5] Dkt. No. 77-15 at 1:41.

5 During his deposition, Office Cecile characterized this statement as "police banter." Dkt. No. 77-47 at 74:13-17 ("Q. So, it's definitely him doesn't mean -- it doesn't mean that you were sure it was him? A. Right. That's police banter. I wasn't sure.").

At approximately 7:39 p.m., Officer Tolone asked various officers "have we started a canvas yet guys?" Dkt. No. 77-17 at 9:54. Officer Russell responded "yeah, we'll do that right now. I wish we would have got those people that were ..." and gestured down the sidewalk in the direction Ms. Bailey and her siblings had walked. Dkt. No. 77-16 at 11:27. At approximately 7:40 p.m., the Responding Officers spoke with two non-party officers who arrived after they did. *See, e.g.,* Dkt. No. 77-17 at 10:14. One of the non-party officers asked "what's up with the guy with the busted lip," to which Officer Tolone responded "yeah, I'm thinking that's gonna, like you said, that's gonna be our guy." *Id.*

***4** At approximately 7:41 p.m., Officer Cecile called the Criminal Investigations Division of the Syracuse Police Department ("CID"). Dkt. No. 77-15 at 4:55. Officer Cecile reported that "we've got possible suspects, I don't know, they're totally drunk, I don't know if someone wants to show up down here or not." *Id.* at 5:35. During the course of this call, Officer Cecile asked Officer Russell for the name of "the guy, the suspect ... the guy that we got detained right now," and then provided Plaintiff's name as "the possible suspect." *Id.* at 8:19.

At approximately 7:45 p.m., Officer Russell asked Officer Tolone, "did anyone contact those people back," Dkt. No. 77-16 at 17:21, presumably again in reference to Ms. Bailey and her siblings, to which Officer Tolone responded that he tried but they did not want to meet, Dkt. No. 77-17 at 15:51. Officers Tolone and Russell then canvased the area for additional eyewitnesses, without success. *See, e.g.,* Dkt. No. 77-55 at ¶ 76; Dkt. No. 77-17 at 18:30.

At approximately 7:47 p.m., seemingly while on hold with CID, Officer Cecile stated to other officers on the scene that "I'm just going to call back the [911] caller, because they obviously saw it, and see if they want to talk and give us the, uh, a statement of what happened, once I'm done with CID." Dkt. No. 77-15 at 10:57. After the call with CID resumed, Officer Cecile reiterated to the person with whom he was speaking that "he's totally, he's totally wasted, so how much that would do, I don't know" before saying words to the effect that he would "try and give the [911 caller] a call" and "see if she witnessed who did it ... and maybe she'll give us a statement." *Id.* at 12:39.

At approximately 7:50 p.m., Officer Cecile again informed one of the other officers at the scene that he was going to contact the 911 caller "to see if they could give us a statement since they're all wasted, and then, you know, to [see] who hit him with

it, because obviously they saw the whole thing." *Id.* at 14:16. Officer Cecile then spoke with Ms. Bailey and asked if she could provide "an ID of who the suspect is, because right now all we've got is three people that are intoxicated, nobody's owning up to hit, hitting this, uh, gentlemen with a stick." *Id.* at 14:50. Officer Cecile went on to ask "do you remember what the, uh, what the guy that hit him with a stick was wearing," before repeating "a green shirt." *Id.* at 16:01. Officer Cecile then clarified "the guy that got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?" *Id.* at 16:43. After the call ended, Officer Cecile shared with other officers on the scene that he had spoken with Ms. Bailey, and said that Mr. Bailey had said the assailant "was wearing a green shirt, he's got a green vest on," to which another officer responded "yeah, it's this guy," presumably in reference to Plaintiff. *Id.* at 17:20. Officer Cecile then tried to call Ms. Bailey again, and asked if she would come back to identify the person she had seen fighting with Mr. Jones. *Id.* at 18:30. Ms. Bailey did not agree to do so, in part because she had just "seen a fight, I don't want nobody looking for me or anything." *Id.* at 18:45.

While officers identified numerous video cameras that could contain footage of the incident, no such footage was retrieved. *See, e.g.,* Dkt. No. 77-16 at 24:15; Dkt. No. 77-55 at ¶¶ 86, 134, 316, 383-84.

Shortly before 8:00 p.m., Plaintiff was removed from the police vehicle to be photographed by a non-party officer. Dkt. No. 77-16 at 31:11; Dkt. No. 77-55 at ¶ 113. During this process, Officer Russell walked over and asked Plaintiff "you being good Robert" and "how'd that thing go the other day when you shit your pants?" [6] *Id.* at 31:22. Plaintiff appears to have mumbled that he "got drunk." *Id.* at 31:29. The non-party officer photographing Plaintiff directed him to ball his hands up behind his back. *Id.* at 31:38. After leaning down to examine Plaintiff's hands and knuckles—presumably for blood or injuries—this officer did not photograph them. *Id.*

6 Officer Russell testified during her deposition that she already knew Plaintiff from "[p]rior incidents," none involving violence. Dkt. No. 77-46 at 104:16-25.

***5** Plaintiff then exclaimed "I want to know what I did," to which Officer Russell responded "we're trying to figure that out too." *Id.* at 31:50. As the non-party officer placed Plaintiff back in the vehicle, Officer Russell asked Plaintiff "you nervous," to which he responded "yeah." *Id.* at 32:00.

### 3. Criminal Investigations Division

Officers Tolone and Cecile transported Plaintiff and Ms. Goldych from 941 James Street to CID. Dkt. No. 77-6 at 5. Officer Tolone placed Plaintiff in a holding room, where he remained detained for several hours. Dkt. No. 77-8 at 3.

At some point during the hours that Plaintiff was detained at CID, Detective Brimmer and a non-party detective appear to have traveled to 941 James Street to investigate the scene. *See* Dkt. Nos. 77-13, 77-19. Detective Brimmer's police report indicates that he also reviewed the 911 call notes at this time. Dkt. No. 77-19 at 2. The non-party detective assisting Detective Brimmer in canvassing the apartment building documented that one of the witnesses "stated that he did not know the men who drank in the parking lot, but stated that he observed three men and one woman drinking beer in the lot this afternoon." Dkt. No. 77-13 at 2. Once back at CID, Detective Brimmer tried to speak with Ms. Goldych, but determined that she "appeared extremely intoxicated" and "was unable to speak due to apparent intoxication." [7] Dkt. No. 77-19 at 2. Detective Brimmer's police report states that "[b]ased on the 911 caller['']s description of the incident" and Plaintiff's presence at the crime scene, "he was being considered a likely suspect." *Id.* at 3.

7 Seemingly in the early morning of May 7, 2019, Detective Brimmer again tried to speak with Ms. Goldych, who "still seemed too intoxicated" and "could speak a little but was talking about outlandish things not related to this incident." Dkt. No. 77-19 at 3. When Detective Brimmer spoke with Ms. Goldych a third time, at some point later on May 7, 2019, she "seemed much less intoxicated." *Id.* While in that state, Ms. Goldych apparently told Detective Brimmer, *inter alia*, that she was "drunk[ ] at the time of the incident and does not remember all of the details" and that "she was unaware that Jones had been injured." *Id.* Detective Brimmer did not take a written statement from Ms. Goldych. *Id.*; *see also* Dkt. No.

77-30 at 2 (non-party detective's report stating that when he subsequently spoke with Ms. Goldych "[i]t should be noted throughout our conversation V. Goldych referred to 'spiritual incidents' as well as being visited by 'higher powers' on several different occasions. She often had a difficult time organizing her thoughts and at times did not directly answer questions. Based upon her actions and statements her mental health status is unknown to me at this time.").

Once Detective Brimmer returned to CID, he and Detective Beauchine moved Plaintiff into a small interrogation room at approximately 10:30 p.m. Dkt. No. 77-55 at ¶ 141; Dkt. No. 77-21 at 0:00. Plaintiff remained in this room until he was placed back in handcuffs at approximately 1:00 a.m. *See generally* Dkt. No. 77-21. Shortly after 10:30 p.m., Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Plaintiff proceeded to speak with the Detectives. In response to Detective Brimmer's initial question about "[w]hat happened over there, man," Plaintiff stated "[w]ell, what happened -- my nephew got into it with some guy. You know, and - - you know, they was fighting and stuff, you know. And I'm drunk. You know what, hey, here I am. That's what happened." Dkt. No. 77-22 at 6:18-23.

***6** The parties dispute the extent of Plaintiff's intoxication during the approximately two and half hours that he remained in the interrogation room. Sometime after approximately 1:00 a.m. on May 7, 2019, when Plaintiff's booking process began, his BAC was measured at 0.15 percent, or nearly twice the legal limit to operate a motor vehicle. Dkt. No. 77-24; *see also supra* n.4. According to one of Defendants' retained experts (Robert L. Weisman, D.O.), the physiological effects of such a BAC are that "[m]otor function, speech, and judgment are all severely affected at this height of blood alcohol. Staggering, and slurred speech, may be observed." [8] Dkt. No. 77-52 at 10.

8 Dr. Weisman further opined that "[t]o help determine typical reductions in human BAC, clinical services often utilize a declination rate of 0.015% per hour." Dkt. No. 77-52 at 11. This suggests that Plaintiff had a higher BAC several hours prior, when Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Presumably, the corresponding physiological effects identified by Dr. Weisman would have been more severe at that time and during the interrogation.

Based on Dr. Weisman's review of numerous record materials and his examination of Plaintiff in June 2024, his expert psychiatric report contains several other findings that are relevant for purposes of summary judgment. *See generally id.* First, Dr. Weisman determined that—when sober—"Mr. Adams has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." *Id.* at 7, 9. Based on certain of Mr. Adams' test scores—again, when sober—Dr. Weisman also concluded that Plaintiff's "basic understanding of *Miranda*" ranked in the eighteenth percentile of pretrial defendants. *Id.* at 8-9. Defendants take the position in the Motion that "Dr. Weisman's opinions are unrebutted." Dkt. No. 77-56 at 20.

Beyond the extent of Plaintiff's intoxication, the parties also dispute the voluntariness and significance of various statements Plaintiff made during his interrogation by the Detectives. In sum, the Detectives refused to accept Plaintiff's version of events, and instead told Plaintiff that video evidence, forensic evidence, and numerous witnesses all established that he had fought Mr. Jones; Plaintiff just needed to provide the details. *See generally* Dkt. No. 77-22. For example:

Det. Beauchine: Okay. Hit the reset button. All right, okay.

Det. Brimmer: Why don't we start at the beginning and tell the truth?

Plaintiff: That's the truth.

Det. Brimmer: No.

Det. Beauchine: No, it's not. Listen, listen. It's not. We can do this over --

Plaintiff: Okay. Then you tell the truth, then. Okay?

Det. Beauchine: I don't need to tell the truth. You're the one that needs to --

Plaintiff: Well, well, I'm telling you what I -- I'm telling you what as far as I know.

Det. Brimmer: You were there. You were part of this.

Det. Beauchine: Yes.

Det. Brimmer: So you should --

Plaintiff: That's what I'm saying.

Det. Brimmer: -- you should know, then.

Plaintiff: Okay. That's what I'm saying. Okay, I'm trying to tell y'all what happened. You telling me I'm lying.

Det. Beauchine: Well, let me put it to you like this. Okay?

Plaintiff: Oh, man. That --

Det. Beauchine: We got several people saying that you, all right, got into an argument with this guy, and that you hit him with a stick. All right? Just hear me out. Hear me out. Okay? And that you hit him with a stick, and that you hit him so hard that he got knocked out and went to the ground.

Plaintiff: No.

Det. Beauchine: And so we're trying to verify whether or not you intentionally hit him --

***7** Plaintiff: No. No, no, no, no, no.

Det. Beauchine: -- because you're a predatory person who wants to go out there and hurt people and do bad things to people, or if this is just a family argument that went awry and --

Plaintiff: No.

Det. Beauchine: Okay.

Det. Brimmer: He ended up falling and hitting his head or something.

Det. Beauchine: Right. And that's exact --

Plaintiff: Oh, no.

Det. Beauchine: -- that's (indiscernible).

Plaintiff: No.

Det. Beauchine: Okay. That's what we're facing, so did -- was this something where you are a predator? You intentionally attack people with things --

Plaintiff: No.

Det. Beauchine: -- or whatever -- whatever you have available to you? Or is this just something that just --

Plaintiff: I don't hurt nobody.

Det. Beauchine: -- listen, listen. Or is this something where you, a couple guys are having a couple drinks and some shit is said, and it's a family matter and shit went south, and it was more of an accident than anything else, or are you intentionally going around doing stuff like this? This is --

Plaintiff: No.

Det. Beauchine: Okay. Which of the --

Plaintiff: No.

Det. Beauchine: -- which of the two is it?

Plaintiff: Nothing. Not one.

Det. Beauchine: No, no. Which -- no, no, no. I'm --

Plaintiff: I just happened to be there.

Det. Beauchine: You didn't just happen to be there. Okay?

Plaintiff: I didn't even hit the guy.

Det. Beauchine: Not with your hand.

Plaintiff: I hit nobody.

Det. Beauchine: You say not with your hands, because you're showing us your hands. We know that. All right? We know that.

Det. Brimmer: Listen, it was a mistake, and you didn't mean for him to get hurt like that, that's a big difference than if you go out there trying to hurt people.

Plaintiff: I ain't hit him.

Det. Brimmer: It's a huge difference.

Plaintiff: I didn't. Man, I swear to God I didn't. I didn't.

Det. Brimmer: It's a huge difference.

Plaintiff: I just happened to be there.

Det. Brimmer: No.

Plaintiff: I witnessed the thing.

Det. Brimmer: That story is not going to fly.

Det. Beauchine: Right. When people --

Det. Brimmer: It's not going to hold up.

Det. Beauchine: -- when people see the video and they talk to someone --

....

They're going to see you in a certain fashion. And that's without you saying anything, right? So if you give your side of the story, and give your thoughts, and what was going through your head at the time, listen, it puts people in your perspective and in your shoes. Now, it doesn't -- and here's what I would say. It --

Plaintiff: I didn't do nothing.

Det. Beauchine: Hold on, listen to me. It doesn't always make it right.

Plaintiff: I'm telling you. I didn't do this.

Det. Beauchine: People will understand if you put them in your shoes, and you can only do that by talking.

Plaintiff: I don't give a --

Det. Beauchine: By telling us.

Plaintiff: Well, I'm telling you.

Det. Beauchine: Yeah.

Plaintiff: I'm telling you how it happened. Okay? I didn't --

Det. Beauchine: Were you shooing him away with the stick, or did you mean to hurt him with the stick?

Plaintiff: No. No.

Det. Beauchine: What were you doing?

***8** Plaintiff: Wait a minute. You put -- you put words --

Det. Beauchine: No, no, no. I'm asking you. It's a question.

Det. Brimmer: We're trying to get to the --

Plaintiff: -- you're putting words in my mouth.

Det. Brimmer: -- we're trying to get to the bottom of this.

Plaintiff: I'm telling you. Charles was fighting this guy. Okay? Next thing I know --

Det. Beauchine: We're past that. We're past that. Alright? We're past that. We know.

Plaintiff: And --

Det. Beauchine: We're past that. All right? Listen, relax.

Det. Brimmer: Just help us understand.

Det. Beauchine: Help us understand what happened. All right? Between you and Charles.

Det. Brimmer: I mean, you got a wound on your face. That could be a defensive wound, you know. It could --

Plaintiff: No. I ran into a tree being drunk.

Det. Beauchine: Okay. So is it safe -- how often do you drink?

Plaintiff: Hmm? Every day.

Det. Beauchine: Okay. Could this be --

Plaintiff: All day. (laughs)

Det. Beauchine: -- could this -- listen, could this be a mistake between you and Charles --

Plaintiff: No.

Det. Beauchine: -- because you were intoxicated and --

Plaintiff: No, no, no no.

Det. Beauchine: -- he was intoxicated?

Plaintiff: No, no, no, no, no, no, no. No, no, no, no. Really, me and Charles ain't got no problem at all.

Det. Beauchine: Well, you did tonight.

Plaintiff: No. Hmm-mm.

Det. Beauchine: You did.

Plaintiff: No. No. No. Huh-uh.

Det. Beauchine: You might not want to think that you might have had a problem, but --

Plaintiff: No, man.

Det. Beauchine: -- you get -- you had a problem with him tonight.

Plaintiff: No.

Det. Beauchine: Or he had a problem with you, and you were defending yourself, tell us.

Plaintiff: No, no, no, no.

Det. Brimmer: Did he start talking about Vanessa and upset you?

Plaintiff: No.

Det. Brimmer: No?

Det. Beauchine: You had a problem with him tonight.

Plaintiff: Me and Vanessa had walked up. They happen to over sitting -- sitting down, drinking. And still we was drinking. Okay, next thing I know, they fighting. Really. Really, man. Period.

Det. Beauchine: Was this an accident or did you mean to hurt him?

Plaintiff: Man -- I didn't hurt him.

Det. Beauchine: You meant to hurt him?

Plaintiff: I never hurt him at all.

Det. Beauchine: It was an accident?

Plaintiff: Why do you -- why are you trying to put words in my mouth? Okay? Huh?

Det. Brimmer: We're not trying to. We just want to get to the bottom of this.

Plaintiff: Man, where -- well, where the bottom -- we're at the bottom of [sic]. I was telling you.

Det. Brimmer: We're just going in circles.

Plaintiff: I didn't do nothing. I was a witness. That don't -- this they got --

Det. Brimmer We're just going in circles here....

*Id.* at 51:2-59:19.

During the interrogation, Plaintiff's cellular phone rang. The Detectives instructed Plaintiff not to answer the phone, to turn it off, and to place it on the table. *Id.* at 27:6-20. At approximately 11:14 p.m., just prior to the first break taken during the interrogation, Detective Brimmer said that he was going to take Plaintiff's phone outside the room. *Id.* at 60:24-25; *see also* Dkt. No. 77-21b at 13:50. Plaintiff responded, "[m]an, give me my phone," to which Detective Brimmer replied "[n]o, it's going to sit out here." Dkt. No. 77-22 at 61:1-3. During this break, Plaintiff is visible talking to himself and unsuccessfully trying to open the interrogation room's door, which appears to have been deadbolted from the outside. Dkt. No. 77-21b at 14:00-17:00. Plaintiff subsequently informed the Detectives that he was not currently working because he had a "dual diagnosis" and that his psychiatrist, counselor, and primary care doctor were all at the same local healthcare provider. *Id.* at 102:16-103:16; *see also* *United States v. Moran*, 778 F.3d 942, 951 (11th Cir. 2015) ("[D]ual diagnosis patients are those suffering from both substance abuse *and* acute mental disorders.").

***9** Plaintiff contends that he denied assaulting Mr. Jones nearly 200 times before the Detectives coerced him into providing a false confession around midnight. Dkt. No. 85-2 at ¶¶ 570-71. During the subsequent break, Plaintiff can be heard saying "I'm going to jail for something I didn't do,"[9] Dkt. No. 77-21c at 8:49, and further talking to himself, *see, e.g., id.* at 9:10, 11:23.

9 The transcript Defendants provided inaccurately characterizes Plaintiff's statement as "[m]umbles incoherently." Dkt. No. 77-22 at 105:7.

Defendants contend that Plaintiff's eventual confession was not coerced and not false. Dkt. No. 77-56 at 9, 25. Presumably to support this position, Defendants requested that Dr. Weisman opine on Plaintiff's capacity during the May 2019 interrogation. Dkt. No. 77-52 at 11, 12. As relevant here, Defendants requested that Dr. Weisman determine whether Plaintiff had the "proper requisite intellectual capacity and base intelligence level" and the "proper requisite psychological state and mental health capacity" to have:

....

(c) understood the significance and context of the questions being asked regarding the assault of Charles Jones; ...

....

(f) understood [the] significance and context of his answers to those questions with respect to the assault of Charles Jones; ....

(g) observed the events for which he was being questioned, illustrated the ability to recall those same observations, and provided answers based upon those observations and recollections (even if, under certain circumstances, Plaintiff was deceptive in his response); ....

(h) [had] the ability (or exhibited the ability) to communicate his answers truthfully, effectively, clearly and coherently; ..... and

(i) provided the answers of his own accord.

*Id.* at 11-12, 12-13. In response to every one of these items, Dr. Weisman concluded:

> Initially, yes, but towards the latter part of the ~1.5-hour interview, Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him.

*Id.* at 11-12, 12-13.

**4. Police Reports**

**a. Detective Brimmer**

According to the arrest report prepared by Detective Brimmer, he and Detective Beauchine arrested Plaintiff at 12:00 a.m. on May 7, 2019. Dkt. No. 77-23. The arrest report listed Plaintiff as 55 years old, 5’7” tall, 160 pounds, and described his apparent condition as “Appeared Normal.” *Id.* The arrest report included criminal charges against Plaintiff. *Id.*

Detective Brimmer also prepared a police report regarding events on May 6 and 7, 2019, including his telephone conversation with Ms. Bailey. Dkt. No. 77-19. The parties dispute what was said during this conversation on May 7, 2019.

According to Detective Brimmer's report, Ms. Bailey corroborated certain key details of Plaintiff's confession during this conversation, including that the day before “she observed 2 unknown black males yelling at each other[;]” “one male punched the other, and the one that got punched was hitting the other with a stick[;]” and “one of the subjects went down to the ground unresponsive and the other male was saying something about his nephew[.]” *Id.* at 3. Detective Brimmer also wrote that Ms. Bailey stated that “she called 911 but walked away prior to EMS and Police arrival.” *Id.*

***10** According to a sworn affidavit provided by Ms. Bailey, she never said many of the statements Detective Brimmer attributed to her, including that she “never used the word ‘punch’ because I did not see either of the two individuals punching[;]” “never told Detective Brimmer that the man helping the victim was the who hit the victim. The person who hit the victim ran away. The victim was unresponsive and the older man told me the victim was his nephew. The older man asked me to call 911[;]” “never told Detective Brimmer that the older man was involved in this fight[;]” and “[t]he police arrived while I was on the phone with 911 and I spoke to a lady officer. I did not tell Detective Brimmer that I left before the police arrived.” Dkt. No. 85-10 at ¶¶ 6-9. Ms. Bailey further stated that Detective Brimmer's report “contains false statements. I never told him that I witnessed anyone punching. I never told him that the older man who called the victim his nephew was involved in the fight. I never told him that I left before the police arrived.” *Id.* at ¶ 10.

**b. Officer Cecile**

Officer Cecile's police report, dated May 6, 2019, listed Plaintiff as 55 years old, 5’7” tall, 160 pounds, and described his apparent condition as “Impaired Alcohol.” Dkt. No. 77-6 at 2.

In the narrative portion of his report, Officer Cecile stated that “while in route, dispatch notes read that there was a fight in progress between two people with one person [ ] unconscious on the ground, the other person was wearing a green sweat suit and there is a very large stick involved.” *Id.* at 5. With respect to Plaintiff's detention, Officer Cecile wrote “[b]ased on the

notes from dispatch and lack of cooperation for Goldych and Adams, both were detained at this time." *Id.* As for his call with Ms. Bailey, Officer Cecile wrote:

> Bailey stated that she witnessed the fight between the victim and suspect ... Bailey stated that the suspect was an old black male wearing a green jump suit. Bailey stated that she saw the male in the jump suit dodge a punch from the victim and then swing the large stick at [t]he victim's head which connected and knocked him to the ground.

*Id.* As for Plaintiff's appearance, Officer Cecile described him as "an older black male in a grayish/teal puffy jacket and green pants[.]" *Id.*

**c. Officer Tolone**

Officer Tolone's police report, dated May 6, 2019, listed Plaintiff as 55 years old, provided no height or weight, and described his apparent condition as "Normal." Dkt. No. 77-8 at 4.

In the narrative portion of his report, Officer Tolone wrote that "[p]rior to our arrival dispatch advised us that our caller, Jordan Bailey who refused to speak with us regarding this incident, stated to the call taker that she saw two males fighting, one wearing a green jump suit, and then saw someone get struck with a stick and then saw the man on the ground." *Id.* at 2. With respect to Plaintiff's detention, Officer Tolone wrote that "Adams was detained at this time for suspicion that he was in deed [sic] the suspect in this incident however, when we initially arrived on scene Adams stated there was another male that started a fight with Jones." *Id.* As for Plaintiff's appearance, Officer Tolone wrote that "Adams, at the time contact was made, was wearing green pants and a grey / green vest." *Id.*

**d. Other Police Reports**

Officer Russell prepared a short report, also dated May 6, 2019, with a brief narrative that does not mention Ms. Bailey or Plaintiff, or Officer Russell's interactions with either of them. Dkt. No. 77-7 at 2.

Following Plaintiff's interrogation at CID, a non-party officer photographed Plaintiff in the interrogation room and collected his clothing early in the morning of May 7, 2019. Dkt. No. 77-10. This officer catalogued Plaintiff's clothing as consisting of a "Black winter coat[,]" "Grey pants with belt[,]" "Blue/green/white striped shirt[,]" "Blue Puma sneakers[,]" and a "Baseball Hat (Grey, green Bird Game logo)[.]" *Id.* at 3.

**5. Criminal Prosecution**

In the weeks after the events of May 6, 2019, Officer Cecile, Detective Brimmer, and Ms. Bailey testified before a grand jury in Onondaga County. Dkt. No. 77-25. The grand jury subsequently indicted Plaintiff[10] for (i) assault in the first degree in violation of N.Y. Penal Law § 120.10(1); (ii) assault in the second degree in violation of N.Y. Penal Law § 120.05(2); and (iii) criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02(1). Dkt. No. 77-26 at 1. Plaintiff remained detained in jail pending trial. Dkt. No. 77-55 at ¶¶ 309, 382.

10 Members of the Onondaga County District Attorney's Office ("DA's Office") have since identified deficiencies with the process that led to this result. Dkt. No. 85-7 at 1 (" 'While it seems counterintuitive that someone would confess to something they did not do, it happens,' [Onondaga County District Attorney ("DA") William] Fitzpatrick said. 'And in this case, I hope all involved analyze the root causes of why this happened. We have done that in my office.' .... 'I have discussed the case with the prosecutor initially assigned and pointed out mistakes that were made,' Fitzpatrick

said. 'The prosecutor who presented it to the grand jury and missed several red flags is no longer with the office.' "); Dkt. No. 85-11 at 9 (Syracuse Police Department report stating that, according to Onondaga County Assistant District Attorney ("ADA") Joe Coolican, "when the grand jury proceeding occurred, there was no identification process done by the Assistant District Attorney overseeing the case. Therefore, the witness [Ms. Bailey] was unaware Mr. Adams was the one who was in custody and accused of these crimes.").

***11** Mr. Jones died in the hospital on August 18, 2019. Dkt. No. 85-15. A medical examiner ruled Mr. Jones' death a homicide as a result of complications from being struck in the head "with a large stick containing imbedded nails." *Id.* at 1, 2. After Mr. Jones' death, it appears that the criminal charges against Plaintiff could have been increased from assault to manslaughter. [11] Dkt. No. 77-55 at ¶¶ 372-74.

11 From the record before the Court, it is not clear whether these charges were ever increased. *Compare* Dkt. No. 77-33, *with* Dkt. No. 77-38.

On August 19 and 20, 2019, ADA Michael Manfredi offered Plaintiff, through his court-appointed counsel, "a plea to Manslaughter in the first with a sentence of 12 years Determinate." Dkt. No. 77-28 at 2, 1. On October 8, 2019, ADA Manfredi reiterated to Plaintiff's court-appointed counsel that the "[o]ffer remains Man 1 st with 12 years determinate." *Id.* at 1.

On January 9, 2020, Plaintiff's court-appointed counsel made a bail application on behalf on Plaintiff, in part on the basis that:

> We have had an opportunity to review much of the evidence against [Plaintiff] and the defense believes there is significant evidence that the People have the wrong man in jail. Despite what the People have presented as a "confession", the defense believes that the evidence will show that it is a psychologically coerced false confession. There is no indication there are any witnesses identifying him at the scene. In fact the opposite. The People's case is weak.

Dkt. No. 77-39 at ¶ 22.

Soon after, an investigator from the DA's Office contacted Ms. Bailey. Dkt. No. 77-34 at 1. On January 16, 2020, Ms. Bailey provided a voluntary affidavit that stated in relevant part:

> [Investigator Tim Galanaugh] asked if I would be willing to come down to his office and meet with Mr. Coolican, the prosecutor, and see if I would watch some video footage that they had. He also made me aware that the police had made an arrest of an individual the day of the [May 6, 2019] incident. I told him that I would be willing to come down and speak to them, and help in any way because I was unaware that the victim had died.
>
> Back in May, when everything had happened, I initially called 911 for a man that was trying to assist the victim. That man that I am speaking about was African American and told me that the victim was his nephew. I stayed on the scene with my siblings until the police officers arrived. I gave information to the 911 person telling them that the suspect that was responsible had run down James Street towards downtown. I told the dispatch person that the suspect was African American and over 6 foot tall and was wearing dark green. As the officers showed up they started talking to the older guy that was kneeling next to his nephew. They wanted him to step back from the victim. I told the female officer that he had nothing to do with it. There was a[ ]lot going on at the time and I didn't want to get more involved so I walked away with my siblings. At the time, I felt that I had cooperated enough by reporting it and I didn't want to involve myself or my siblings in what appeared to me at the time to be a fight between two guys that ended with one being knocked out with a stick. When the police officers contacted me 30 minutes or so later to see if I would come back to the scene to try to identify someone, I didn't want to get involved. I was scared that it would jeopardize my safety and my siblings['] safety so I told the police officers that I didn't want to do anymore than what I had done to help already.

***12** ....

> This is what I remember about the incident today: That I had been leaving Bryant and Stratton on James Street and observed two African American men that appeared to be about to fight. Me and my siblings w[ ]ere almost walking right through where this was occurring. The victim had a long branch in his hand and starts to run up on the suspect. As the victim tries to swing on the suspect, the suspect grabs the stick and snatches the stick from the victim. The suspect then swings the stick at the victim with one hand towards his upper body. I couldn't tell where it connected or if he followed up with an elbow. All I seen is the victim stumble and drop to the ground. Suspect then tosses the stick. The suspect then goes to the pa[ ]nts pocket of the victim, takes a cell phone out and smashes it onto the pavement. Then the suspect takes off running down the sidewalk on James Street towards downtown.
>
> I didn't see where the suspect had run to because I then focused my attention on the victim on the ground. That's the same time when I noticed the older man get off the stones by the Chestnut Apartments sign and walk over to his nephew to check on him. I remember telling him that he should help get him up off the ground. The victim wasn't moving and looked like he had been knocked out, but after a few moments of looking at him more closely I told the older man that he, the victim, didn't look so good. That[’]s when the uncle asked me to call 911, so I did. I stayed with the uncle until the police arrived, but like I said, I walked off shortly after with my siblings because we didn't want to get more involved.
>
> Today, at around 1045 AM, I met Mr. Coolican and Investigator Galanaugh at the D.A.’s Office. They had me watch some video footage from one of the officer's body cameras when they showed up at the scene. In the video I saw the victim on the ground and the African American man, who told me the victim was his nephew, kneeling next to him wearing a gray baseball hat. You can hear me talking in the video telling the female officer that the victim was hit with the stick.
>
> I showed Mr. Coolican w[here] the victim's cell phone can be seen in the video laying on the pavement, smashed. I was told by Mr. Coolican and Investigator Galanaugh that the person that was arrested in this incident, was the man that told me that the victim was his nephew. The person that the police arrested was not the suspect that I saw fighting with the victim, and causing the victim to be hurt with the stick. I saw that suspect run from the scene after smashing the victim's phone on the ground.

*Id.* at 1-2; *see also* Dkt. No. 77-55 at ¶¶ 380-81.

Plaintiff was not released from jail until February 12, 2020, more than nine months after his arrest on May 6, 2019. Dkt. No. 77-55 at ¶ 382. The charges against Plaintiff were not dismissed until September 15, 2020. *Id.* at ¶ 404.

**a. Plaintiff's Capacity**

On February 13, 2020, the judge presiding over Plaintiff's criminal prosecution ordered Plaintiff's capacity evaluated pursuant to New York Criminal Procedure Law § 730. Dkt. No. 77-35 at 1 (stating that “the Court being of the opinion that the defendant may be an incapacitated person” an examination is ordered “to determine whether said defendant, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense”).

***13** Two physicians subsequently examined Plaintiff and issued their reports on August 27, 2020. Dkt. No. 77-55 at ¶¶ 391-92, 395. As relevant here, the first physician concluded that “although suffering from Alcohol Use Disorder,” Plaintiff “at the time of this evaluation, did not as a result of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his own defense.” *Id.* at ¶ 394. The second physician similarly concluded that Plaintiff “is not currently suffering from a mental illness which would cause him to lack the capacity to understand the proceedings against him or to assist his counsel in his own defense” and that Plaintiff, “at the time of this evaluation, did not as a result of mental disease o[r] defect lack the capacity to understand the proceedings against him or to assist in his own defense.” *Id.* at ¶ 398.

**6. Additional Investigation by CID**

On January 29, 2020, prior to Plaintiff's release from jail, two non-party detectives returned to 941 James Street to obtain video footage of the incident that had occurred nearly nine months earlier. *Id.* at ¶ 383. Their investigation obtained no such footage, *id.* at ¶ 384, and determined that none of a dozen nearby businesses retained such footage for longer than three months, Dkt. No. 77-31 at 2. The two detectives also made efforts at this time to locate individuals previously mentioned by Plaintiff and Ms. Goldych, including "the 'Pete' mentioned in BWC [footage from the Responding Officers], but without success." Dkt. No. 77-55 at ¶¶ 385-86.

Forensic evidence recovered from items collected at 941 James Street—apparently including multiple drink containers as well as Mr. Jones' smashed phone—was linked to an individual whose first name is Pierre. Dkt. No. 85-1 at ¶ 56; Dkt. No. 85-4; Dkt. No. 85-14 at 9, 28; Dkt. No. 85-11 at 28. A non-party detective testified during his deposition that "[w]e do have forensic evidence indicating that he may have been present at the time of the incident or in the hours preceding it." Dkt. No. 77-50 at 123:24-124:9.

A September 2020 internal memorandum from the Syracuse Police Department ("Memo") states that such evidence "strongly suggests, at a minimum, Pierre [ ] was onscene at some point that day [May 6, 2019], and drinking with the group" and notes that Pierre "is listed as much bigger than Adams ([ ] - 6'00", 220 lbs.), and closer resembles that of the suspect description initially provided to 911 by Jordan Bailey." Dkt. No. 85-11 at 28. When provided with the opportunity to speak with CID, Pierre apparently declined to do so. *Id.* Another internal document from the Syracuse Police Department indicates that while Pierre had been identified as "a person of interest," "there is no proof beyond a reasonable doubt suggesting [Pierre] is the primary suspect at this time." *Id.* at 7-8. The Memo notes that the investigation of Mr. Jones' death "will now be considered 'unsolved'." *Id.* at 30.

### C. Prior Proceedings

#### 1. Citizen Review Board

In April 2021, Plaintiff filed a complaint with Defendant City's Citizen Review Board in connection with his arrest and interrogation. Dkt. No. 85-11 at 14-21. The Syracuse Police Department's Internal Affairs Division assigned a sergeant to investigate Plaintiff's complaint and prepare a case report. *Id.* at 1-13 ("Report"). The sergeant's investigation included an interview with a deputy police chief. *Id.* at 8-9. The sergeant included the following information from that conversation in the Report:

> I addressed the complaints made by Mr. Adams of the false arrest as well as being interviewed while intoxicated. Deputy Chief [ ] was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state. Deputy Chief [ ] also informed me it is a matter of training that detectives are trained on the fact that interviewing an intoxicated person is lawful, unless in this manic state.... Therefore, the actions by [the D]etectives during that interview were lawful and proper.

***14** *Id.* at 9. The Report ultimately concluded that:

> Mr. Adams['] claim that he was arrested and charge[d] for a crime he did not commit is true. However, after reviewing this case and based on the evidence shown, there is no evidence to show wrong doing on behalf of any of the Syracuse Police Officers involved. The interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer. The basis for Mr. Adams being charged with this crime

> was due to his own admission and the lack of cooperation from the original eye witness. Therefore, this complaint is unsubstantiated.

*Id.* at 12.

In the course of reaching these conclusions, the sergeant also briefly spoke with the Detectives. *Id.* at 11-12. According to Detective Brimmer, "Mr. Adams did not appear excessively intoxicated during the interview" that began on May 6, 2019. *Id.* at 11. Detective Beauchine similarly "stated [that] he did not feel Mr. Adams was excessively intoxicated" during the interview. *Id.* at 12. Detective Brimmer also shared that "Mr. Adams would not have been under arrest without the confession." *Id.* at 11.

The sergeant, the sergeant's supervisor, a bureau chief, the first deputy chief, and the chief of police are all listed as March 2022 signatories to the Report. *Id.* at 13.

### 2. New York Court of Claims

Plaintiff previously filed a notice of claim in the New York Court of Claims. Dkt. No. 63-1. Defendants examined Plaintiff on January 22, 2021. Dkt. No. 77-43.

### D. Procedural History

Plaintiff commenced this action in June 2021. Dkt. No. 1. Defendants moved to dismiss the Complaint in July 2021. Dkt. No. 7. Plaintiff voluntarily dismissed his claims against one individual defendant and otherwise opposed the motion. Dkt. Nos. 9, 16.

In March 2022, United States Senior District Judge Lawrence E. Kahn partially granted and partially denied Defendants' motion to dismiss. Dkt. No. 19. Judge Kahn observed that "[i]f the facts alleged by Plaintiff are true, Plaintiff's detainment amounts to a substantial miscarriage of justice." *Id.* at 1. Judge Kahn dismissed Plaintiff's second, sixth, seventh, and ninth claims, as well as another individual defendant, and denied the balance of Defendants' motion. *Id.* at 1-18. Discovery proceeded, with the parties requesting and receiving numerous extensions. *See generally* Docket Sheet.

In January 2024, United States Magistrate Judge Mitchell J. Katz denied Plaintiff's motion to amend the Complaint to add two individual defendants, but granted Plaintiff's request to dismiss his claims against three other individual defendants. Dkt. No. 64.

The Motion was fully submitted in April 2025. Dkt. Nos. 77, 85, 90.

### E. Plaintiff's Claims

Plaintiff's remaining claims, [12] *see* Dkt. No. 19, are as follows: pursuant to Section 1983, (i) false arrest against the Individual Defendants, Dkt. No. 1 at ¶¶ 41-47; (ii) malicious prosecution against Defendants, *id.* at ¶¶ 63-71; (iii) fabricated evidence against Defendants, *id.* at ¶¶ 72-80; (iv) a *Monell* claim against Defendant City, *id.* at ¶¶ 52-62; and, pursuant to New York law, (v) false arrest against Defendants, *id.* at ¶¶ 91-93; and (vi) negligent supervision, etc., against Defendants, *id.* at ¶¶ 97-100.

12 The Complaint also contains various requests for relief. *See, e.g.,* Dkt. No. 1 at ¶¶ 105-114; Dkt. No. 77-56 at 9 n.2.

## III. STANDARD OF REVIEW

***15** Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). A court first determines "whether the evidence presents a sufficient disagreement to require submission

to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia, Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505).

## IV. DISCUSSION

The Court addresses the parties' specific arguments with respect to the remaining claims below. Given the disputed factual record as to many aspects of Plaintiff's claims, the Court finds it appropriate to reiterate the Second Circuit's guidance in another case involving Section 1983 claims for false arrest, malicious prosecution, fabricated evidence, and related *Monell* liability:

> We write because the district court improperly granted summary judgment to defendants. The record before us reveals evidence from which a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiff[ ] predicated on this manufactured evidence. We also write to emphasize a larger issue raised by this case. Plaintiff[ ] allege[s] that the defendant police officers lied and fabricated evidence. While we do not know whether the accusations can be sustained, we do know that such accusations must be carefully reviewed. Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct, which would weaken the public's respect for the administration of justice. In making these remarks, we emphasize that we have reached no conclusions about whether the plaintiff['s] accusations can be substantiated. It will be for a jury to determine at trial whether plaintiff[ ] ha[s] proved [his] very serious charges.

***16** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 125 (2d Cir. 1997). While the Court addresses the parties' significant factual disputes in detail below, it similarly reaches no conclusions at this stage regarding whether Plaintiff will ultimately be able to prove his surviving claims.

### A. False Arrest under Section 1983 and New York law

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (alteration in original) (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). And "[u]nder New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement

was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)); *see also Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("[Plaintiff]'s unlawful arrest claim fails because his handcuffing was an 'investigatory detention' (otherwise known as a '*Terry* stop') that never ripened into an arrest and was supported by reasonable suspicion."). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (quoting *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990)).

As detailed earlier, after several minutes of questioning by numerous officers, Plaintiff was handcuffed and put into the back of a police vehicle in front of 941 James Street at approximately 7:34 p.m. on May 6, 2019. *See supra* Section II.B.2. Plaintiff was eventually transported to CID shortly after 8:00 p.m., where he remained detained until his custodial interrogation began at approximately 10:30 p.m. *See supra* Section II.B.3. Plaintiff was held in the interrogation room until approximately 1:00 a.m. on May 7, 2019, when he was placed back in handcuffs and his booking process began. *Id.* Plaintiff was then detained for more than nine months, until his eventual release on February 12, 2020. *See supra* Section II.B.5.

Plaintiff's opposition to the Motion does not challenge his detention and questioning by officers prior to being handcuffed at approximately 7:34 p.m. [13] *See, e.g.,* Dkt. No. 85 at 10; *see also* Dkt. No. 77-56 at 12-13. And Defendants only seek summary judgment on the portions of Plaintiff's false arrest claims that relate to his "pre-confession detainment" and "post-confession arrest," not his subsequent months-long detention. *Compare* Dkt. No. 77-56 at 12, *with* Dkt. No. 1 at ¶¶ 43, 92-93; *see also* Dkt. No. 7-2 at 13-14; Dkt. No. 19 at 9-10. The Court thus focuses its analysis on Plaintiff's detention at 941 James Street on May 6, 2019, his formal arrest at CID on May 7, 2019, and the five or so hours that he remained detained in between.

13 To the extent that the Complaint states a claim for false arrest prior to this time, any such claim is dismissed as abandoned, as is any claim for declaratory judgment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *see also* Dkt. No. 1 at ¶¶ 101-04; Dkt. No. 77-56 at 9 n.2.

### 1. Plaintiff's Detention at 941 James Street

***17** Defendants first contend that Plaintiff's false arrest claims should fail because—although Plaintiff was handcuffed, placed in the back of a police vehicle, transported from his home to a police station approximately 30 minutes later, and detained for hours—he was not actually under arrest during this time. Instead, Defendants argue, the approximately five-hour seizure of Plaintiff prior to his formal arrest merely constituted an investigative stop and only required reasonable suspicion. Dkt. No. 77-56 at 13, 16 (stating that "only reasonable suspicion was required" to detain Plaintiff at 941 Adams Street and Defendants "had ample reasonable suspicion to detain Plaintiff"); *id.* at 17, 18 (stating that "Plaintiff's pre-confession detainment at CID was merely a continuation of his on-scene detainment" and "the detainment was supported by reasonable suspicion"); Dkt. No. 90 at 6 (stating that, as to Plaintiff's interrogation, "Defendants maintain that Plaintiff was being *detained* requiring only reasonable suspicion").

This is a particularly weak argument given applicable law and the facts of this case. [14] *See, e.g., United States v. Lefebvre*, 117 F.4th 471, 475 (2d Cir. 2024) ("There were several factors present during th[is] seizure that, in many situations, this Court would consider to be evidence that a seizure had indeed become a de facto arrest. [Plaintiff]'s 'freedom of movement was restrained' and 'handcuffs were used.' ... [T]he encounter lasted roughly 20 minutes.... [Plaintiff]'s transportation to a police station, instead of some of other reasonable third location, would in many situations clearly establish that the seizure had ripened into a de facto arrest.") (citations omitted) (collecting cases). The Court agrees with Plaintiff, Dkt. No. 85 at 8-9, that Defendants' maximalist position regarding their multi-hour detention of Plaintiff is unsupported by Fourth Amendment jurisprudence, *see, e.g., United States v. Candelario*, 486 F. App'x 907, 908 (2d Cir. 2012) ("It is well established that 'a police officer may *briefly detain* an

individual for questioning if the officer has a reasonable suspicion that the individual is, has been, or is about to be engaged in criminal activity.' ") (emphasis added) (quoting *United States v. Padilla*, 548 F.3d 179, 186 (2d Cir. 2008)). *See also Grice*, 873 F.3d at 167 ("In general, to determine whether a *Terry* stop is so intrusive as to become an arrest, we look to: [']the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.[']") (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)).

14 It also contradicts a position that Defendants took in support of their prior dispositive motion, wherein they argued that Plaintiff's "alleged drunken confession – insofar as it could possibly be construed as 'false' – did not result in Plaintiff's loss of liberty as he had already been arrested and confined." Dkt. No. 7-2 at 16.

By approximately 7:34 p.m., Plaintiff had already been questioned for several minutes by multiple officers at the scene. *See supra* Section II.B.2.a.ii. Plaintiff had informed officers that he did not assault Mr. Jones (which Ms. Bailey had also said); that the person who assaulted Mr. Jones had run down James Street (which Ms. Bailey had said as well); that the assailant was a black man named "Pete" (which Ms. Goldych had also said); and that Plaintiff lived in one of the apartments at 941 James Street. *Id.* Defendants acknowledge that "the entire interaction was peaceful" prior to Plaintiff's handcuffing, Dkt. No. 77-56 at 15, and Officer Tolone testified that he did not feel his safety was at issue, Dkt. No. 90-1 at ¶ 510. Throughout this time, Plaintiff did not interfere with the investigation, continued answering questions from officers, and made no effort to leave the scene. *See supra* Section II.B.2.a.ii. Indeed, BWC footage shows Plaintiff sitting down and speaking with Officer Russell seconds before Officer Tolone directed him to stand up and turn around. Dkt. No. 77-17 at 4:34. Officer Tolone then handcuffed Plaintiff and informed Plaintiff that he was being detained. *Id.* Officer Tolone proceeded to place Plaintiff into the back of one of the multiple police vehicles parked in front of Plaintiff's home. *Id.* at 5:08.

***18** Given this factual record, a reasonable juror could conclude that Plaintiff was arrested at this time. *Grice*, 873 F.3d at 167. As the authority upon which Defendants rely, Dkt. No. 77-56 at 15, makes clear, "[h]andcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest," *Grice*, 873 F.3d at 167. *See also United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest.") (collecting cases). Moreover, Defendants have failed to demonstrate the applicability of any of the "certain unusual circumstances" when "handcuffing a suspect to investigate a reasonable suspicion does not transform a *Terry* stop into an arrest." *Grice*, 873 F.3d at 168 (collecting cases); *see also* Dkt. No. 77-56 at 15-16. As just discussed, nothing in the record indicates concern about officer safety. The balance of Defendants' cursory arguments about why Plaintiff purportedly needed to be handcuffed and placed in the back of a police vehicle are unpersuasive. *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) ("[T]o satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes.") (quoting *Newton*, 369 F.3d at 674).

### 2. Probable Cause

Defendants next argue that, regardless of when Plaintiff was arrested, they had probable cause to arrest him for assault [15] within moments of arriving at 941 James Street. Dkt. No. 77-56 at 12-18.

15 Defendants do not contend that they had probable cause to arrest Plaintiff for any other offense. Dkt. No. 77-56 at 14.

This argument is also unconvincing, again given applicable law and the facts of this case. "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' " *Ashley*, 992 F.3d at 136 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)). The parties largely agree on the basic information known to the Responding Officers at the time Plaintiff was handcuffed: [16] the 911 call notes, Plaintiff's presence at the scene, and some blood on Plaintiff's lip. Dkt. No. 77-56 at 13-14; Dkt. No. 85 at 14-15. The parties dispute the factual contours of much of that information, however, as well as its legal significance.

16 The parties further agree that the "collective or imputed knowledge doctrine" applies. *See, e.g.*, Dkt. No. 77-56 at 12 ("[T]he relevant inquiry is whether the collective knowledge of the Syracuse Police Department ('SPD') constituted probable cause, not whether a specific arresting officer had probable cause."); Dkt. No. 85 at 14. Under that doctrine, an arrest "is permissible where the actual arresting ... officer lacks the specific information to form the basis for probable cause ... but sufficient information to justify the arrest ... was known by other law enforcement officials initiating ... the investigation" and "the other officers 'have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold.' " *Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015) (alterations in original) (first quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); and then quoting *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)).

Defendants' arguments regarding probable cause miss the forest for the trees. When evaluating probable cause, the Second Circuit has "consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' " *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Defendants were repeatedly informed that the black man who assaulted Mr. Jones was no longer present at the scene. *See supra* Section II.B.2.a. Ms. Bailey told the 911 dispatcher that this third man had assaulted the victim and had run off, but that the victim and his uncle were still there. *Id.* The 911 call notes indicated that the suspect was "last seen wearing" a green sweatsuit. Dkt. No. 90-1 at ¶ 18. Ms. Bailey again told Officer Russell—as Officer Russell stood next to Plaintiff, possibly within earshot of Officer Cecile as he approached—that the assailant who hit Mr. Jones was someone other than Plaintiff and had run off. *See supra* Section II.B.2.a. Plaintiff separately told Responding Officers that the assailant had run off, that his name was Pete, and that he was a black man. *Id.* Ms. Goldych also indicated that the man's name was Pete. *Id.* Defendants simply ignore the existence of this third man, identified by multiple eyewitnesses at the scene (and subsequently confirmed by forensic evidence). *See* Dkt. No. 77-56 at 12-18; *see also* Dkt. No. 77-50 at 123:24-124:9; Dkt. No. 85-11 at 28.

***19** Instead, Defendants argue that Plaintiff "was the only individual on scene that matched Ms. Bailey's description." Dkt. No. 77-56 at 14. But a reasonable juror could readily conclude that Plaintiff did not match Ms. Bailey's description. As the parties agree, the 911 call notes described the assailant as 25 to 35 years old, 6'3" tall, with a "med[ium] build," and "black male." Dkt. No. 90-1 at ¶ 18; Dkt. No. 77-4 at 3. At the time, Plaintiff was 55 years old, 5'7" tall, and weighed approximately 160 pounds. *See, e.g.,* Dkt. No. 90-1 at ¶ 515. Defendants' own observations and descriptions of Plaintiff are consistent with these attributes. *See, e.g.,* Dkt. No. 77-6 at 2 (Officer Cecile's police report listing Plaintiff's age as 55, height as 5'7," and weight as 160); Dkt. No. 77-23 (Detective Brimmer's arrest report listing the same); Dkt. No. 77-8 at 4 (Officer Tolone's police report listing Plaintiff's age as 55); Dkt. No. 77-16 at 4:11 (Officer Russell's BWC footage showing her asking Plaintiff for his birthdate, prior to his arrest, and being told the date in 1964), 18:26 (Officer Russell's BWC footage showing her providing Plaintiff's birthdate to another officer); Dkt. No. 77-25 at 7:5-11 (Officer Cecile testifying that he thought Plaintiff was in his "[l]ate 50s or early 60s" "just going by looking at [him]").

The only portion of Plaintiff's physical attributes that "matched" Ms. Bailey's description of the suspect is that Plaintiff was also "a black male." Dkt. No. 90-1 at ¶ 18. A reasonable juror could conclude that this fails to provide reasonable suspicion to briefly detain Plaintiff, let alone probable cause to arrest him. *See, e.g., United States v. Walker*, 965 F.3d 180, 186 (2d Cir. 2020) ("As we have repeatedly said, 'race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop.' ") (quoting *United States v. Swindle*, 407 F.3d 562, 569-70 (2d Cir. 2005)); *Zuniga-Perez v. Sessions*, 897 F.3d 114, 124 (2d Cir. 2018) ("As the Supreme Court has made abundantly clear, stopping and interrogating people based solely on race or ethnicity violates the Fourth Amendment.") (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885-86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)); *Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016) ("[A] description of race and gender alone will rarely provide reasonable suspicion justifying a police search or seizure.") (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 334 (2d Cir. 2000)); *Jenkins*, 478 F.3d at 90 ("It has long been established, however, that when that description could have applied to any number of persons and does not single out the person arrested, probable cause does not exist.") (collecting cases); *see also supra* n.13.

Defendants also claim that Plaintiff's clothing "matched" the description Ms. Bailey had provided, in that "his hat, shirt, and pants all appeared to be different shades of green." Dkt. No. 77-56 at 13-14. This characterization is unsupported by the BWC footage

from the Responding Officers, which a reasonable juror could conclude shows Plaintiff wearing a grey hat, a white striped shirt, grey pants, and a puffy black patterned jacket, none matching. *See generally* Dkt. Nos. 77-15, 77-16, 77-17. Defendants' claim is also contradicted by the assessment from the non-party officer who cataloged Plaintiff's clothing as consisting of a "Baseball Hat (Grey, green Bird Game logo)[,]" "Blue/green/white striped shirt[,]" "Grey pants with belt[,]" and a "Black winter coat[.]" Dkt. No. 77-10 at 3. In any event, the varied articles of clothing Plaintiff wore on May 6, 2019 are not indisputably a "green sweatsuit," like Ms. Bailey had described. Dkt. No. 90-1 at ¶ 18. And Ms. Bailey never described the suspect wearing any hat at all, Dkt. No. 77-5, let alone a hat with prominent neon lettering, like the one Plaintiff had on his head when Officer Russell arrived, walked over to Plaintiff and Ms. Bailey, and began speaking with them, Dkt. No. 77-16 at 0:00. Given this factual record, Defendants have not established that Plaintiff's clothing "matched" the description of the suspect such that they are entitled to judgment as a matter of law.

***20** At best, Defendants' argument is that they had probable cause to arrest Plaintiff because some of his clothing may have had some green. The Court finds this argument unpersuasive given the Second Circuit's analysis in *Dancy v. McGinley*. In that Section 1983 case, police officers received a description of a robbery suspect as simply "[t]hin black male, brown jacket." 843 F.3d at 99. Minutes later, officers stopped, and ultimately arrested, two teenagers near the crime scene, one of whom was wearing a "camouflage-patterned coat, with green, light green, and brown patches." *Id.* at 100, 101. As relevant here, the panel reasoned that there was not even reasonable suspicion to stop this teenager, who "was indeed thin, black, and male. But, unlike the description, he was wearing a camouflage-patterned coat." *Id.* at 109. The Circuit went on to explain that "[w]hile such a discrepancy does not necessarily defeat a finding of reasonable suspicion ... the remaining description—thin, black, and male —is too vague in the circumstances here to justify a stop of anyone meeting it[.]" *Id.* (citations omitted) (collecting cases).

A reasonable juror could reach a similar conclusion here. Plaintiff's age, height, and build were nothing like the physical description Defendants received for the suspect. Further, Plaintiff's clothes, in color and type, did not constitute a "green sweatsuit," and thus did not provide Defendants reasonable suspicion to detain him, let alone probable cause to arrest him. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that the police arrested [plaintiff] based on little more than a witness's statement that he wore a similar shirt to that of one of [the victims'] attackers. Although a jury could also interpret the evidence differently, the record presents genuine issues of material fact that preclude the conclusion that there was probable cause as a matter of law and that, instead, require a trial on the merits."); *see also supra* n.13.

Defendants' argument regarding Plaintiff's presence at the scene fares no better. *See, e.g., United States v. Delossantos*, 536 F.3d 155, 160 n.4 (2d Cir. 2008) ("[A] person's presence at a crime scene or association with criminal suspects do not, without more, amount to probable cause to arrest."); *Dufort*, 874 F.3d at 350 ("Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances, or happens to be at the scene of a crime[.]") (citation omitted); *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("[A]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). Plaintiff was present in front of the apartment building where he lived and, as detailed earlier, Defendants were repeatedly informed that the assailant was another man who had already left the scene. *Mitchell v. City of New* York, 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983)).

As to the blood on Plaintiff's lip, in response to Officer Russell's question, Ms. Bailey can be heard explaining that "he was hit too in the whole altercation, you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

In sum, the totality of the circumstances proffered by Defendants fails to establish an undisputed factual record on which to grant summary judgment. *Delossantos*, 536 F.3d at 161. A reasonable juror could find that Defendants lacked probable cause to arrest Plaintiff at approximately 7:34 p.m. on May 6, 2019.

**3. Subsequent Information**

Defendants go on to argue that, between handcuffing Plaintiff and formally arresting him approximately five hours later, they obtained additional information that provided them probable cause to arrest Plaintiff. Dkt. No. 77-56 at 15-21. Because a reasonable juror could conclude that Plaintiff had been arrested at approximately 7:34 p.m., however, this subsequent information is not relevant to analyzing probable cause. *See, e.g., Carruthers*, 153 F.4th at 179 ("To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' ") (quoting *Ashley*, 992 F.3d at 136); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.' ") (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)). Nonetheless, for the avoidance of doubt, a reasonable juror could conclude that none of the subsequent information identified by Defendants, in combination with the earlier information discussed above, provided probable cause to formally arrest Plaintiff at approximately 1:00 a.m. on May 7, 2019.

**a. Plaintiff's Continued Detention Prior to His Interrogation**

***21** Defendants first argue that the Responding Officers "performed many investigative tasks" after handcuffing Plaintiff at approximately 7:34 p.m., and that Detective Brimmer "performed several investigative tasks" prior to interrogating Plaintiff at approximately 10:30 p.m. Dkt. No. 77-56 at 15, 17.

With respect to the Responding Officers, however, the only additional information Defendants identify is Officer Cecile's subsequent call with Ms. Bailey. *Id.* at 15-16. During that call, Ms. Bailey appears to have again stated that the man who hit Mr. Jones was "wearing a green jump suit," Dkt. No. 77-55 at ¶ 100, and was "like 35 to 40" years old, Dkt. No. 77-15 at 16:43, not the "[l]ate 50s or early 60s" that Officer Cecile perceived Plaintiff to be, Dkt. No. 77-25 at 7:5-11. Such information is largely consistent with—and duplicative of—the information Responding Officers already had. *See supra* Section IV.A.2. Thus, a reasonable juror could conclude that Plaintiff still did not match the description that Ms. Bailey provided.

Defendants further contend that the Responding Officers undertook various investigative efforts at 941 James Street after handcuffing Plaintiff. Dkt. No. 77-56 at 15-16. But Defendants identify no relevant additional information from these efforts. *Id.* Instead, Defendants take the position that the Responding Officers had "ample" probable cause to arrest Plaintiff because "[a]t the conclusion of th[eir] investigation, nothing excluded Plaintiff as the assailant. In other words, no eye-witness exonerated Plaintiff ... and there was no available surveillance evidence." *Id.* at 16. Defendants cite no legal authority for the proposition that unless a person is "exonerated" by an eyewitness or video evidence at the scene of a crime, there is probable cause to arrest them. *Cf. Ricciuti*, 124 F.3d at 130 ("This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society."). Defendants identify nothing from these investigative efforts that even suggested that Plaintiff had committed a crime. *Hawkins*, 37 F.4th at 858.

With respect to Detective Brimmer's investigation prior to Plaintiff's interrogation, Defendants similarly contend that Detective "Brimmer did not discover any evidence that suggested Plaintiff *was not* the assailant." Dkt. No. 77-56 at 17. More importantly, Defendants again fail to identify any additional information developed by Detective Brimmer that indicated Plaintiff *was* the assailant. *Id.* Moreover, a reasonable juror could conclude that the factual record belies Defendants' claim. The results of the canvas conducted by Detective Brimmer and his colleague further indicated that there had been three men drinking at the scene of the assault, not just Plaintiff and Mr. Jones, and thus further supported the possibility that Plaintiff was not the assailant. Dkt. No. 77-13 at 2; *see also* Dkt. No. 77-56 at 12.

**b. Plaintiff's Interrogation**

Defendants next argue that Plaintiff's statements during his interrogation by the Detectives provided probable cause for his arrest, and that "Plaintiff voluntarily waived his rights and was not coerced into a confession." Dkt. No. 77-56 at 18-21.[17]

17 Defendants do not dispute that *Miranda* warnings were necessary. *See id.*; *Jackson v. Conway*, 763 F.3d 115, 136 (2d Cir. 2014) ("The *Miranda* safeguards apply only to 'custodial interrogations.' ").

***22** "Challenges to the voluntariness of a confession are based on two overlapping constitutional provisions: (1) due process protections under the Fifth (or Fourteenth) Amendment, and (2) the Fifth Amendment privilege against self-incrimination." *United States v. Mendonca*, 88 F.4th 144, 163 (2d Cir. 2023) (citing *Dickerson v. United States*, 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). "As a general matter, courts' descriptions of statements as 'compelled' (invoking the text of the Self-Incrimination Clause) and/or 'involuntary' (invoking, arguably, the Due Process Clause) are often used interchangeably and the words often treated synonymously." *United States v. Allen*, 864 F.3d 63, 82 n.84 (2d Cir. 2017) (collecting cases). As a practical matter, courts "look at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citation omitted). "To be effective, a waiver of a defendant's *Miranda* rights must be both knowing and voluntary." *United States v. LaPorte*, 779 F. App'x 63, 65 (2d Cir. 2019) (citing *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011)). In the *Miranda* context, " 'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception." *Taylor*, 745 F.3d at 23 (quoting *Plugh*, 648 F.3d at 127). Even if a waiver is knowing and voluntary, courts "must nonetheless determine whether the [subsequent] inculpatory statements themselves were voluntary." *Id.* (citing *Dickerson*, 530 U.S. at 444, 120 S.Ct. 2326).

Defendants make various factual arguments as to why "there is no evidence that Plaintiff was not of sound mind or so intoxicated as to render his confession involuntary." Dkt. No. 77-56 at 19-20. Given the present factual record, however, Defendants are not entitled to summary judgment on this issue.

As an initial matter, Defendants' own expert contradicts Defendants' position. *Id.* at 20. Dr. Weisman has repeatedly opined that, over the course of the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him." Dkt. No. 77-52 at 11-13.

Further, the parties agree that Plaintiff consumed in excess of one hundred ounces of malt liquor in the hours before his interrogation. Dkt. No. 77-55 at ¶¶ 410-11, 414, 420. Plaintiff stated "I'm drunk" shortly after the interrogation began, Dkt. No. 77-22 at 6:22, and repeatedly referenced his drunkenness thereafter, Dkt. No. 90-1 at ¶ 522. Nearly three hours after the interrogation began, Plaintiff's BAC, as measured by Defendants, was still almost twice the legal limit. Dkt. No. 77-24; *see also supra* n.4. Dr. Weisman opined that, even at this lower BAC, "[m]otor function, speech, and judgment are all severely affected" and that "[s]taggering, and slurred speech, may be observed." Dkt. No. 77-52 at 10. A reasonable juror could conclude that Plaintiff's body movements, speech, and demeanor during the videotaped interrogation demonstrate a significant level of intoxication, and also that they are consistent with Dr. Weisman's opinion. *See generally* Dkt. No. 77-21.

Defendants' suggestion that Plaintiff's mental health during the interrogation was not at issue because he did not share any hallucinations with the Detectives proves too much. Dkt. No. 77-56 at 20 ("[A]t no point during the interview did Plaintiff indicate that he was hearing voices.... Similarly, at no point during the interview did Plaintiff indicate that he could see things that the Defendant Detectives could not see."). Plaintiff's medical diagnoses at the time included schizophrenia, depression, and alcoholism. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454. During the interrogation, Plaintiff explained that he was not currently working because he had a dual diagnosis and that his primary care doctor, psychiatrist, and counselor were at the same local healthcare provider. Dkt. No. 77-22 at 102:16-103:16. As for Defendants' argument that Plaintiff was determined not to be incapacitated more than a year after the interrogation, that does little to establish the voluntariness of Plaintiff's waiver on May 6, 2019. Dkt. No. 77-55 at ¶¶ 390-98.

***23** Given this record, a reasonable juror could determine that Plaintiff's *Miranda* waiver was not voluntary.

Even if Defendants had established that Plaintiff's waiver was voluntary, they have not demonstrated that it was also knowing. *LaPorte*, 779 F. App'x at 65. Defendants do not appear to make any express arguments on this second requirement for waiver. *See, e.g.,* Dkt. No. 77-56 at 18 ("[A]s discussed below, Plaintiff voluntarily waived his rights and was not coerced into a confession."); *id.* at 25 ("[F]or the reasons stated above, Plaintiff voluntarily waived his *Miranda* rights and his confession was freely given."). In any event, Dr. Weisman's opinions also include his assessment that—when sober—Plaintiff's "basic understanding of *Miranda*" ranks in the eighteenth percentile of pretrial defendants and that Plaintiff "has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." Dkt. No. 77-52 at 7, 8-9. Because "knowing" for purposes of *Miranda* means "made *with a full awareness of both the nature of the right being abandoned* and the consequences of the decision to abandon it," a reasonable juror could find that Plaintiff's waiver was not knowing. *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)).

A reasonable juror could also find Plaintiff's subsequent confession, after extensive interrogation by the Detectives, involuntary for similar reasons. *See, e.g., Taylor*, 745 F.3d at 24 ("An individual's mental state should be considered in the voluntariness inquiry to the extent it allowed law enforcement to coerce the individual.... It is clear, however, that when 'a person is unconscious or drugged or otherwise lacks capacity for conscious choice,' a confession cannot be voluntary.") (first citing *Colorado v. Connelly*, 479 U.S. 157, 164-65, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); then citing *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) (*per curiam*); and then quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Again, Defendants' expert has repeatedly opined that, during the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him." Dkt. No. 77-52 at 11-13. The Court also notes that, prior to Plaintiff's confession, the Detectives removed Plaintiff's phone from his person and then from the room. Dkt. No. 77-22 at 27:6-20, 60:24-61:3. During the subsequent break, and prior to Plaintiff's confession, Plaintiff is visible in the video talking to himself and trying to open the locked door keeping him in the interrogation room. Dkt. No. 77-21b at 14:00-17:00; *cf. Poventud v. City of New York*, 750 F.3d 121, 145 & n.6 (2d Cir. 2014) (Lynch. J., concurring) ("[W]e know that false confessions have been obtained by pressures much less imposing than those to which [plaintiff] was subjected.") (collecting authorities).

***24** Because a reasonable juror could determine that Plaintiff's confession was involuntary, based in part on his intoxication, capacity, and the length and nature of his detention and interrogation, the Court finds Defendants' argument that the Detectives permissibly used "falsehoods" during the interrogation to be somewhat beside the point. Dkt. No. 90 at 7 (citing *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) ("The fact that the police misrepresented statements that [a witness] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.")); *see also United States v. Caraballo*, 282 F. App'x 910, 914 (2d Cir. 2008) ("We have held that '[w]hether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of the interrogation, and the conduct of law enforcement officials.' ") (alteration in original) (quoting *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)).

For all of these reasons, [18] the Motion is denied as to Plaintiff's federal and state claims for false arrest following his handcuffing at approximately 7:34 p.m. on May 6, 2019.

18 Defendants' argument that no Individual Defendants was personally involved in all of the events resulting in Plaintiff's arrest and monthslong detention is unpersuasive. Dkt. No. 77-56 at 13, 21 n.6. As detailed above, Plaintiff has sufficiently established the personal involvement of every Individual Defendant in the events giving rise to his false arrest claims. *See, e.g., Legree v. City of Waterbury*, No. 22-cv-00659, 2024 WL 3964944, at *7 (D. Conn. Aug. 28, 2024) ("However, 'personal involvement' in an arrest is not limited to officers who were physically involved in taking someone into custody. Courts in this Circuit have upheld false arrest liability for non-arresting officers.") (collecting cases).

### B. Malicious Prosecution under Section 1983

"To prevail on a malicious prosecution claim under New York law, a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice.' " *Alexander*, 132 F.4th at 158 (alteration in original) (quoting *Kee*, 12 F.4th at 161-62). Section 1983 requires these same four elements, "but it also imposes an additional one: '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.' " *Id.* (first quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); and then citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562, 144 S.Ct. 1745, 219 L.Ed.2d 262 (2024)).

Defendants challenge only the probable cause element of Plaintiff's Section 1983 claim for malicious prosecution. Defendants argue that this claim fails because (i) "the probable cause supporting Plaintiff's arrest was overwhelming;" (ii) "[t]hat probable cause only increased in the day following Plaintiff's arrest;" and (iii) the DA's Office sought and obtained Plaintiff's indictment. Dkt. No. 77-56 at 21-24.

Defendants' first argument is unpersuasive for the reasons detailed previously. *See supra* Section IV.A. Given the current record, a reasonable juror could find that Defendants did not have probable cause to either arrest or prosecute Plaintiff based on the events that transpired between approximately 7:30 p.m. on May 6, 2019, and 1:00 a.m. on May 7, 2019. *See, e.g., Walsh v. City of New York*, 742 F. App'x 557, 562 (2d Cir. 2018) (" 'Probable cause, in the context of a malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.' ... Because a reasonable juror could believe that probable cause did not exist for [plaintiff]'s arrest, as noted above, we conclude that it follows that a reasonable juror could also believe that probable cause did not exist for [plaintiff]'s prosecution.") (first alteration in original) (citing *Stansbury*, 721 F.3d at 95). Summary judgment is thus not appropriate on this ground.

***25** Defendants' second argument relies on disputed facts that are also not appropriately resolved at summary judgment. Defendants contend that, later on May 7, 2019, Detective Brimmer received additional information from Ms. Bailey and Ms. Goldych. Dkt. No. 77-56 at 22-23. But, as detailed earlier, the parties dispute what Ms. Bailey actually said to Detective Brimmer. *See supra* Section II.B.4.a. Moreover, Ms. Bailey's sworn statement suggests that she provided significant exculpatory information to Detective Brimmer. *See, e.g.,* Dkt. No. 85-10 at ¶¶ 7-8, 10; *Napolitano*, 29 F.4th at 107 ("[W]e have also consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' ") (quoting *Panetta*, 460 F.3d at 395). Because there is a genuine dispute of material fact as to what information Ms. Bailey provided Detective Brimmer—including whether it was exculpatory—such information is not an appropriate basis on which to find the existence of probable cause as a matter of law. Nor is the information that Ms. Goldych apparently provided Detective Brimmer on May 7, 2019, during his third attempt to speak with her. Dkt. No. 77-19 at 2-3. Given Ms. Goldych's intoxication, memory, and the absence of a written statement from her, the information attributed to her does not establish probable cause entitling Defendants to judgment as a matter of law. *See supra* n.7.

Defendants' third argument rests on the presumption of probable cause created by a grand jury indictment. *See, e.g., Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 103 (N.D.N.Y. 2023) ("[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.") (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). The parties agree that such a presumption applies in this case, but dispute whether the factual record rebuts it. Dkt. No. 77-56 at 23; Dkt. No. 85 at 28-29.

A reasonable juror could conclude that the current factual record rebuts such a presumption. Not only was the prosecution against Plaintiff dismissed, senior prosecutors in the DA's Office have indicated that the basis for the prosecution was deeply flawed. Dkt. No. 85-7 at 1; Dkt. No. 85-11 at 9. A reasonable juror could find, for example, that Plaintiff's prosecution was initiated by (i) the arrest report charging Plaintiff that Detective Brimmer prepared; (ii) the allegedly false confession obtained by Detectives Brimmer and Beauchine, *see, e.g., Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) ("A jury 'may permissibly find that a defendant initiated a prosecution where he filed the charges or prepared an alleged false confession and forwarded it to prosecutors.' ") (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)); *Dufort*, 874 F.3d at 353

("The 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect.") (citing *Manganiello*, 612 F.3d at 163); and/or (iii) the purportedly false statements in the police reports prepared by Detective Brimmer, Officer Cecile, Officer Tolone, and Officer Russell,[19] *see, e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior.") (collecting cases); *Werkheiser*, 655 F. Supp. 3d at 103 ("A defendant could have initiated a prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.' ") (first quoting *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017); additional citations omitted).

19 Each report was affirmed under penalty of perjury. *See, e.g.,* Dkt. No. 77-19 at 2-3; Dkt. No. 77-6 at 5; Dkt. No. 77-8 at 2; Dkt. No. 77-7 at 2.

Moreover, Plaintiff is correct that a "jury examining Detective Brimmer's police report alongside Ms. Bailey's statements could conclude that Det. Brimmer fabricated what [Ms.] Bailey told him to support, rather than contradict, Mr. Adams' false confession." Dkt. No. 85 at 27; *see also Manganiello*, 612 F.3d at 162 ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.") (quoting *Ricciuti*, 124 F.3d at 130); N.Y. Crim. Proc. Law § 60.50 ("A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed."); N.Y. Crim. Proc. Law § 70.10(1) ("[E]vidence is not legally sufficient when corroboration required by law is absent.").

***26** The Court also agrees with Plaintiff that a reasonable juror could conclude that the police reports from the Responding Officers contained "false or misleading information that wrongfully inculpated Mr. Adams and failed to include key exculpatory information." Dkt. No. 85 at 28; *see also Manganiello*, 612 F.3d at 162 ("Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome.") (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)); *Werkheiser*, 655 F. Supp. 3d at 104 ("Alternatively, the presumption 'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.' ") (quoting *Hill v. Melvin*, No. 05-cv-6645, 2006 WL 1749520, at *13 (S.D.N.Y. June 27, 2006)).

For instance, Officer Cecile's report states that Ms. "Bailey stated that the suspect was an old black man." Dkt. No. 77-6 at 5. But this assertion is contrary to the actual description of the suspect contained in the 911 call notes, Dkt. No. 90-1 at ¶ 18 (indicating that Ms. Bailey stated the suspect was only 25 to 35 years old) and the similar description Ms. Bailey appears to have provided to Officer Cecile during their subsequent phone conversation, Dkt. No. 77-15 at 16:43 (Officer Cecile clarifying "the guy who got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?"). Officer Cecile also noted in his report that the suspect had been described as wearing "a green sweat suit," while Plaintiff was wearing "a grayish/teal puffy jacket and green pants[.]" Dkt. No. 77-6 at 5. As detailed earlier, while there is presently a factual dispute as to whether Plaintiff's pants were green, Defendants do not contend that Plaintiff's jacket was green. *See supra* Section IV.A.2 (Defendants arguing that Plaintiff's "hat, shirt and pants all appeared to be different shades of green") (quoting Dkt. No. 77-56 at 14); *see also* Dkt. No. 77-10 at 3 (report from non-party officer stating that Plaintiff had a "Black winter coat"). Similarly, Officer Tolone's report states that the suspect was wearing "a green jump suit," while Plaintiff "was wearing green pants and a grey / green vest." Dkt. No. 77-8 at 2. As also detailed earlier, Defendants do not contend that Plaintiff was wearing a vest at all. *See supra* Section IV.A.2; *see also* Dkt. No. 77-10 (report from non-party officer listing Plaintiff's items of clothing, none of which are a vest). Given all this, a reasonable juror could find that Officers Cecile and Tolone fabricated portions of their reports to align their descriptions of Plaintiff with that of the suspect.

Additionally, Officers Cecile and Russell omitted any mention of the exculpatory facts that Ms. Bailey,[20] Ms. Goldych, and Plaintiff all indicated that a third man had assaulted Mr. Jones and left the scene. Dkt. Nos. 77-6, 77-7; *see also Werkheiser*, 655 F. Supp. 3d at 103; *Napolitano*, 29 F.4th at 107. For his part, Officer Tolone's report states only that "when we initially arrived on scene Adams stated there was another male that started a fight with Jones." Dkt. No. 77-8 at 2.

20 Defendants contend that Officer Russell was "unaware of the fact" that Ms. Bailey was still on the scene when Officer Russell arrived. Dkt. No. 77-56 at 14. This assertion is contradicted by Officer Russell's BWC footage. *See* Dkt. No. 77-16 at 0:01 (Officer Russell responding to Ms. Bailey's statement that "he got into a fight with somebody, the other dude ran off, but he got knocked out" with "the other dude knocked out?"); *id.* at 11:27 (Officer Russell stating "I wish we would have got those people that were ..." and gesturing towards the sidewalk in the direction Ms. Bailey and her siblings had walked); *id.* at 17:21 (Officer Russell stating "did anyone contact those people back," presumably again in reference to Ms. Bailey and her siblings).

***27** With respect to each Individual Defendant, then, a reasonable juror could find that the indictment "was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith,' " or "that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures," *Werkheiser*, 655 F. Supp. 3d at 104 (first quoting *Savino*, 331 F.3d at 72; and then quoting *Hill*, 2006 WL 1749520, at *13). Given the current factual record, a reasonable juror could find that the presumption of probable cause is rebutted. *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) ("[T]he presumption can be rebutted by showing 'that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith[.]' ") (second alteration in original) (quoting *Colon*, 468 N.Y.S.2d 453, 455 N.E.2d at 1250-51). Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for malicious prosecution against the Individual Defendants.[21]

21 To the extent that the Complaint states a distinct claim for malicious prosecution against Defendant City individually, or pursuant to New York law, any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 22 & n.7, 24, *with* Dkt. No. 85 at 23-30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed further below. *See infra* Section IV.D.

### C. Fabricated Evidence under Section 1983

In order to prevail on "a Section 1983 fabrication of evidence claim, a plaintiff must demonstrate that '(1) [an] investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (alterations in original) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Defendants first argue that Plaintiff's fabricated evidence claim is limited to his allegedly false confession and should thus be dismissed against the Responding Officers, "who were not present for Plaintiff's interview and were not involved in his confession." Dkt. No. 77-56 at 25, Dkt. No. 90 at 8. The Court agrees with Plaintiff that this claim is not so limited, and that "there are disputed issues of fact from which a reasonable juror could find that" each of the Responding Officers "fabricated inculpatory evidence [or] suppressed exculpatory evidence to implicate [Plaintiff] wrongly." Dkt. No. 85 at 30; *see also supra* Section IV.B.

As to the confession, Defendants' renewed argument that Plaintiff voluntarily waived his *Miranda* rights and voluntarily confessed remains unpersuasive for the reasons previously set forth. Dkt. No. 77-56 at 25; *see also supra* Section IV.A.3.b.

Defendants' final argument that the Detectives did not know Plaintiff's confession was false is similarly insufficient to grant summary judgment on this claim. Dkt. No. 77-56 at 25-26. A reasonable juror could view the videotaped interrogation of Plaintiff and conclude that the Detectives knew Plaintiff's eventual confession was false because, for example, Plaintiff was visibly intoxicated; Plaintiff denied assaulting Mr. Jones nearly 200 times, Dkt. No. 85-2 at ¶ 570; Plaintiff "became emotionally

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him," as Defendants' expert opined after viewing the videotaped interrogation, Dkt. No. 77-52 at 11-13; or, as Detective Brimmer noted in his police report, because Plaintiff "provided several different versions about what occurred," Dkt. No. 77-19 at 2, some of which were implausible, *see, e.g.,* Dkt. No. 77-22 at 86:22-87:22 (Plaintiff stating that he was able to hit Mr. Jones in the head three of four times with a stick before Mr. Jones fell down); *id.* at 100:8-21 (Plaintiff stating that Mr. Jones punched him twice over the course of the day, both times on the "same place" on his lip and Detective Brimmer responding "[y]eah, he knows where to get you, man. He's got aim on that thing, huh"). *See also Ortiz*, 137 F.4th at 62, 67-68 ("[T]he law does not require a plaintiff to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence and, thus, a plaintiff may do so entirely through circumstantial evidence.... 'The jury, of course, was not required to believe [the defendant's] testimony denying knowledge. Issues relating to state of mind, such as knowledge and intent, may be influenced by assessments of credibility and often must be established by circumstantial evidence.' ") (last alteration in original) (quoting *United States v. Ocampo-Guarin*, 968 F.2d 1406, 1410 (1st Cir. 1992)). Moreover, if a jury were to believe Ms. Bailey that Detective Brimmer fabricated various statements he attributed to her in his police report, they could also conclude that he did so knowingly.

***28** Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for fabricated evidence against the Individual Defendants. [22]

22 To the extent that the Complaint states a distinct claim for fabricated evidence against Defendant City individually, any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 26, *with* Dkt. No. 85 at 30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed next. *See infra* Section IV.D.

### D. *Monell* Claim

Section 1983 "does not impose vicarious liability on a municipality for the actions of its employees." *Alexander*, 132 F.4th at 160 (citing *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023)). Instead, "[t]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (second alteration in original) (first quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); and then citing *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As to the first element, a plaintiff can establish the existence of an official policy or custom in four ways:

> (1) a formal policy endorsed by the municipality, ...; (2) actions directed by the government's "authorized decisionmakers" or "those who establish governmental policy," ...; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, ...; or (4) a "constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees[.]"

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (final alteration added) (first citing *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); then quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); then citing *Turpin*, 619 F.2d at 199; and then quoting *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Defendants first argue that Plaintiff's *Monell* claim should be dismissed because there is no underlying constitutional violation. Dkt. No. 77-56 at 26. Given that Plaintiff's constitutional claims survive summary judgment, this argument is unavailing. *See supra* Section IV.A-C.

Defendants next argue that the purportedly similar arrests referenced in one paragraph of the Complaint do not establish a *Monell* claim. Dkt. No. 77-56 at 27-28. Those alleged instances appear to relate to excessive force and racial profiling claims against

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

non-party officers in the Syracuse Police Department over a span of some years. Dkt. No. 1 at ¶ 61. In part because Plaintiff has not brought an excessive force claim, the Court agrees with Defendants that these alleged instances are insufficiently similar to the constitutional deprivations Plaintiff allegedly suffered. *See Campo v. City of New York*, No. 19-cv-04364, 2022 WL 970730, at *12 (E.D.N.Y. Mar. 31, 2022) ("A plaintiff may also plead the existence of *de facto* customs or policies 'by citing to complaints in other cases that contain similar allegations.' ") (quoting *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)). As Defendants correctly point out in reply, Plaintiff also has not opposed the Motion on this narrow issue. Dkt. No. 90 at 8-9; *see also Jackson*, 766 F.3d at 195. Accordingly, any *Monell* claim based on these dissimilar cases or racial profiling is dismissed.

***29** For whatever reason, Defendants do not squarely address the core of Plaintiff's *Monell* claim. *Compare* Dkt. Nos. 77-56, 90, *with* Dkt. No. 1 at ¶¶ 52-60 (alleging, *inter alia*, that Defendant City "has a policy, custom, practice and pattern of conduct in place that enables its agents and employee[ ] police officers to act with deliberate indifference to the constitutional rights of individuals[,]" including "inadequate guidelines for conducting interrogations, obtaining false confessions and corroborating false confessions with eye witness accounts"). Plaintiff's opposition to the Motion argues that Defendant City was deliberately indifferent to his constitutional rights by failing "to supervise and/or train its officers to undertake constitutionally lawful detentions, interrogations, and practices to forego the fabrication of evidence." Dkt. No. 85 at 31-33 (citing Dkt. No. 1 ¶¶ 53, 54, 58).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion)). The Second Circuit has set forth the following requirements before a municipality's failure to train or supervise constitutes deliberate indifference:

> "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." ... "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." ... "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." ... "In addition, at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.' "

*Jenkins*, 478 F.3d at 94 (first quoting *Walker v. City of New York*, 974 F.2d 293, 297, 298 (2d Cir. 1992); and then quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)).

Regardless of whether Plaintiff has satisfied the first three of these requirements, his assertions with respect to the Responding Officers' training lack the necessary factual detail and are too conclusory. Dkt. No. 85 at 31. He fails to identify any "specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury[,]" *Green*, 465 F.3d at 81. Accordingly, any *Monell* claim based on the training of the Responding Officers is dismissed. For similar reasons, any *Monell* claim based on training related to fabricated evidence generally is also dismissed.

Plaintiff's arguments as to the training the Detectives received warrant a different outcome however. Plaintiff contends that the Detectives received inadequate "training on how to avoid false confessions" and "improperly interrogated" Plaintiff, leading to his allegedly false confession. Dkt. No. 85 at 33. Unlike with the Responding Officers and fabricated evidence more generally, Plaintiff also sets forth various facts regarding the Detectives' interrogation training, facts which Defendants largely do not deny. Dkt. No. 90-1 at ¶¶ 523-28, 531-33, 587-88.

Additionally, the Report that Plaintiff includes in his opposition to the Motion states that a deputy police chief at the Syracuse Police Department "was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state." Dkt. No. 85-11 at 9. The Report further states that "it is a matter of training that detectives are trained on the fact that interviewing an intoxicated

person is lawful, unless in this manic state.” *Id.* The Report indicates that neither Detective thought Plaintiff was “excessively intoxicated” during the interview on May 6, 2019. *Id.* at 11, 12. Seemingly because of such training, the Report determined that “[t]herefore, the actions by [the D]etectives during that interview were lawful and proper.” *Id.* 9.

***30** The Report went on to conclude that Plaintiff's “claim that he was arrested and charge[d] for a crime he did not commit is true[,]” and that while Plaintiff was charged “due to his own admission[,]” “[t]he interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer.” *Id.* at 12.[23] Following that conclusion are signatures for the chief of police, the first deputy chief, a bureau chief, a supervisor, and the investigating sergeant. *Id.* at 13. *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (“To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights.”); *Donovan v. Norwich City Sch. Dist.*, No. 19-cv-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) (“An official's title, though not dispositive of his authority to make policy, is relevant for the interferences fairly to be drawn therefrom.”) (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)).

23 This portion of the Report makes clear that Detective Brimmer was subsequently promoted to Detective Sergeant, a position in which he supervises other detectives. *See also* Dkt. No. 77-49 at 12:20-13:1.

Drawing all reasonable inferences in Plaintiff's favor for purposes of summary judgment, a reasonable juror could find the requirements for deliberate indifference satisfied with respect to the Detectives’ training for interrogating intoxicated individuals. First, the apparent existence of this very training reflects “a moral certainty” that detectives will need to interview such individuals. *Jenkins*, 478 F.3d at 94 (citation omitted). Second, Detective Brimmer's own testimony suggests that interviewing intoxicated individuals presents a “difficult choice.” *Id.* (citation omitted); Dkt. No. 77-49 at 25:16-24 (Detective Brimmer testifying with respect to intoxication and mental capacity during custodial interviews that “I can't think of any exact incident where that has occurred but I do understand how, you know, severe intoxication or, you know, severe mental health where someone's having a schizophrenic outbreak, or something to that effect, is certainly going to affect what they're telling us. *And it would be a judgment call and we likely would not interview that person if they're under extreme intoxication or having an emotional and/or mental health crisis*.”) (emphasis added). Third, Defendants’ own expert indicates that the “wrong choice” can result in a false confession, and thus a deprivation of constitutional rights. *Jenkins*, 478 F.3d at 94 (citation omitted); Dkt. No. 77-52 at 11-13; *see also* Dkt. No. 85-7 at 1 (“The district attorney said the case shows police and prosecutors need better training in identifying the dynamics of false confessions. ‘While it seems counterintuitive that someone would confess to something they did not do, it happens,’ [DA] Fitzpatrick said. ‘And in this case, I hope all involved analyze the root causes of why this happened.[’]”). Finally, the Report identifies a “specific deficiency in the city's training program,” *Jenkins*, 478 F.3d at 94 (citation omitted), in that the only limitation on interrogating intoxicated individuals appears to be when they are “in a manic state,”[24] Dkt. No. 85-11 at 9.

24 It is unclear from the current record how this limitation operates in practice, given that alcohol is a depressant while “[m]ania is a condition in which you have a period of abnormally elevated, extreme changes in your mood or emotions, energy level or activity level. This highly energized level of physical and mental activity and behavior must be a change from your usual self and be noticeable by others.” *Mania*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/21603-mania (last visited September 29, 2025). Neither the Report nor the Motion identify the referenced caselaw. *See generally* Dkt. Nos. 77, 85-11, 90.

***31** At bottom, Plaintiff contends that the Detectives’ training caused them to violate his constitutional rights, by interrogating him while he was intoxicated and coercing him into providing a false confession. Plaintiff may well ultimately fail to prove such a claim. *See, e.g., Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (“[D]eliberate indifference is a stringent standard of fault.”) (alteration in original) (quoting *Connick*, 563 U.S. at 61, 131 S.Ct. 1350). But he has done enough to survive summary judgment—particularly in the absence of more specific argument from Defendants regarding deliberate indifference. According, the Motion is denied as to Plaintiff's *Monell* claim based on the Detectives’ interrogation training.

**E. Negligent Supervision and Retention under New York law**

In general, "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show[, *inter alia*,] (1) that the tort-feasor and the defendant were in an employee-employer relationship ...; [and] (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence[.]" *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (first citing *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901-02 (1987); and then quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997)). Additionally, "[w]hen a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.' " *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 972 N.Y.S.2d 169, 995 N.E.2d 131, 134 (2013)). "Providing police protection has long been recognized as a quintessential governmental function" and when "a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.*, 972 N.Y.S.2d 169, 995 N.E.2d at 135 (citing *Valdez v. City of New York*, 18 N.Y.3d 69, 936 N.Y.S.2d 587, 592, 960 N.E.2d 356 (2011)).

Defendants argue, *inter alia*, that this negligence claim should be dismissed (i) against the Individual Defendants because they were all employees and cannot be held liable as an employer; and (ii) against Defendant City because its employees were acting in the scope of their employment as police officers. Dkt. No. 77-56 at 28-30. Plaintiff provides no persuasive response. Dkt. No. 85 at 33-34. The Court also notes that Plaintiff offers no evidence regarding any of the Individual Defendants' "propensity for the conduct which caused the injury," *Ehrens*, 385 F.3d at 235 (citation omitted), nor any evidence that Defendant City owed him "a special relationship beyond the duty that is owed to the public generally," *Velez*, 730 F.3d at 135. Accordingly, the Court grants the Motion as to Plaintiff's tenth claim.

**F. Qualified Immunity for the Individual Defendants**

Defendants argue that (i) the Individual Defendants are entitled to qualified immunity on Plaintiff's false arrest and malicious prosecution claims because of the collective knowledge doctrine and because of "plausible instructions from a superior officer;" (ii) the Individuals Defendants are entitled to qualified immunity on Plaintiff's pre-interrogation detention because the multi-hour detention was "objectively reasonable;" (iii) the Individual Defendants are entitled to qualified immunity because they had arguable probable cause to arrest Plaintiff; and (iv) the Detectives are entitled to qualified immunity with respect to Plaintiff's confession because "there is no evidence that Plaintiff was not of sound mind or so intoxicated as to render his confession involuntary[.]" Dkt. No. 77-56 at 30-38. Defendants do not appear to contend that they are entitled to qualified immunity as to the balance of Plaintiff's fabricated evidence claim. *See id.*

***32** "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (*per curiam*) (citation modified). The application of qualified immunity requires the Court to undertake a two-pronged inquiry: whether "(1) ... the official violated a statutory or constitutional right, and (2) ... the right was 'clearly established' at the time of the challenged conduct." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (alterations in original) (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)). Under the "clearly established" prong, the law does not require "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); *see, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."); *Ricciuti*, 124 F.3d at 128, ("The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right."); *Weaver v. Brenner*, 40 F.3d 527, 533-34 (2d Cir. 1994) ("It is clear that [in 1989] ... a criminal suspect could not lawfully be compelled to be a witness against himself.... It was also clearly established in 1989 that police could not lawfully coerce incriminating statements from an in-custody criminal suspect."); *Zahrey v. Coffey*, 221 F.3d 342, 345 (2d Cir. 2000) ("We hold that there is a constitutional right not to be deprived of liberty

as a result of the fabrication of evidence by a government officer acting in an investigatory capacity .... [and] that this right was clearly established in 1996[.]"); *Morse v. Fusto*, 804 F.3d 538, 541 (2d Cir. 2015) ("[T]he actions of the defendants upon which [plaintiff] bases his claims were the knowing creation of false or misleading evidence by a government officer acting in an investigative capacity. We have held that such activity by a government official qualifies as an unconstitutional deprivation of the victim's rights. This right was, moreover, clearly established at the time of the defendants' conduct."); *Horn v. Adger*, Nos. 24-1034, 24-1038, 2025 WL 1618761, at *3 (2d Cir. June 9, 2025) (summary order) ("On appeal, the Detectives do not contest our clearly established caselaw holding that police officers are liable under § 1983 for 'creat[ing] false information likely to influence a jury's decision and forward[ing] that information to prosecutors.' ") (alterations in original) (citation omitted). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (citation omitted).

At this stage, the Court need only address the "constitutional violation" prong. As detailed above, whether any Defendant violated Plaintiff's constitutional rights depends on numerous disputed issues of material fact. The parties dispute, for example, when Plaintiff's detention ripened into an arrest, *see supra* Section IV.A.1; whether the Individual Defendants had probable cause to arrest Plaintiff prior to his interrogation, *see supra* Section IV.A.2-3.a; the extent of Plaintiff's intoxication during the interrogation, as well as the voluntariness and veracity of his statements, *see supra* Section IV.A.3.b; and whether the Individual Defendants improperly initiated Plaintiff's prosecution, *see supra* Section IV.B. Such factual disputes preclude a finding of qualified immunity at this stage. *See, e.g., Dufort*, 874 F.3d at 343 ("We conclude that the district court's grant of summary judgment as to [plaintiff]'s false arrest and malicious prosecution claims was premature, because disputed questions of material fact remain regarding key aspects of the criminal investigation and subsequent prosecution. We further conclude that those same questions of material fact preclude a grant of qualified immunity at the summary judgment stage.").

The Court reaches the same conclusion with respect to Defendants' arguments regarding reliance on "plausible instructions" from a superior officer and arguable probable cause. As to the former, the limited record evidence cited by Defendants is insufficient to establish, as a matter of law, that such instructions were given. Dkt. No. 77-55 at 34-35. In any event, as the authority on which Defendants rely makes clear, *id.* at 35, even if such instructions were given, that does not end the inquiry. *See Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.*[,] a warrant, probable cause, exigent circumstances).") (first quoting *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000); additional citations omitted). And the disputed factual record precludes reaching a determination with respect to this inquiry.

As to arguable probable cause, the current factual record also precludes summary judgment. *See, e.g., Napolitano*, 29 F.4th at 105 ("A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' ") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)); *Jenkins*, 478 F.3d at 88 ("[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.... If, however, on the undisputed facts the officer would be unreasonable in concluding that probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims.") (first citing *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001); and then citing *Dillard v. City of Syracuse*, 51 A.D.2d 432, 381 N.Y.S.2d 913, 915 (N.Y. App. Div. 1976)).

***33** In sum, the disputed factual record precludes summary judgment based on qualified immunity. *See, e.g., Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025) ("In the qualified immunity context, '[p]re-trial resolution of the defense [of qualified immunity] ... may be thwarted by a factual dispute.' ... 'Any disputed questions of material fact—such as the acts of the defendant and their effects on the plaintiff—are to be determined by the factfinder.' ") (final alteration added) (first quoting *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990); and then quoting *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022)). Given the current factual record, Defendants have not carried their burden to demonstrate that no rational juror could conclude that they violated

Plaintiff's constitutional rights. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) ("Thus, a decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' ") (quoting *al-Kidd*, 563 U.S. at 735, 131 S.Ct. 2074).[25]

25 Because factual disputes preclude summary judgment on the first prong of the qualified immunity inquiry, the Court makes no determination as to the second prong, as noted earlier. *Id.* at 219-220; *see also Linton v. Zorn*, 135 F.4th 19, 32 (2d Cir. 2025) ("But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.") (quoting *Tolan*, 572 U.S. at 656, 134 S.Ct. 1861). For similar reasons, the Court also does not address the parties' competing expert reports. Dkt. Nos. 77-53, 77-54, 85-14.

### G. John Does 1-100

Defendants also argue that because Plaintiff has not amended his Complaint, the Doe Defendants should be dismissed without prejudice. Dkt. No. 77-56 at 30. Plaintiff responds with a single sentence "reassert[ing] his request to amend the complaint to include additional defendants" and no authority in support of such a request. Dkt. No. 85 at 34.

Almost two years ago, Magistrate Judge Katz considered and denied Plaintiff's request to amend the Complaint to include two additional defendants. Dkt. No. 64. Since that time, Plaintiff has not sought a review of that decision and has not undertaken any further efforts to amend the Complaint. Plaintiff now offers no authority and no new arguments in support of his cursory request. Plaintiff's renewed request is denied for the reasons set forth by Magistrate Judge Katz, Dkt. No. 64, and all claims against the Doe Defendants are dismissed, *see, e.g., Kaczmarek v. City of Schenectady*, No. 10-cv-1193, 2013 WL 5506276, at *2 (N.D.N.Y. Oct. 4, 2013) ("Because plaintiffs have failed to timely identify and serve the John Doe defendants, plaintiffs' claims against both John Doe defendants are dismissed.").

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 77, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2025 WL 2772081

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 500625
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,
v.
Samantha Anna-Kay CODY, et al., Defendants.

1:25-CV-1714 (AJB/DJS)
|
Signed 02/04/2026

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, Albany, New York 12206

**REPORT-RECOMMENDATION and ORDER**

Daniel J. Stewart, United States Magistrate Judge

***1** The Clerk has forwarded for review a civil Complaint filed by Plaintiff. The Complaint was filed December 8, 2025. Dkt. No. 1, Compl. [1] The filing fee in this action has not been paid, but Plaintiff has filed a motion to proceed *in forma pauperis.* Dkt. No. 2. That Motion has been granted. The matter has been referred to the undersigned for an initial review pursuant to L.R. 72.3.

1 This is the second action filed by Plaintiff regarding similar factual allegations. *See Gammons v. Cody, et al.*, 1:25-CV-941 (AJB/DJS).

## I. FACTUAL ALLEGATIONS IN THE COMPLAINT

The Complaint provides a lengthy recitation of facts regarding ongoing Family Court proceedings between Plaintiff Shawn Taylor Gammons and Defendant Samantha Anna-Kay Cody. *See generally*, Compl. Given the nature of the legal recommendations made below, a detailed explication of those facts is not necessary. Generally stated, however, Plaintiff appears to allege that numerous attorneys assigned to represent him, Ms. Cody, or their children, have conspired against Plaintiff to cause him a litany of harms including prejudice in the Family Court proceedings, denial of custodial, visitation, and parental rights, the denial of various economic rights, including access to credit and mortgages, the denial or loss of professional licenses, among other harms. *See* Compl. at ¶ 85.

## II. GOVERNING LEGAL STANDARD

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2]

2 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In reviewing *a pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## III. DISCUSSION

### A. State Action under Section 1983

***2** Plaintiff's first cause of action asserts a claim under 42 U.S.C. § 1983. Compl. at ¶¶ 87-98. That claim is asserted against all Defendants and alleges, *inter alia*, violations of Plaintiff's rights under the Fourth, Sixth, Seventh, Thirteenth, and Fourteenth Amendments. *Id.* This claim is subject to dismissal against the vast majority of Defendants named in the action because they are not state actors subject to suit under section 1983. This basis for dismissal has previously been outlined for Plaintiff. *Gammons v. Cody*, 2025 WL 2722411, at *4 (N.D.N.Y. Sept. 2, 2025), *report and recommendation adopted*, 2025 WL 2719776 (N.D.N.Y. Sept. 24, 2025).

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

Seven individual attorneys are named as Defendants in this action. Compl. at p. 3. They are sued either because they served as appointed counsel for Plaintiff or Ms. Cody, *id.* at ¶¶ 11, 15, 18, 20, & 22, or as a law guardian for one of Plaintiff's children. *Id.* at ¶¶ 10 & 13. Neither role renders those attorneys state actors. *See*, *e.g.*, *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d. Cir. 2015) (law guardian not a state actor); *Culpepper v. Tierney*, 2024 WL 3303268, at *2 (E.D.N.Y. July 2, 2024) (court appointed 18B counsel not a state actor); *Alexander v. Murphy*, 2018 WL 3232349, at *5 (N.D.N.Y. July 2, 2018), *report and recommendation adopted*, 2018 WL 6000145 (N.D.N.Y. Nov. 14, 2018) (private attorney not a state actor); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (citing cases). The law firms of six of these individuals are also named as Defendants, Compl. at ¶¶ 12, 14, 16, 18, 21, & 23, but are similarly subject to dismissal on the ground that the firms are not state actors. *Bartolini v. Town of Dryden*, 2025 WL 1488505, at * 7 (N.D.N.Y. May 23, 2025); *Harrison v. New York*, 95 F. Supp. 3d at 328.

The Complaint also names Ms. Cody and Derek Cody as Defendants with respect to section 1983 claims. Compl. at ¶¶ 5-6. The Codys appear to be named as Defendants related to actions they took as litigants or witnesses in court proceedings related to

the divorce between Plaintiff and Ms. Cody. *See*, *e.g.*, Compl. at ¶¶ 85(9) & 85(15). “Private parties are generally not amenable to suit under § 1983, because they are not state actors.” *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664 (2d Cir. 2009). “The mere fact that they allegedly availed themselves of the judicial system, ... does not make them state actors.” *Gammons v. Cody*, 2025 WL 2722411, at *5 (citing *Sam & Mary Hous. Corp. v. New York State*, 632 F. Supp. 1448, 1450 (S.D.N.Y. 1986)).

While it is true that private actors may be proper § 1983 defendants when they conspire with state actors, mere conclusory allegations that a private individual acted in concert with state officials such as those made here, *see* Compl. at ¶ 1, are insufficient to establish state action. *Ciambreillo v. County of Nassau*, 292 F. 3d 307, 324 (2d Cir. 2002).

Accordingly, the Court recommends that the section 1983 claims against Defendants Samantha Cody, Derek Cody, Gross, Smith, Zacker, Lopez, Vredenburgh, White, and Gramalski, as well as the law firms associated with Gross, Zacker, Lopez, Vredenburgh, White, and Gramalski be dismissed based on a failure to allege state action.

### B. Proper Parties

***3** The Greene County Support Collection Unit is named as a Defendant. Compl. at ¶ *9.* Plaintiff claims that it is a “local government unit.” *Id.* Accepting that allegation to be true, dismissal would be appropriate because “[i]n New York, agencies of a municipality are not suable entities. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted.” *Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009). It also appears, in the event that Plaintiff has not properly identified the legal status of the Support Collection Unit, that dismissal on Eleventh Amendment immunity grounds would in any event be appropriate. *See Phillips v. Schenectady Child Support Unite*, 2025 WL 895035, at *9 (N.D.N.Y. Mar. 24, 2025), *report and recommendation adopted sub nom. Phillips v. Schenectady Cnty. Child Support Unit*, 2025 WL 1191320 (N.D.N.Y. Apr. 24, 2025).

The Complaint also identifies the Greene County Public Defender's Office as a Defendant. Compl. at ¶ 17. However, “a public defender's office is not considered a person [amenable] to suit under section 1983.” *Rowland v. Ferguson*, 2025 WL 2960153, at *4 (N.D.N.Y. Oct. 20, 2025), *report and recommendation adopted*, 2025 WL 3127187 (N.D.N.Y. Nov. 7, 2025) (internal quotation omitted); *see also Lewis v. Essex Cnty.*, 2024 WL 4712530, at *16 (N.D.N.Y. June 18, 2024) (“the Essex County Public Defender's Office and the Essex County Conflict Defender's Office are not considered ‘persons’ under 42 U.S.C. § 1983.”).

The Greene County Support Collection Unit and Greene County Public Defender's Office should, therefore, also be dismissed as Defendants.

### C. Defendants Gohl and DiCaprio

Danielle Gohl and Christina DiCaprio [3] are named in the Complaint and identified as case workers employed by Greene County. Compl. at ¶¶ 7-8. Each is alleged to have “acted in concert with other defendants.” *Id.* Other than being identified as parties, however, neither is named at any other time in the Complaint. “To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation. Specifically, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.” *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (internal quotations, alterations, and citations omitted). The mere identification of an individual as a party is not enough to state their personal involvement. *Taylor v. City of New York*, 953 F. Supp. 95, 98 (S.D.N.Y. 1997); *Mullin v. P & R Educ. Servs., Inc.*, 942 F. Supp. 110, 114 (E.D.N.Y. 1996). Because there are no factual allegations of wrongdoing by either of these individuals, dismissal based on lack of personal involvement is recommended.

3 Her name is spelled DeCaprio in the caption of the Complaint. Compl. at p. 1.

### D. Municipal Liability

Plaintiff's third cause of action names Greene County as a Defendant. Compl. at ¶¶ 103-105. Plaintiff generally alleges a conspiracy among all Defendants to enforce proceedings against Plaintiff in violation of his rights. *Id.* at ¶ 104.

*In Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978), the Supreme Court found that “the language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.” Courts apply “rigorous standards of culpability and causation” to ensure that the municipality is not held liable solely for the actions of its employees. *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal “policy” or “custom.” *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 690-91. A “policy” or “custom” cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) (“To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*”).

***4** Here, the Complaint identifies no unconstitutional policy on the part of Greene County. That omission is fatal, at this juncture, to Plaintiff's Complaint. *Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 259 (N.D.N.Y. 2023) (“Plaintiff has not identified any formal town policy that has deprived [him] of equal protection.”); *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 293 (N.D.N.Y. 2022) (dismissal required when complaint “does not allege the existence of any policy, practice, or custom from which [plaintiff's] alleged constitutional violation resulted.”).

### E. Conversion Claim

As it was with Plaintiff's original action, the second cause of action here is a conversion claim against Samantha and Derek Cody. Compl. at ¶¶ 99-102; *see also Gammons v. Cody*, 2025 WL 2722411, at *5-6.

Federal courts are courts of limited jurisdiction. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Jurisdiction exists when the matter at issue arises “under the Constitution, laws or treaties of the United States.” 28 U.S.C. § 1331. Conversion is a “pure state law claim[ ].” *Greenidge v. Mundo Shipping Corp.*, 41 F. Supp. 2d 354, 358 (E.D.N.Y. 1999). As a result, no federal “arising under” jurisdiction exists for such a claim.

Jurisdiction also exists when diversity of citizenship is present. 28 U.S.C. § 1332. “Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000.” *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). “A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.” *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations omitted). Complete diversity is required – meaning if any Defendant is a resident of the same state as the Plaintiff, diversity jurisdiction does not exist. *Seemann v. Maxwell*, 178 F.R.D. 23, 24 (N.D.N.Y. 1998). Plaintiff has not pled complete diversity exists here, as is his obligation. *Andrade v. Reiter*, 2008 WL 11438303, at *3 (E.D.N.Y. June 13, 2008). Nor does the Complaint suggest that exists here. As a result, there is no complete diversity jurisdiction in this case and no independent jurisdictional basis for entertaining these claims.

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### E. Leave to Amend

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). "However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate." *Norwood v. Albany City Police Dep't*, 2019 WL 7593292, at *2 (N.D.N.Y. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 5415873 (N.D.N.Y. Oct. 23, 2019). Since the law is clear that the attorneys assigned to represent parties to state court litigation are not state actors, those claims should be dismissed without leave to amend. Plaintiff could, perhaps, make factual allegations to establish a claim against the remaining Defendants and so those claims should be dismissed with leave to amend.

## IV. CONCLUSION

***5** For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED as set forth above**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

4 If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2026 WL 500625

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 498720
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,
v.
Samantha Anna-Kay CODY et al., Defendants.

1:25-CV-1714 (AJB/DJS)
|
Signed February 23, 2026

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, 85 Hunter Avenue, Albany, NY 12206.

**ORDER ON REPORT & RECOMMENDATION**

Anthony J. Brindisi, United States District Judge:

***1** On December 8, 2025, *pro se* plaintiff Shawn Taylor Gammons ("plaintiff") filed this 42 U.S.C. § 1983 action against various defendants involved in ongoing family court proceedings in Greene County. *See* Dkt. No. 1. Broadly speaking, the complaint alleges that multiple attorneys, case workers, and others have conspired to deny him certain parental and economic rights. *Id*. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On February 4, 2026, U.S. Magistrate Judge Daniel J. Stewart granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to amend. Dkt. Nos. 5, 6. As Judge Stewart explained, private actors are generally not amenable to suit under § 1983, and plaintiff's broad allegations of a conspiracy against him were insufficient to bring any of the private-actor defendants within one of the exceptions to that general rule. Dkt. No. 6. Judge Stewart further concluded that certain defendants were not proper parties and that plaintiff had failed to state plausible claims against others. *Id*. Although Judge Stewart determined that plaintiff could not pursue claims against the seven private attorneys, he reasoned that plaintiff might be able to allege plausible claims against one or more of the remaining named defendants. *Id*. Accordingly, Judge Stewart recommended dismissal with partial leave to amend. *Id*.

Plaintiff has not lodged objections. Instead, plaintiff has filed: (1) an amended complaint; (2) a motion for a preliminary injunction; (3) an "emergency" motion to compel and for a protective order; (4) a request for admissions; (5) a request for a production of documents; (6) a motion for spoliation sanctions; (7) a notice to take deposition; and (8) a first set of interrogatories. Dkt. Nos. 7–14.

Upon *de novo* review, Judge Stewart's R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C). Plaintiff's other filings are premature—a party who proceeds IFP must ordinarily wait for the Court to accept a pleading for filing before proceeding any further in the litigation. Accordingly, his motions must be denied and his requests and interrogatories must be stricken from the docket.

Plaintiff's amended complaint, Dkt. No. 7, was also prematurely filed, since the Court had not yet accepted the R&R (which it will do today). But the Court declines to strike this amended pleading, at least at this time. Instead, the Court will adopt the R&R and give plaintiff the standard thirty-day period of time in which to file an amended pleading that conforms with the instructions set forth in the R&R. If plaintiff files *another* pleading within that thirty-day window, that new pleading will be referred to Judge

Stewart for further action as appropriate. However, if plaintiff does not file a new pleading within that thirty-day time frame, the current "amended complaint" (the one that was prematurely filed at Dkt. No. 7) will be referred to Judge Stewart for review.

***2** A final observation. Plaintiff has previously filed federal-court litigation arising out of similar, or perhaps related, family court proceedings in Greene County. *Gammons v. Cody*, 1:25-CV-941 (N.D.N.Y.) (AJB/DJS). That prior federal-court case was dismissed because plaintiff (quite reasonably under the circumstances) elected not to try to amend that pleading after it was dismissed. *See id*. Notably, in that previous case plaintiff was advised about some of the same legal issues that have come up in this newly filed case. *See id*.

This new lawsuit is somewhat distinct from plaintiff's old one. Even so, the Court cautions plaintiff that alleged misconduct by others occurring in connection with ongoing domestic relations matters in state court are almost always going to be a matter for the state courts to adjudicate. Congress has only given federal courts limited jurisdiction, and one consequence of that "limited" jurisdictional grant is that you cannot ordinarily bring meritorious federal civil rights lawsuits against actors involved in a state-court proceeding.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 6) is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with partial leave to amend;

3. Plaintiff's motions (Dkt. Nos. 8, 9, 12) are DENIED;

4. Plaintiff's requests (Dkt. No. 10, 11, 13, 14) are STRICKEN;

5. Plaintiff shall have THIRTY DAYS in which to file a further amended complaint that conforms with the instructions set forth in Judge Stewart's R&R;

6. If plaintiff timely files a further amended complaint, the matter shall be referred to Judge Stewart for further action as appropriate; and

7. If plaintiff does not timely file a further amended complaint, the matter shall be referred to Judge Stewart for a review of the (Dkt. No. 7) amended complaint.

The Clerk of the Court is directed to terminate the pending motions and set the appropriate deadlines.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 498720

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2804839
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric LYNCH, Plaintiff,
v.
COUNTY OF HERKIMER, et al., Defendants.

6:23-cv-1454 (GTS/TWD)
|
Signed February 14, 2024

**Attorneys and Law Firms**

ERIC LYNCH, Plaintiff, pro se, 18-B-0755, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

***1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Eric Lynch ("Plaintiff") alleging Darryl Lucas, Russell Fetterman, Matthew Jacoby, the State of New York, Herkimer County District Attorney Jeffrey S. Carpenter, and the County of Herkimer violated his civil rights. Dkt. No. 1. Plaintiff, who was in the custody of New York State Department of Corrections and Community Supervision ("DOCCS") at the Elmira Correctional Facility at the time of filing, has not paid the filing fee for this action and seeks leave to proceed in forma pauperis ("IFP"). Dkt. Nos. 4, 8.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 8. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, he is granted permission to proceed IFP. [1]

1 Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. BACKGROUND

Plaintiff's claims arise from events which began on November 25, 2008. Dkt. No. 1 at 8-10. [2] Plaintiff avers Defendants Jacoby and Fetterman: trespassed onto Plaintiff's property, located in Middleville, New York; opened Plaintiff's locked Ford Econoline van, located on said property; conducted a search of the van, without a warrant; and seized "plaintiff's legaly owned 30.06 rifle which was safely stored inside plaintiff's locked vehicle ...." *Id.* at 9. [3] Later the same day, Plaintiff reported his rifle had been

stolen; Fetterman informed Plaintiff he had taken the rifle; Plaintiff requested Fetterman return the rifle; and Fetterman returned Plaintiff's rifle and wrote plaintiff tickets for failing to report a take and failing to properly fill a tag for a deer management permit. *Id.* at 9-10.

2 Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

3 Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On February 25, 2009, Plaintiff filed “a Notice of Claim ... against the State of New York setting forth the improper procedures employed by defendant's FETTERMAN and LUCAS.” *Id.* at 10. Thereafter, “In retaliation ... defendant FETTERMAN commenced and engaged in a scheme to harass plaintiff and members of his family.” *Id.* at 11.

***2** On April 29, 2009, Fetterman issued Plaintiff a ticket for making a false written statement. *Id.* at 15. Plaintiff has since requested “either a trial or dismissal of the charge ...” however, as of the time of filing, the charge had not been disposed of. *Id.*

On May 8, 2009, an unnamed New York State Department of Environmental Conservation (“DEC”) “Officer called the plaintiff on his cellular phone and informed him that they had a warrant for his arrest.” *Id.* at 11. “Plaintiff was directed to meet defendant(s) FETTERMAN and LUCAS in the parking lot of the Town of Fairfield Court,” and when he arrived, he “demanded to see the alleged arrest warrant.” *Id.* at 11-12. Defendant Lucas:

> [G]ot extremely irritated and begin yelling and swearing at the plaintiff ... grabbed plaintiff, manhandled plaintiff, and placed handcuffs on the plaintiff ... grabbed the plaintiff by his shirt, lifted him off of the ground, and then slammed the plaintiffs body onto the hood of the Department of Environmental Conservation SUV ... Plaintiff was then dragged to defendant FETTERMAN's SUV and thrown into the backseat by defendant LUCAS.

*Id.* at 12-13. Plaintiff further asserted “Defendant FETTERMAN stood by watching while plaintiff was being physically assaulted by defendant LUCAS.” *Id.* at 13. Next, Defendant Fetterman transported Plaintiff to the Town of Manheim Court where he appeared before “Justice Thompson” who “ordered the defendant(s) to release the plaintiff immediately ... [and] never bring the plaintiff back into his court.” *Id.* at 14.

The Court takes judicial notice of an action Plaintiff commenced on November 21, 2012. *See generally, Lynch v. New York* (hereinafter, “*Lynch* I”), No. 6:12-CV-1757 (DNH/DEP), 2013 WL 4425129, at *1 (N.D.N.Y. Aug. 14, 2013). Plaintiff brought “a total of sixteen causes of action arising from ten separate interactions with New York State Police and/or DEC officers between November 2008 and October 2012.... pursuant to 42 U.S.C. § 1983 ....” *Id.* District Judge David N. Hurd dismissed Plaintiff's complaint in its entirety. *See id.* at *4.

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the “strongest arguments that they *suggest*.” *Triestman v. Fed.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

***3** Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotations and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. DISCUSSION

Plaintiff's complaint asserts the following causes of action: (1) an excessive force claim against Defendant Lucas (Dkt. No. 1 at 15-16); (2) a failure to intervene claim against Defendant Fetterman (Dkt. No. 1 at 17); (3) a deliberate indifference claim against Defendants Lucas and Fetterman (Dkt. No. 1 at 18); (4) an illegal search and seizure claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 19-20); (5) a Second Amendment violation claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 20); (6) a state liability claim against the State of New York (Dkt. No. 1 at 20-23); (7) a claim of Due Process violations against Defendant Carpenter (Dkt. No. 1 at 23-24); and (8) a *Monell* claim against the County of Herkimer (Dkt. No. 1 at 24-25).[4] For the reasons explained below, all of Plaintiff's contentions fail to state a claim upon which relief may be granted; therefore, dismissal of the complaint is warranted.

4 *See generally, Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### A. *Heck v. Humphrey*_

As previously stated, Plaintiff is currently in DOCCS custody. The Court takes judicial notice of DOCCS public administrative records stating Plaintiff is incarcerated on convictions for burglary in the first degree, attempted burglary in the first degree, and criminal mischief in the second degree.[5]

5 *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on February 14, 2024); *see also, e.g., Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

lookup information ....”); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

***4** While it is not clear in Plaintiff's complaint what relationship, if any, these convictions have to his claims in the instant matter, to be sure, civil lawsuits may not be used to collaterally attack criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus ....

*Id.* Therefore, to the extent Plaintiff's claims could be construed as calling into question the validity of any conviction which has not been reversed, expunged, declared invalid, or called into question by a relevant authority, his claims are barred by *Heck*. *See, e.g.*, *Hines v. Giacona*, No. 5:18-CV-0002 (GTS/TWD), 2018 WL 4610675, at *3 (N.D.N.Y. Apr. 2, 2018) (concluding the plaintiff's § 1983 claims which “would necessarily call into question the validity of his conviction” was barred by *Heck v. Humphrey* “unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated.”) (citations omitted), *report and recommendation adopted*, 2018 WL 3046513 (N.D.N.Y. June 20, 2018).

### B. Plaintiff's Claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York Are Barred Under the Doctrine of *Res Judicata*

In *Lynch* I, Plaintiff alleged “on November 25, 2008 ... [DEC] Officers Russell F. Fetterman and Matthew Jacoby ... used force to pry open the door of [Plaintiff's] truck and seize a firearm, all without a search warrant or probable cause.” *Lynch* I, Dkt. No. 1 at 2. Plaintiff further asserted:

> [O]n May 9, 2009 ... Officer Fetterman telephoned the Plaintiff and directed him to appear in the parking lot across the street from the Village Courthouse in Middleville, NY as there was purportedly a warrant for the Plaintiff's arrest .... Plaintiff met Officer Fetterman and one DEC Officer Darryl Lucas in the parking lot.... Plaintiff was physically assaulted .... Officer Fetterman then drove Plaintiff to the Town of Manheim Court .... [where] the officers could not produce a warrant .... The justice on the bench ... then released Plaintiff in the absence of any charge or accusatory instruments.

*Id.* at 3. The complaint included various claims for civil rights violations under both federal and state law, including “violations of the Fourth and Fourteenth Amendments to the United States Constitution and state tort violations of assault, battery, false arrest, unlawful search and seizure and intentional infliction of emotional distress,” as well as “claims of negligent supervision of police and uniformed law enforcement officers; malicious/reckless/negligent execution of police procedures within the New York State Department of Environmental Conservation and the New York State Police.” *Id.* at 6-7.

On June 12, 2013, Defendants Fetterman, Jacoby, Lucas, and the State of New York filed a motion to dismiss the complaint for failure to state a claim. *See Lynch* I, Dkt. No. 11. Plaintiff filed no opposition to Defendants’ motion and, following a hearing, Judge Hurd granted the Defendants’ motion and dismissed the complaint in its entirety on August 14, 2013. *Lynch* I, 2013 WL 4425129, at *1, 4. As relevant here, Judge Hurd concluded the State of New York was immune from liability under the

Eleventh Amendment and Plaintiff's § 1983 claims related to the November 25, 2008, and May 9, 2009, incidents were time barred. *See id.* at 2 (first citing *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009) in support of the proposition that state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogated said immunity; then citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) in support of the proposition that the statute of limitations applicable to claims brought under § 1983 in New York is three years).

***5** "The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine precludes a party from asserting a claim in subsequent litigation where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285. "A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed." *Vance v. ACCO Brands, Corp.*, No. 6:17-CV-0957 (GTS/TWD), 2017 WL 8751936, at *5 (N.D.N.Y. Nov. 1, 2017) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)) (additional citations omitted), *report and recommendation adopted*, 2018 WL 1631312 (N.D.N.Y. Apr. 2, 2018), *aff'd*, No. 18-1258, 2018 WL 5603578 (2d Cir. Oct. 3, 2018).

In this case, *res judicata* bars Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York. First, *Lynch* I was adjudicated on the merits because "a dismissal for failure to state a claim operates as a final judgment on the merits ...." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (internal quotations and citation omitted). Furthermore, Plaintiff's prior action named the State of New York, Lucas, Fetterman, and Jacoby as Defendants. *See Lynch* I, Dkt. No. 1 at 1.

Finally, Plaintiff's claims here concerning Fetterman, Jacoby, and Lucas' alleged conduct were, or could have been, raised in *Lynch* I. *See Williams v. Perry*, 229 F.3d 1136 (2d Cir. 2000) (Summary Order) (explaining the plaintiff's "current ... claim could have been raised in [the prior action] if it is part of the same 'nucleus of operative fact' or involves the same factual predicate as the claims raised in" the prior action) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)). Plaintiff's claims in both actions concerned: (1) Defendant Jacoby and Fetterman's alleged actions of entering Plaintiff's Middleville property and taking possession of a firearm from Plaintiff's vehicle on November 25, 2008, *compare* Dkt. No. 1 at 8-10 *with Lynch* I, Dkt. No. 1 at 2-3; (2) Defendant Fetterman and Lucas' alleged actions in informing Plaintiff they had a warrant for his arrest, causing Plaintiff bodily harm, and transporting Plaintiff to the Town of Manheim Court without regard to Plaintiff's injuries on May 8 or 9, 2009, *compare* Dkt. No. 1 at 11-14 *with Lynch* I, Dkt. No. 1 at 3;[6] and (3) the State of New York's alleged actions and omissions which lead to, *inter alia*, the aforementioned two incidents, *compare* Dkt. No. 1 at 20-23 *with Lynch* I, Dkt. No. 1 at 8. Because Plaintiff's claims in both complaints are derived from the same facts, even those claims which were not raised in *Lynch* I *could have been*, therefore, the claims are barred here. *L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (holding the plaintiff's claims in a second action were "plainly barred by *res judicata*" explaining, plaintiff's "new claims are *based on different legal theories rather than different facts* and, accordingly, could have been raised in the original complaint.") (emphasis added).

6 The Court notes that, in the instant action, Plaintiff states this incident occurred "on May 8th of 2009," Dkt. No. 1 at 11, while, by contrast, Plaintiff previously alleged this "incident occurred on May 9, 2009," *Lynch* I, Dkt. No. 1 at 3. However, given the similarities between both accounts and the mere one day difference in date, the Court has no doubt both accounts refer to the same incident.

***6** In sum, *res judicata* precludes all of Plaintiff's current claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York. "When an *informa pauperis* action is *res judicata*, it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Orr v. U.S. Air Force*, No. 6:15-CV-1132 (GTS/TWD), 2015 WL 6671559, at *5 (N.D.N.Y. Oct. 30, 2015) (internal quotations and citation omitted) (dismissing plaintiff's complaint pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that his claim was barred under the doctrine of *res judicata*).

Accordingly, the Court recommends Plaintiff's first, second, third, fourth, fifth, and sixth causes of action be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). [7]

7 In any event, Plaintiff's claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York, arising from incidents which occurred in 2008 and 2009, are time barred by the three year statute of limitations applicable to § 1983 claims in New York. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under § ... 1983 in New York is three years.").

**C. Plaintiff's Claim Against Defendant Carpenter** [8]

8 While it is not clear when Plaintiff was charged with making a false written statement or when he avers the Herkimer County District Attorney allegedly violated his constitutional rights, the Court takes judicial notice that Jeffrey Carpenter is the current Herkimer County District Attorney and John H. Crandall was the Herkimer County District Attorney prior to Carpenter's 2012 election. *See generally*, https://history.nycourts.gov/figure/district-attorneys-herkimer-county/ (site last visited on February 14, 2024).

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " *Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), as well as deciding when to drop charges, *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *see also Flagler*, 663 F.3d at 547 ("the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

***7** Here, Plaintiff accuses the Herkimer County District Attorney ("DA") of due process violations, claiming the DA:

> [V]iolated plaintiff's right to a speedy trial ... violated plaintiff's rights as guaranteed by the U.S. Constitution by failing to dispose of the charge of FALSE WRITTEN STATEMENT, 201.45 even after the statute of limitations had expired ... [and] violated plaintiffs rights by allowing the open charge of FALSE WRITTEN STATEMENT, PL 201.45 to be used against plaintiff in a PRE-SENTENCING INVESTIGATION REPORT for the arrest of plaintiff on March 9th of 2017 even though he knew that the statute of limitations had expired years prior.

Dkt. No. 1 at 23-24. Plaintiff's allegations fall squarely within the scope of prosecutorial immunity. *See Phillips v. Proud*, No. 5:18-CV-0029 (LEK/ATB), 2018 WL 3195094, at * 4 (N.D.N.Y. Mar. 14, 2018) (concluding the plaintiff's claim that an ADA "did not dismiss the charges in a timely manner, rather, he let the speedy trial clock run" did "not defeat prosecutorial

immunity," irrespective of the ADA's motivation or the resulting damage), *report and recommendation adopted*, 2018 WL 3193198 (N.D.N.Y. Jun. 28, 2018); *Corley v. Wittner*, 811 F. App'x 62, 63 (2d Cir. 2020) (Summary Order) ("The district court correctly held that the state court judge and prosecutors were absolutely immune from suit as to [the plaintiff]'s speedy trial" claim) (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (additional citations omitted); *Taylor*, 640 F.2d at 452 ("the failure to drop charges ... ha[s] been held to be prosecutorial activit[y] for which absolute immunity applies.") (citation omitted). Therefore, Plaintiff's claim against the DA in his individual capacity is barred.

Next, under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009). "Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

"When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.' " *D'Alessandro*, 713 F. App'x 1 at 8 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (additional citations omitted). "Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)); *see also, e.g.*, *Gentry v. New York*, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (explaining, "the claims against [assistant district attorneys], in their official capacities, are effectively claims against the State of New York" and recommending dismissal of said claims), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021); *Rich v. New York*, No. 1:21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.") (citation omitted). Therefore, Plaintiff's claim against the DA in his official capacity is barred.

***8** In sum, both prosecutorial and Eleventh Amendment immunity proscribe Plaintiff's claim against the DA. Accordingly, the Court recommends Plaintiff's seventh cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See, e.g.*, *Gosier v. Oneida Cnty. Dist. Attorney's Office*, No. 6:23-CV-1118 (DNH/TWD), 2023 WL 6880352, at *1 (N.D.N.Y. Oct. 18, 2023) (recommending dismissal of the plaintiff's § 1983 claims against the County District Attorney's Office and District Attorneys pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A), *report and recommendation adopted*, 2023 WL 7220751 (N.D.N.Y. Nov. 2, 2023).

### D. Plaintiff's Claim Against the County of Herkimer

Plaintiff's claim against the County of Herkimer appears to arise from a charge of making a punishable false written statement, in violation of N.Y. PENAL LAW ("P.L.") § 210.45. Plaintiff asserts only the following facts with respect to the charge:

- On April 29th of 2009 defendant FETTERMAN issued the plaintiff a ticket for FALSE WRITTEN STATEMENT.
- For years the plaintiff has requested either a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.
- Defendant CARPENTER has continually ignored plaintiff's request for a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.
- All claims contained within[ ]this complaint fall within the Statute of Limitations due to the fact that the charge of MAKING A FALSE WRITTEN STATEMENT, CPL 210.45, remains an open charge.

Dkt. No. 1 at 15. As explained above, Plaintiff avers the DA's failure to dispose of the charge violated his due process rights and the County's failure to train the DA about "the laws and rights of an individual to a speedy trial" and "the laws and rules regarding statutes of limitation on criminal charges" violated his constitutional rights. *See id.* at 24-25.

To the extent Plaintiff's claim against the County concerns an ongoing state court criminal proceeding, this Court may not intervene. *Hicks v. Miranda* and *Younger v. Harris* "establish that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of great and immediate harm." *Peralta v. Leavitt*, 56 F. App'x 534, 535 (2d Cir. 2003) (affirming the District Court's conclusion "that, if the criminal proceedings against [the plaintiff] were still ongoing, the Complaint [brought under to 42 U.S.C. § 1983] must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.") (citing *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Younger v. Harris*, 401 U.S. 37 (1971)); *see also Singleton v. State of N.Y.*, No. 1:98-CV-0414, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) (dismissing the plaintiff's § 1983 claim for failure to state a claim where the charges against him were still pending in state court, explaining, "[i]t is well-settled that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm.") (citations omitted); *Anderson v. Chou*, No. 1:06-CV-3563, 2006 WL 2620424, at *2 (E.D.N.Y. Sept. 13, 2006) (abstaining from reaching the plaintiff's § 1983 claim regarding an examination in his pending state court criminal case and dismissing the complaint in its entirety). Here, Plaintiff has failed to allege, much less clearly show, both great and immediate harm would result from this Court's failure to intervene.

***9** Accordingly, the Court recommends Plaintiff's eighth cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[9]

9 For the reasons explained above, to the extent Plaintiff's "*Monell*" claim against Herkimer County seeks to attack a conviction on the charge of making a false written statement, any such argument is barred by *Heck v. Humphrey*.

### E. Opportunity to Amend

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problems with plaintiff's causes of action are substantive such that better pleading will not cure them. *See Cuoco*, 222 F.3d at 112.

With due regard to Plaintiff's status as a *pro se* litigant, the defects with respect to Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, the State of New York, and Carpenter are such that any amendment would be futile. *See, e.g.*, *Orr*, 2015 WL 6671559, at *5 (recommending the plaintiff's complaint barred by *res judicata* "be dismissed with prejudice ...."); *Johnson v. Bieling*, No. 5:20-CV-1124 (GTS/ML), 2021 WL 1841470, at *5 (N.D.N.Y. Jan. 6, 2021) (recommending dismissal of the plaintiff's untimely complaints "with prejudice."), *report and recommendation adopted*, 2021 WL 1840591 (N.D.N.Y. May 7, 2021); *Gosier*, 2023 WL 6880352, at *4 ("[B]ecause Plaintiff's Section 1983 against [the DA's office and various DAs] are barred under the doctrines of Eleventh Amendment immunity and prosecutorial immunity, leave to amend would be futile. Therefore, the Court recommends the complaint be dismissed without leave to amend."). Accordingly, the Court recommends Plaintiff's claims against these Defendants be dismissed without leave to amend.

Moreover, while Plaintiff's apparently pending criminal case requires the Court abstain from hearing his *Monell* claim against Herkimer County, the impediment is one which may be cured; therefore, the Court recommends said claim be dismissed with leave to amend. *See, e.g.*, *Anderson*, 2006 WL 2620424, at *3 (dismissing the plaintiff's claim related to his pending criminal case "without prejudice to filing a new complaint in the appropriate district court upon the conclusion of the state criminal proceedings."). However, the Court expresses no opinion as to the timeliness or legal viability of a *Monell* claim based on the facts as stated by Plaintiff herein. Further, Plaintiff must not reassert in any amended complaint claims that the Court has dismissed with prejudice.

**VI. CONCLUSION**

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges claims against (1) Defendant Lucas, (2) Defendant Fetterman, (3) Defendant Jacoby, (4) Defendant State of New York, and (5) Defendant Carpenter; and it is further

***10 RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges a claim against the County of Herkimer and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

10 If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2804839

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2804527
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric LYNCH, Plaintiff,
v.
COUNTY OF HERKIMER; Jeffrey S. Carpenter, Herkimer County District Atty.; Darryl Lucas, Environmental Conservation Police Officer; Russell Fetterman, Environmental Conservation Police Officer; Matthew Jacoby, Environmental Conservation Police Lt.; and State of New York, Defendants.

6:23-CV-1454 (GTS/DJS)
|
Signed May 31, 2024

**Attorneys and Law Firms**

ERIC LYNCH, 18-B-0755, Plaintiff, Pro Se, Elmira Correctional Facility, P.O. Box 500, Elmira, New York 14902.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Scott Phillip Lewis ("Plaintiff") against the State of New York, the County of Herkimer and the four above-captioned individuals ("Defendants"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's claims against Defendant Lucas, Defendant Fetterman, Defendant Jacoby, Defendant Carpenter and Defendant State of New York be dismissed without leave to amend, and that Plaintiff's claims against Defendant County of Herkimer be dismissed with leave to amend. (Dkt. No. 9.) Plaintiff has not filed an Objection to the Report-Recommendation and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation:[1] Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein.

1 When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 9) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's claims against Defendant Lucas, Defendant Fetterman, Defendant Jacoby, Defendant Carpenter and Defendant State of New York are **DISMISSED with prejudice**; and it is further

**ORDERED** that the remaining claims in Plaintiff's Complaint (Dkt. No. 1) – i.e., his claims against Defendant County of Herkimer – **shall be DISMISSED with prejudice** and without further Order of this Court **UNLESS**, within **THIRTY (30) DAYS** of entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff wish to file an Amended Complaint in this matter, the Amended Complaint must be a complete pleading which will supercede and replace his original Complaint in all respects, and may not reassert any claims that have been dismissed with prejudice; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint, the Amended Complaint be returned to Magistrate Judge Dancks for further review pursuant to 28 U.S.C. § 1915.

### All Citations

Not Reported in Fed. Supp., 2024 WL 2804527

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4610675
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,
v.
Lisa M. GIACONA, Defendant.

5:18-cv-0002 (GTS/TWD)
|
Signed 04/02/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, Plaintiff, pro se, 13-B-3372, Cayuga Correctional Facility, Moravia, NY 13118.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

***1** The Clerk has sent to the Court for initial review the *pro se* complaint in this 42 U.S.C. § 1983 civil rights action brought by Terrance Brown Hines ("Plaintiff") against court reporter Lisa M. Giacona ("Defendant"). (Dkt. No. 1.) Plaintiff, who has not paid the filing fee for this action, has filed an application for leave to proceed *in forma pauperis* ("IFP Application") (Dkt. No. 6), along with the required Inmate Authorization Form. (Dkt. No. 7.) Also before the Court is Plaintiff's motion for appointment of counsel. (Dkt. No. 9.)

## I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application (Dkt. No. 6), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP Application is granted.

## II. INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

Where a *pro se* complaint fails to state a cause of action, the court generally “should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.” *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where “the problem with [the plaintiff's] causes of action is substantive” such that “better pleading will not cure it.” *Id.* (citation omitted).

***2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is “plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, “does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation.” *Id.*

In determining whether a complaint states a claim upon which relief may be granted, “the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.” *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). “[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.” *Iqbal*, 556 U.S. at 678. “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed “without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.” *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where “the problem with [the plaintiff's] causes of action is substantive” such that “better pleading will not cure it.” *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. COMPLAINT

Plaintiff is an inmate in custody of the New York State Department of Corrections and Community Supervision and is housed at Cayuga Correctional Facility. (Dkt. No. 1 at 2.[1]) On November 7, 2014, after a bench trial in Cayuga County Supreme Court, Plaintiff was sentenced to a prison term of ten years for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. *Id.* at 5; *see also* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited Mar. 30, 2018).

1 Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

On January 15, 2015, Plaintiff received a copy of the trial transcript, which was signed and certified as being true and accurate by Defendant. (Dkt. No. 1 at 5.) Plaintiff noticed, however, that “certain testimony given at trial was clearly changed and ... omitted from the record.” *Id.* (unaltered text). Generally, Plaintiff claims Defendant deliberately changed the record to secure Plaintiff's conviction and to deny him “a fair appeal process.” *Id.* at 7-6. Despite various attempts to correct the trial transcript, *see id.* at 5-7, 10, 12-13, Plaintiff's conviction was affirmed by the Appellate Division on October 9, 2015. *Id.* at 6. Plaintiff's earliest release date is June 24, 2021. *See* http://nysdoccslookup. doccs.ny.gov (DIN 13-B-3372) (last visited March 30, 2018).

According to Plaintiff, “if not for the willful and deliberate actions of Defendant, [he] would not have lost life and liberty guaranteed under[ ] the United States Constitution.” *Id.* at 8. Plaintiff alleges (1) violation of the Eighth Amendment; (2) violation of the Fourteenth Amendment; and (3) denial of equal protection of civil rights. *Id.* at 16. Plaintiff seeks compensatory damages of $10,000,000. *Id.* Plaintiff also requests that Defendant forfeit her court reporting license and that she be subjected to an unspecified term of imprisonment. *Id.* For a complete statement, reference is made to the complaint.

## IV. DISCUSSION

***3** A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for harm caused by other actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original).

Here, Plaintiff's § 1983 claims fall squarely within the ambit of *Heck* because a decision in his favor would necessarily call into question the validity of his conviction. Therefore, Plaintiff's § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated. *See Ingram v. Herrick*, 475 F. App'x 793, 794 (2d Cir. 2012) (a habeas corpus petition, not a § 1983 action, is the proper vehicle by which to seek relief from illegal confinement). This has yet to happen. *See* Decision & Order, *Hines v. Stallone*, No. 9:16-cv-1078 (TJM) (N.D.N.Y. Feb. 1, 2017), ECF. No. 11. Therefore, Plaintiff's § 1983 claims are not cognizable at this time. "Disposition of the case on *Heck* grounds, however, warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487) (other citations omitted).

Accordingly, the Court recommends dismissing this action in its entirety without prejudice as barred under *Heck*.

## V. MOTION FOR APPOINTMENT OF COUNSEL

In light of the above recommendation, Plaintiff's motion for appointment of counsel (Dkt. No. 9) is denied as moot.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 6) is **GRANTED FOR PURPOSES OF FILING ONLY**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 9) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[2] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

2 If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4610675

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3046513
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrance Brown HINES, Plaintiff,
v.
Lisa M. GIACONA, Official Court Reporter, Defendant.

5:18-CV-0002 (GTS/TWD)
|
Signed 06/20/2018

**Attorneys and Law Firms**

TERRANCE BROWN HINES, 13-B-3372, Cayuga Correctional Facility, P.O. Box 1186, Moravia, New York 13118, pro se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Terrance Brown Hines ("Plaintiff") against Official Court Reporter Lisa M. Giacona ("Defendant") asserting claims under the Eighth Amendment, Fourteenth Amendment Due Process Clause and Fourteenth Amendment Equal Protection Clause pursuant to 42 U.S.C. § 1983 arising from her alleged intentional falsification of his trial transcript, are United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed in its entirety without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Plaintiff's Objection thereto. (Dkt. Nos. 10, 11.) For the reasons set forth below, the Report-Recommendation is adopted and accepted.

## I. RELEVANT BACKGROUND

### A. Magistrate Judge Dancks' Report-Recommendation

Generally, in her Report-Recommendation, Magistrate Judge Dancks determined that Plaintiff's Complaint should be *sua sponte* dismissed in its entirety without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Plaintiff's claims (the success of which would necessarily call into question the validity of his conviction for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree) are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 10, at Part IV.)

### B. Plaintiff's Objection to the Report-Recommendation

Generally, liberally construed, Plaintiff's Objection asserts two arguments: (1) his claims should not be dismissed because he is not challenging his underlying conviction but only seeking redress for Defendant's unconstitutional acts, which distinguishes his case from *Heck*; and (2) in the alternative, his claims should not be dismissed because the dismissal of the claims would permit Defendant to continue to tamper with court records and violate the constitutional rights of other individuals. (*See generally* Dkt. No. 11.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

1 *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2 *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

***2** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

3 *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept.

20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4 *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**III. ANALYSIS**

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. (Dkt. No. 10.) Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiff's Complaint is dismissed in its entirety, without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). To those reasons, the Court adds only two points.

First, the Court rejects Plaintiff's first argument in his Objection because he ignores the fact that, in order to prevail on any of the constitutional claims asserted, he would have to show that the allegedly incorrect change(s) intentionally made by Defendant to the trial transcript caused him harm, i.e., they negatively affected the outcome of his criminal prosecution and/or his appeal therefrom.[5] As a result, regardless of whether Plaintiff is seeking to change his trial transcript to lay the foundation for a successful appeal from his conviction or whether he is simply seeking $10,000,000 (and the forfeiture of Defendant's license),[6] his success in this action would necessarily call into question the validity of his conviction.

5 *See, e.g., Burrell v. Swartz*, 558 F. Supp. 91, 92 (S.D.N.Y. 1983) ("No constitutional ... right exists to an absolutely accurate trial transcript.... Plaintiff could state a claim on which relief may be granted insofar as the alleged errors and omissions in his transcript prejudice an appeal of his conviction.... [I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal.").

6 (*See* Dkt. No. 1, at Part VI [setting forth Plaintiff's requested relief].)

***3** Second, the Court rejects Plaintiff's second argument in his Objection because he lacks standing to assert claims on behalf of other people (and the possibility of those claims by others do not constitute an exception to the application of *Heck* to Plaintiff).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that, pursuant to Magistrate Judge Dancks' granting of Plaintiff's *in forma pauperis* application (Dkt. No. 6), the Clerk shall provide the superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization (Dkt. No. 7), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350.00 in installments, over time pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of Plaintiff's Inmate Authorization (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua spone* **DISMISSED in its entirety without prejudice** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3046513

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 553468
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick CANFIELD, Plaintiff,
v.
Peter TARTAGLIA, et al., Defendants.

6:24-cv-1303 (GTS/TWD)
|
Signed February 19, 2025

**Attorneys and Law Firms**

FREDERICK CANFIELD, Plaintiff, pro se, 23-B-5349, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

***1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Frederick Canfield ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. Dkt. No. 1. Plaintiff, who was confined at the Oneida County Correctional Facility at the time of filing, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 2, 3.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP. [1]

1 Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. BACKGROUND

As stated above, Plaintiff identified the Oneida County Correctional Facility as his place of detention at the time of his complaint, dated September 30, 2024. *See* Dkt. No. 1 at 2, 6. [2] Plaintiff also reported "23B5349" as an identification number associated with a prior period of incarceration. *See id.* at 2.

2 Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

At approximately 9:00 p.m. on July 12, 2024, "Sergeant Richard Kimmerer and several others including my parole officer Peter Tartaglia ... showed up on Mumbulo RD at my brothers property and told me I had pending charges for some incident that happened 2 weeks prior, and had no evidence to support that and proceeded to put me in handcuffs." *Id.* at 4. Plaintiff avers "[b]ecause Sergeant Kimmerer lacked evidence to charge me with he got Mr. Tartaglia to act as a stalky horse to conduct a illegal and unlawful search to find evidence that they lacked to act upon to charge me with." *Id.* Therefore, "without consent or a warrent they illegally and unlawfully conducted a illegal search that violated my 4th and 14th Amendment on a camper that was not mine." *Id.* "They found a bag of pills and a Gram of meth to illegally charge me with and took me to jail to unlawfully imprison me." *Id.* "Mr. Tartaglia was filling out the warrant while I was in the back of the Sheriffs car." *Id.* at 5.

***2** At the time he filed his complaint, Plaintiff had been "sitting in jail ... for 75 days with no indictment ...." *Id.* at 4-5. He states he has been "unlawfully imprisoned." *Id.* at 5. Plaintiff also avers he "was coerced into signing the parole agreement papers with my freedom from prison, If not for that I would not have signed the agreement. So I believe that makes it void." *Id.* at 5. He further argues "Parole status does not provide parole officers a Golden ticket to search him/her whenever the mood strikes nor can they run interference for the police to help them find evidence for crimes they are investigating but otherwise lack probable cause to act upon." *Id.*

Plaintiff identified three claims: (1) "Mr. Tartaglia conducted a illegal search and seizure violating my 4th and 14th Amendment Rights;" (2) "Sergeant Richard Kimmerer conducted a warrentless and illegal search and seizure violating my 4th and 14th Amendment Rights;" and (3) "Sergeant Kimmerer and Mr. Tartaglias actions deprived me of Life and liberty violating my 14th Amendment Right." *Id.* at 6. He seeks "$500,000 for the Damage and to stop them from doing this to other people, compensatory Damage and punitive damage." *Id*. On January 14, 2024, Plaintiff filed a motion to appoint counsel. *See* Dkt. No. 8.

The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") public administrative records which indicate "Fredrick Canfield," DIN 23B5349, was accepted into DOCCS custody on February 3, 2025, and list the admission type as "RETURN FROM PAROLE/COND REL." *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on Feb. 14, 2025); *see also, e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information ...."); *Peterkin v. Mullin*, No. 5:24-CV-0377 (GTS/TWD), 2024 WL 2022054, at *1 (N.D.N.Y. May 6, 2024) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Incarnated Lookup search page), *report and recommendation adopted*, 2024 WL 4262573 (N.D.N.Y. Sept. 23, 2024).

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

***3** Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

Here, given Plaintiff's allegation that he has been "unlawfully imprisoned," Dkt. No. 1 at 5; *see also*, Dkt. No. 1 at 4, his assertion that his "parole agreement papers" are "void," Dkt. No. 1 at 5, and his aforementioned return to physical custody from parole, *see supra*, Section III, it appears Plaintiff is attempting to seek review of a parole violation/revocation of parole status resulting from the events of July 12, 2024. In *Heck v. Humphrey*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994). Further, Courts have subsequently made clear that "*Heck* and its 'favorable termination' rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Partee v. City of Syracuse*, No. 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *6 (N.D.N.Y. May 23, 2019) (citing *Bratton v. New York State Div. of Parole*, No. 5:05-CV-0950, 2006 WL 2792743, at *2 (N.D.N.Y. Sept. 27, 2006)) (additional citations omitted), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019); *see also Opperisano*, 286 F. Supp. 3d at 454 (explaining, "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole.") (citing *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to

prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.”)) (additional citations omitted).

***4** Accordingly, insofar as Plaintiff seeks to challenge his current confinement, any such claim is barred by *Heck* and should be dismissed. *Smurphat v. Hobb*, No. 8:19-CV-0804 (GTS/CFH), 2019 WL 7971869, at *5 (N.D.N.Y. Sept. 27, 2019) (finding the plaintiff's claims, which “appear[ed] to be challenging the terms and conditions of his parole as well as the parole revocation” were “barred by *Heck*” and recommending dismissal of such claims without prejudice), *report and recommendation adopted*, 2019 WL 6827571 (N.D.N.Y. Dec. 13, 2019); *Barzee v. Wison*, No. 5:24-CV-1237 (DNH/MJK), 2024 WL 4751552, at *6 (N.D.N.Y. Nov. 12, 2024) (explaining, “plaintiff's claims against the defendant law enforcement officers as they relate to the revocation of his parole may not proceed.”), *report and recommendation adopted*, 2024 WL 4969972 (N.D.N.Y. Dec. 4, 2024).

“Moreover, the Second Circuit has made clear that, ‘when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom.’ ” *Brown v. Budelmann*, No. 5:23-CV-0002 (MAD/TWD), 2023 WL 4424119, at *3 n.7 (N.D.N.Y. Apr. 17, 2023) (quoting *Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7)), *report and recommendation adopted*, 2023 WL 4144999 (N.D.N.Y. June 23, 2023). Therefore, because Plaintiff has not alleged injury resulting from the allegedly unreasonable search and seizure beyond his confinement, he cannot recover for the search and seizure absent a showing of favorable termination of his parole revocation. *See, e.g., Kravitz v. City of Hudson*, No. 1:17-CV-1175 (TJM/CFH), 2017 WL 6403075, at *2 (N.D.N.Y. Nov. 16, 2017) (explaining, “[i]f it is the case that the allegedly illegal search of plaintiff's property led to a criminal conviction, a challenge to the search of the property would be barred by *Heck* as success on such claim would necessarily invalidate that conviction.”), *report and recommendation adopted*, 2017 WL 6389715 (N.D.N.Y. Dec. 12, 2017).

Should Plaintiff file an amended complaint, “he may be able to address the *Heck* bar through more detailed pleading regarding the status of his parole revocation, or by demonstrating that his claims do not implicate the invalidity of his parole revocation.” *Kelly v. Albany Cnty. Prob. Dep't*, No. 8:20-CV-0722 (GLS/DJS), 2020 WL 4458929, at *2 (N.D.N.Y. July 9, 2020), *report and recommendation adopted*, 2020 WL 4432711 (N.D.N.Y. July 31, 2020). Accordingly, the undersigned recommends the complaint be dismissed without prejudice and with leave to amend. *See, e.g., Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 1486836, at *3 (N.D.N.Y. Apr. 4, 2019) (recommending the “plaintiff's false imprisonment and false arrest causes of action be dismissed without prejudice and with opportunity to amend to specify any and all criminal charges brought against him in connection with the August 9, 2018 incident and whether a ‘conviction or sentence has been reversed ...., expunged ...., [or otherwise] declared invalid[.]’ ”), *report and recommendation adopted*, 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019).

## VI. MOTION FOR COUNSEL

Based on the above recommendation to dismiss the complaint, the undersigned further recommends Plaintiff's motion for counsel, Dkt. No. 8, be denied as moot. *See, e.g., Salaam v. Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-0689 (BKS/TWD), 2019 WL 4415624, at *4 (N.D.N.Y. Sept. 16, 2019).

## VII. CONCLUSION

***5 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

3 If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 553468

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 949845
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick CANFIELD, a/k/a Fredrick Canfield, Plaintiff,
v.
Peter TARTAGLIA, Parole Ofcr.; and Richard Kimmerer, Parole Ofcr., Defendants.

6:24-CV-1303 (GTS/TWD)
|
Signed March 28, 2025

**Attorneys and Law Firms**

FREDERICK CANFIELD, 23-B-5349, Plaintiff, Pro Se, Mohawk Correctional Facility, P.O. Box 8451, Rome, New York 13440.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Frederick Canfield, a/k/a Fredrick Canfield, ("Plaintiff") against parole officers Peter Tartaglia and Richard Kimmerer ("Defendants"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint (Dkt. No. 1) be dismissed "without prejudice and with leave to amend" as barred by *Heck v. Humphrey*,512 U.S. 477, 486-87 (1994), and that Plaintiff's motion to appoint counsel (Dkt. No. 8) be denied. Plaintiff has not filed an Objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation:[1] Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 10.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

1 When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED with prejudice** and without further Order of this Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that specifies the details of the revocation of his parole status resulting from the events of July 12, 2024,

and whether his parole revocation has been reversed, expunged, otherwise declared invalid, as referenced in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff file such a timely **AMENDED COMPLAINT**, it shall be referred to Magistrate Judge Dancks for her review; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 949845

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1486836
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,
v.
CITY OF ALBANY, et al., Defendants.

No. 1:18-CV-1193 (DNH/CFH)
|
Signed 04/04/2019

**Attorneys and Law Firms**

Clarence Delaney Jr., 17-A-0236, Fishkill Correctional Facility, P.O. Box 1245, Beacon, New York 12508, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER

Christian F. Hummel, U.S. Magistrate Judge

### I. In Forma Pauperis Application

***1** The Clerk has sent to the Court an amended complaint, together with an application to proceed in forma pauperis ("IFP"), filed by plaintiff pro se Clarence Delaney Jr. Dkt. Nos. 4, 8 ("Am. Compl."). After reviewing plaintiff's IFP Application, the Court finds that he may properly proceed IFP. See Dkt. No. 4. [1]

1 Plaintiff is advised that, despite his IFP status, he will still be required to pay any fees he incurs in this action, including copying fees and witness fees.

### II. Initial Review [2]

2 Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

### A. Standard of Review

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in

the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a clam for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant['s] duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

***2** Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 alleging that defendants the City of Albany and various members of the Albany City Police Department violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. See generally Am. Compl. Plaintiff contends that on August 9, 2018, Detective ("Det.") Adam Brace, Det. DiGiuseppe, and several other members of the Albany City Policy Department "ambushed" him with their guns drawn while he was walking in the City of Albany. Id. at 4. Det. DiGiuseppe "threw [plaintiff] hard against the patrol car and handcuffed [him] around and behind [his] back." Id. In applying the handcuffs, Det. DiGiuseppe injured plaintiff's right arm/elbow, which was already disabled due to a degenerative joint disease. Id. Plaintiff informed Det. DiGiuseppe that he was aggravating plaintiff's disability. Id. Plaintiff also contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Id. at 6. Plaintiff alleges that Det. DiGiuseppe then emptied plaintiff's pockets, including over $ 170.00, and failed to return his possessions. Id. at 4.

Plaintiff alleges that he asked Det. Brace and Det. DiGiuseppe why he was being arrested, and Det. Brace informed him that power tools belonging to plaintiff's friend were stolen out of the friend's truck, and that they wanted to know where the tools were located. Am. Compl. at 5. Plaintiff contends that he was arrested for "two credit cards that [Det. DiGiuseppe] found[.]" Id. Plaintiff suggests that he has had prior negative interactions with Det. DiGiuseppe, and has previously filed complaints against him. Id. Plaintiff further contends that, in a written report to plaintiff's parole officer, Det. Brace lied to plaintiff's parole officer and stated that plaintiff had been in possession of "makita drills that had been reported stolen." Id. Plaintiff contends that he suffered great physical pain and emotional distress as a result of the interaction. See id. at 4, 5.

### C. Analysis

Plaintiff purports to set forth claims of excessive force, false arrest/imprisonment, defamation, intentional infliction of emotional distress ("IIED"), and official misconduct. See generally Am. Compl. Section 1983 provides, in part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To set forth a cause of action under section 1983, a plaintiff must demonstrate that the alleged conduct was (1) "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (internal quotation marks omitted) ). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

The Supreme Court of the United States has found that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Therefore, a plaintiff must establish that the defendant was either a state actor or a private party acting under color of state law. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). A private party engages in state action when they are found to be a "willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citing United States v. Price, 383 U.S. 787, 794 (1966) ). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." White v. Moylan, 554 F. Supp. 2d 263, 267 (D. Conn. 2008) (citation omitted).

### 1. Official Capacity Claims

***3** To the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe defendants in their official capacities, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ). This is because "[t]he real party in interest in an official capacity suit is the governmental entity and not the named official." Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469 (N.D.N.Y. 2002) (citing Union Pac. R.R. v. Vill. of S. Barrington, 598 F. Supp. 1285 (N.D. Ill. 1997) ). Moreover, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ).

Because plaintiff appears to have commenced this action against the City of Albany and the individual defendants in their official capacities, it is recommended that plaintiff's Monell claims against the Det. Brace., Det. DiGiuseppe, and the John Doe defendants be dismissed with prejudice. Insofar as plaintiff attempts to bring the remaining claims in his amended complaint against the individual defendants in their official capacities, it is recommended that such claims be dismissed with prejudice because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citations omitted).

### 2. False Imprisonment and False Arrest

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994) (emphasis in original).

In a February 13, 2019 letter to the Court, plaintiff stated that his “criminal case in Albany City/Police Court related to this case and the parties involved has been adjudicated and resolved/completed[.]” Dkt. No. 11 at 1. Plaintiff further stated that he “felt that [he] should let the Court know due to the fact that one of [his] causes of action is for false arrest/false imprisonment.” Id. Although plaintiff appears to contend that the criminal case associated with this action has been resolved, he does not establish that a “conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]” Heck, 512 U.S. at 486-87. Moreover, plaintiff's complaint and submissions are unclear as to the nature of the charges, if any, that were filed against him in connection with the incident in question. Plaintiff contends that he was arrested for charges unrelated to the reason for defendants' initial stop, but does not identify those charges. See Am. Compl. at 5. Plaintiff seems to suggest that he was arrested and potentially charged with possessing stolen credit cards and/or power tools, but the amended complaint is unclear as to the disposition of those charges. See id. Thus, the undersigned is unable to determine whether his causes of action for false arrest and false imprisonment fall squarely within the ambit of Heck because it is unclear whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if they have been vacated, reversed, acquitted, or otherwise invalidated. Thus, the undersigned cannot ascertain whether, if plaintiff's false imprisonment and false arrest claims were to succeed, “he would necessarily call into question the validity of the conviction he is challenging in this action.” Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *5 (N.D.N.Y. Jan. 6, 2017) (citing Duamutef v. Morris, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under Heck where the plaintiff's underlying conviction had not been overturned) ). “[B]ecause [p]laintiff has failed to show that his conviction has been overturned ... [,] his § 1983 claims [for false arrest and false imprisonment] are barred under Heck unless and until such time as [p]laintiff's conviction is overturned or his sentence is invalidated” or plaintiff otherwise demonstrates that his causes of action would not otherwise render his conviction invalid. Godley, 2017 WL 2805162, at *6. Accordingly, it is recommended that plaintiff's false imprisonment and false arrest causes of action be dismissed without prejudice and with opportunity to amend to specify any and all criminal charges brought against him in connection with the August 9, 2018 incident and whether a “conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]” Heck, 512 U.S. at 486-87.

### 3. Defamation

***4** Plaintiff contends that Det. Brace “committed libel and slander by charges that was never committed by plaintiff.” Am. Compl. at 7. Plaintiff further contends that Det. DiGiuseppe “stated ... [that] plaintiff possessed stolen credit cards ... causing [ ] plaintiff to be arrested illegally.” Id. Heck also applies to plaintiff's defamation claim. “Under New York law, ‘[d]efamation is the

injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.' " Kennedy v. City of New York, No. 12 CIV. 4166 KPF, 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) ). "Truth is an absolute defense to a civil defamation action." Beaver v. Franklin, No. 5:16-CV-1454 (BKS/ATB), 2016 WL 11265986, at *4 n.6 (N.D.N.Y. Dec. 16, 2016), report and recommendation adopted, 2017 WL 1378183 (N.D.N.Y. Apr. 14, 2017). Therefore, in order to sustain a cause of action for defamation, plaintiff must establish that the charges or statements made against him were false. See id. It is unclear as to what crimes plaintiff was charged with, whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if any charges have been vacated, reversed, acquitted, or otherwise invalidated. Thus, truth of any alleged defamatory statement cannot be addressed until the status of any charges is known. It follows that the undersigned cannot assess whether, if plaintiff's defamation claim were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." Godley, 2017 WL 2805162, at *5. Moreover, the undersigned cannot surmise from the amended complaint if the alleged defamatory statement was published [3] to a third party, as required by New York law. See Beaver, 2016 WL 11265986, at *4 n.6. Accordingly, it is recommended that plaintiff's defamation cause of action be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid"; and (2) whether the alleged defamatory statement was published to a third party. Heck, 512 U.S. at 486-87; see Beaver, 2016 WL 11265986, at *4 (noting that the Heck bar "would also apply to 'slander' and 'defamation of character.' ") (citing Xiang Li v. Shelhamer, No. 5:10-CV-801, 2012 WL 951550, at *4 (N.D.N.Y. Mar. 20, 2012) ) (concluding that the plaintiff's claims that the defendant defamed him through statements made in his criminal proceeding that resulted in his conviction are barred by Heck); Lane v. Papadimitrious, No. 6:10-CV-647, 2010 WL 2803468, at *1 (N.D.N.Y. July 14, 2010) (holding that the "plaintiff's claims in the nature of perjury[ and] slander ... necessarily implicate the validity of his conviction and are thus barred under Heck [ ] until such time as the conviction may be vacated or otherwise invalidated.").

3 "Under New York defamation law, 'publication is a term of art.... A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.' " Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931) ). A cause of action for slander also requires publication to a third party. See Kennedy, 2015 WL 6442237, at *12 (" 'A cause of action for slander requires (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege.") (citation omitted).

**4. Excessive Force**

Plaintiff's assertion that Det. DiGiuseppe subjected him to excessive force during the arrest is not barred by Heck, as "it would not implicate his judgments of conviction." Palmenta v. Blank, No. 3:18-CV-1078 (SRU), 2018 WL 4516676, at *4 (D. Conn. Sept. 20, 2018) (citing Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) ). "To establish a Fourth Amendment excessive force claim, [a plaintiff] must show that the force used by the defendants was 'objectively unreasonable.' " Palmenta, 2018 WL 4516676, at *4 (citing Graham v. Connor, 490 U.S. 386, 397 (1989) ). [4] To the extent that plaintiff argues that defendants "ambushed" him at gunpoint and handcuffed him, Am Compl. at 4, defendants' actions of "merely drawing weapons when effectuating an arrest [do] not constitute excessive force as a matter of law." Dunkelberger v. Dunkelberger, No. 14-CV-3877 (KMK), 2015 WL 5730605, *15 (S.D.N.Y. Sept. 30, 2015) (citations omitted). [5] However, plaintiff further contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Am. Compl. at 6. "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." Matthews v. City of New York, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012). Thus, at this early stage in the litigation, plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, plaintiff's allegations are sufficient to establish a plausible Fourth Amendment claim, and it is recommended that plaintiff's Fourth Amendment excessive force claim be permitted to proceed. [6]

4 Although plaintiff purports to bring his excessive force claim under the Eighth Amendment,

> [t]he Eighth Amendment standard [for excessive force] "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages ... Whereas the substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable. County of Sacramento v. Lewis, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, [p]laintiff complains of abuses that occurred during his arrest and are properly analyzed under the Fourth Amendment.

Williams v. Falkowski, No. 9:11-CV-826 (GLS/RFT), 2013 WL 5423703, at *4 (N.D.N.Y. Sept. 26, 2013) (internal citation omitted); Porath v. Bird, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 ("If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern.") (citing Graham v. Connor, 490 U.S. 386, 394 (1989) ).

5 Insofar as plaintiff suggests that defendants approached him without reasonable suspicion or arrested him without probable cause, the undersigned notes that such claims would be barred by Heck unless plaintiff demonstrates that his criminal conviction was either overturned or otherwise expunged. See Heck, 512 U.S. at 486-87.

6 As plaintiff's amended complaint alleges only Det. DiGiuseppe's personal involvement in an incident of excessive force, plaintiff has properly pleaded a Fourth Amendment excessive force claim only as against Det. DiGiuseppe. See Am. Compl.

### 5. IIED

***5** Plaintiff contends that defendants caused him "emotional trauma" when they "ambushed" him and exacerbated his physical and mental health problems. Am. Compl. at 8. "Under New York law, [IIED] has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Thomas v. City of New York, No. 17-CV-6079, 2018 WL 5791965, at *12 (E.D.N.Y. Nov. 5, 2018) (quoting Restis v. Am. Coalition Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) ). Plaintiff states that since the incident and defendants' "unnecessary [use of] force, he has suffered depression, anxiety, posttraumatic stress disorder, and sleep problems." Am. Compl. at 7-8. As plaintiff has alleged a cognizable federal claim for excessive force that "form[s] part of the same case or controversy under Article III of the United States Constitution," the undersigned finds that plaintiff has sufficiently pleaded an IIED claim, and recommends that the Court exercise supplemental jurisdiction over this claim. Pace v. Waterbury Police Dep't, Civ. No. 3:17CV00426(DJS), 2017 WL 1362683, at *4 (D. Conn. Apr. 12, 2017) (quoting 28 U.S.C. § 1367(a) ) (internal quotation marks omitted).

### 6. Official Misconduct

Plaintiff argues that "defendants caused [his] constitutional rights to be violated by arbitrary action and unlawful conduct due to personal and retaliatory reasons." Am. Compl. at 8. He further contends that Det. DiGiuseppe lied and "extorted plaintiff for over $ 160.00 when he emptied plaintiff['s] pockets." Id. [7] Pursuant to New York Penal Law § 195.00,

> [a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
>
> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
>
> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

N.Y. Penal Law § 195.00.

7 Earlier in the amended complaint, plaintiff indicates that Det. DiGiuseppe may taken over $ 170.00. See Am. Compl. at 4.

The undersigned notes that "there is no private right of action to enforce either state or federal criminal statutes." Delany v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2018 WL 5923901, at *5 (N.D.N.Y. Nov. 13, 2018), report and recommendation adopted in part, rejected in part sub nom. Delaney v. City of Albany, 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019) [8] (citing Carvel v. Ross, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) ). Therefore, to the extent plaintiff is seeking defendants' prosecution for official misconduct, this claim cannot proceed. As such, it is recommended that plaintiff's purported official misconduct claim be dismissed with prejudice.

8 Plaintiff filed a separate action in the Northern District of New York naming Det. DiGiuseppe and the City of Albany as defendants. See Delany, 2018 WL 5923901, at *1. However, the underlying facts in that action take place in May 2016. See id. at *2.

### 7. Municipal Liability

Plaintiff has named in the caption of the amended complaint defendant City of Albany. However, "a municipality cannot be held liable solely on a theory of respondeat superior." Anderson v. Cnty. of Nassau, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004).

> Pursuant to the standard for establishing municipality liability laid out in Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658); see also Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")[.] A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985).

***6** Boyde v. New York, No. 5:16-CV-00555(LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y. May 19, 2016). Thus, "in order to establish municipal liability, plaintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.' " Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).

Plaintiff's allegation that the City of Albany failed to train its police officers "due to defendants Det. Brace and DiGiuseppe and other members clearly violating established laws against its citizens specifically the plaintiff" is conclusory as he fails to allege an "affirmative link" between any custom or policy set forth by the City of Albany, and defendants' alleged violations of plaintiff's constitutional rights. See Boyde, 2016 WL 3573133, at *4; Am. Compl. at 8. Accordingly, it is recommended that all claims against the City of Albany be dismissed without prejudice and with leave to amend to provide plaintiff an opportunity to identify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations. See Boyde, 2016 WL 3573133, at *4.

### 8. John Doe Defendants

The undersigned observes that plaintiff has named four John Doe defendants: Police Officer John Doe 1, 2, 3, and 4. In the event that the District Judge permits this amended complaint to proceed, and should plaintiff wishes to pursue this claim against these

John Doe defendants, he must take reasonable steps to ascertain their identities. Once he ascertains the John Doe defendants' identities, plaintiff may file a motion seeking the Court's permission to amend his pleadings to identify the John Doe defendants by name. Plaintiff is advised that failure to timely identify and serve [9] these currently unidentified defendants will result in this action being dismissed as against the John Doe defendants.

9 Service on defendants will not occur until the District Judge determines that a version of plaintiff's complaint may proceed beyond the initial review stage.

### III. Motion to Appoint Counsel

In a separately-filed motion, plaintiff also seeks the appointment of counsel. Dkt. No. 7. Plaintiff indicates that he is "physically [and] mentally disabled and [does not] have the expertise" to litigate his "complex" claims. Id. at 1. It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. Id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) ); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious.") (citations omitted).

***7** However, prior to evaluating a request for an appointment of counsel, the plaintiff must make a threshold showing that he is unable to obtain counsel through the private sector or public interest firms. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61). Although plaintiff contends that he has contacted seven different attorneys but has not received a response, he has not proffered evidence demonstrating that he contacted those attorneys or not-for-profit agencies in an effort to seek pro bono or low-cost counsel. See Dkt. No. 7 at 1-2.

Moreover, before counsel is assigned, it must be determined whether plaintiff's claims are likely to be of substance. See Terminate Control Corp., 28 F.3d at 1341. Until the District Judge reviews this Report-Recommendation and Order and determines whether plaintiff's complaint can proceed, must be dismissed, or whether he may be accorded an opportunity to amend, plaintiff's claims have not been determined to have merit. This case is at its earliest stages, and plaintiff has not demonstrated that appointment of counsel is warranted at this time.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel in the future demonstrates a change in his circumstances. The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in the public or private sector. Financial need or status as an incarcerated person, without more, does not suffice for appointment of pro bono counsel in a civil action.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief (Dkt. No. 4) be **GRANTED**; and it is

**RECOMMENDED**, that to the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe police of ficer defendants in their official capacities, these claims be dismissed with prejudice; and it is further


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**RECOMMENDED**, that plaintiff's official misconduct claim be dismissed with prejudice; and it is further

**RECOMMENDED**, that plaintiff's false imprisonment, false arrest, and defamation claims insofar as they are brought against the individual defendants in their individual capacities, be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the Am. Compl.; and (2) whether the alleged defamatory statement was published to a third party; and it is further

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force and IIED claims against the individual defendants in their individual capacities proceed but that the summons and complaint not be issued and served until plaintiff has an opportunity to amend his complaint to cure the defects identified herein; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice by this Court, [10] and should plaintiff decline to file a second amended complaint within that time, the Clerk return the case to the magistrate judge for service of the amended complaint with the unamended claims deemed stricken; and it is

10 Any second amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the second amended complaint will supersede and replace the amended complaint in its entirety; thus, the second amended complaint becomes the operative pleading and the amended complaint will no longer be considered. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ).

***8 ORDERED**, that plaintiff's Motion to Appoint Counsel (Dkt. No. 7) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that if plaintiff files a second amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the magistrate judge for review of the second amended complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

11 If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1486836

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1922286
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,
v.
CITY OF ALBANY; Police Officer Brace, Detective for the City of Albany/CIU; Police Officer DiGiuseppe, Detective for the City of Albany/CIU; Police Officer John Doe 1, Police Officer for City of Albany; and Police Officer John Doe 2, 3, 4, Police Officers for the City of Albany, Defendants.

1:18-CV-1193 (DNH/CFH)
|
Signed 04/30/2019

**Attorneys and Law Firms**

CLARENCE DELANEY, JR., Plaintiff pro se, 17-A-0236, Fishkill Correctional Facility, P.O. Box 1245, Beacon, NY 12508.

## DECISION and ORDER

DAVID N. HURD, United States District Judge

***1** Pro se plaintiff Clarence Delaney, Jr. brought this civil rights action pursuant to 42 U.S.C. § 1983. On April 4, 2019, the Honorable Christian F. Hum mel, United States Magistrate Judge, advised by Report-Recommendation that some of plaintiff's claims be dismissed with prejudice, some be dismissed without prejudice, some be permitted to proceed, and that he be given an opportunity to file a second amended complaint in accordance with the directives outlined in the Report-Recommendation. No objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the recommendations of the Magistrate Judge, the Report-Recommendation is accepted in whole. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. To the extent plaintiff seeks to bring claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in their official capacities, these claims are DISMISSED with prejudice;

2. Plaintiff's official misconduct claim is DISMISSED with prejudice;

3. Plaintiff's false imprisonment, false arrest, and defamation claims insofar as they are brought against the individual defendants in their individual capacities are DISMISSED without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the amended complaint; and (2) whether the alleged defamatory statement was published to a third party;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

4. Plaintiff's Fourth Amendment excessive force and IIED claims against the individual defendants in their individual capacities shall proceed but the summons and complaint shall not be issued and served until plaintiff has an opportunity to amend his complaint to cure the defects identified;

5. Plaintiff is provided thirty (30) days from the date of this Decision and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice;

6. If plaintiff files a timely second amended complaint, it be forwarded to the Magistrate Judge for review; and

7. If plaintiff fails to file a second amended complaint within thirty (30) days of the date of this Decision and Order, the Clerk return the case to the Magistrate Judge for service of the amended complaint with the unamended claims deemed stricken.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1922286

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.